UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARK WILLIAM DROESSER, JEFFREY A. FORD, JEFFREY FOWLKES, MATTHEW PARKER, and TREVOR WENTZ, individually and on behalf of themselves and all others similarly situated, | Cause No. 19-cv-12365 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| FORD MOTOR COMPANY, a Delaware corporation. | |
| Defendant. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

010784-19/1160651 V1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................1

II.   PARTIES ...............................................................................10

    A.    The Plaintiffs ..............................................................10

        Plaintiff Mark William Droesser ........................................ 10

        Plaintiff Jeffrey A. Ford, Sr. .............................................. 12

        Plaintiff Jeffery K. Fowlkes ............................................... 15

        Plaintiff Matthew Parker ................................................... 17

        Plaintiff Trevor Wentz ...................................................... 19

    B.    The Defendant ............................................................22

III.  VENUE AND JURISDICTION ...............................................23

IV.   FACTUAL ALLEGATIONS ...................................................24

    A.    The Class Vehicles .......................................................24

    B.    The Rise of Diesel Vehicles in the United States...........25

    C.    Ford's Knowledge of Incompatibility, Defectiveness, and Failures Associated with Bosch's CP4 Pump When Used with American Diesel Fuel............................................27

    D.    Ford Decides to Equip its Diesel Power Stroke Engines with the Bosch CP4 Pump.............................................40

    E.    Supposed "Remedies" are Insufficient and Costly.........59

    F.    Ford Knew Durability and Superiority Were Material to Consumers and Made Hollow Promises of Durability and Superiority.....................................................................61

G.    Ford Designed, Manufactured and Sold Vehicles It Knew Would Experience Catastrophic Failures, Which Ford Would Not Repair or Address Under Its Warranties. ....82

H.    Allegations Establishing Agency Relationship Between Manufacturer Ford and Ford Dealers ............................83

V.    TOLLING OF THE STATUTE OF LIMITATIONS .............88

VI.   CLASS ACTION ALLEGATIONS .........................................92

VII.  VII. CAUSES OF ACTION .....................................................97

A.    Multi-state Claims ..........................................................97

COUNT I  VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT 15 U.S.C. § 2301, *et. seq.* ........................97

B.    Claims Brought on behalf of the Alabama Class Members .....................................................................104

COUNT I  VIOLATIONS OF THE ALABAMA  DECEPTIVE TRADE PRACTICES ACT  (ALA. CODE § 8-19-1, *ET SEQ.*).......................................................................................104

COUNT II  FRAUDULENT CONCEALMENT (BASED ON ALABAMA LAW)...................................................................109

COUNT III  UNJUST ENRICHMENT...........................................115

COUNT IV  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (ALA. CODE §§ 7-2-314) .............117

C.    Claims Brought on Behalf of the Alaska Class Members .....................................................................119

COUNT I  VIOLATIONS OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (ALASKA STAT. ANN. § 45.50.471, *ET SEQ.)*...................119

COUNT II  FRAUDULENT CONCEALMENT (BASED ON ALASKA LAW)...................................................................121

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTIBILITY (ALASKA STAT. §§ 45.02.314) ..... 127

D.     Claims Brought on Behalf of the Arizona Class
       Members ................................................................. 130

COUNT I  VIOLATIONS OF THE ARIZONA CONSUMER
FRAUD ACT (ARIZ. REV. STAT. § 44-1521 *ET SEQ.)* ..... 130

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
ARIZONA LAW) ................................................................ 136

E.     Claims Brought on Behalf of the Arkansas Class
       Members ................................................................. 143

COUNT I  VIOLATIONS OF THE DECEPTIVE TRADE
PRACTICE ACT (ARK. CODE ANN. § 4-88-101 *ET
SEQ.)* ................................................................................. 143

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
ARKANSAS LAW) ............................................................ 149

COUNT III  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (ARK. CODE ANN. §§ 4-2-314, 4-
2A-212) .............................................................................. 157

F.     Claims Brought on Behalf of the Colorado Class
       Members ................................................................. 159

COUNT I  VIOLATIONS OF THE COLORADO CONSUMER
PROTECTION ACT (COLO. REV. STAT. § 6-1-101 *ET
SEQ.)* ................................................................................. 159

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
COLORADO LAW) ............................................................ 166

COUNT III  UNJUST ENRICHMENT ........................................... 173

COUNT IV  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (COLO. REV. STAT. § 4-2-314) .... 175

G.     Claims Brought on Behalf of the Connecticut Class
       Members ................................................................. 177

COUNT I  VIOLATIONS OF THE CONNECTICUT UNFAIR
TRADE PRACTICES ACT (CONN. GEN. STAT. ANN. § 42-
110a *ET SEQ.)* ....................................................................177

COUNT II  FRAUDULENT NON-DISCLOSURE (BASED ON
CONNECTICUT LAW)..........................................................184

COUNT III  UNJUST ENRICHMENT...........................................191

    H.    Claims Brought on Behalf of the Delaware Class
Members.......................................................................193

COUNT I  VIOLATIONS OF THE DELAWARE CONSUMER
FRAUD ACT (DEL. CODE ANN. tit. 6 § 2513 *ET SEQ.* and
§ 2532*)*...................................................................................193

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
DELAWARE LAW) .............................................................199

COUNT III  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (6 DEL. CODE § 2-314) ................206

    I.    Claims Brought on Behalf of the District of Columbia
Class Members .............................................................208

COUNT I  VIOLATIONS OF DISTRICT OF COLUMBIA'S
CONSUMER PROTECTION PROCEDURES ACT (D.C.
CODE § 28-3901, *ET SEQ.* ...................................................208

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
DISTRICT OF COLUMBIA LAW) ......................................214

COUNT III  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (D.C. CODE § 28-:2-314)..............222

    J.    Claims Brought on Behalf of the Georgia Class
Members.......................................................................224

COUNT I  VIOLATIONS OF GEORGIA'S FAIR BUSINESS
PRACTICES ACT (GA. CODE ANN. § 10-1-390 *ET.*
*SEQ.)*........................................................................................224

COUNT II  FRAUDULENT CONCEALMENT (BASED ON GEORGIA LAW)..................................................................229

COUNT III  UNJUST ENRICHMENT...........................................236

    K.    Claims Brought on Behalf of the Hawaii Class Members....................................................................238

COUNT I  UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW (HAW. REV. STAT. § 480 *ET SEQ.)*..........238

COUNT II  FRAUDULENT CONCEALMENT (BASED ON HAWAII LAW)..................................................................244

COUNT III  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (HAW. REV. STAT. § 490:2-314) .252

    L.    Claims Brought on Behalf of the Idaho Class Members....................................................................254

COUNT I  VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT (IDAHO CODE § 48-601 *ET. SEQ.)*...254

COUNT II  FRAUDULENT CONCEALMENT (BASED ON IDAHO LAW)......................................................................260

COUNT III  UNJUST ENRICHMENT...........................................268

    M.    Claims Brought on Behalf of the Illinois Class Members....................................................................270

COUNT I  VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILL. COMP. STAT. 505/1 *ET. SEQ.*) ...........................................270

COUNT II  FRAUDULENT CONCEALMENT (BASED ON ILLINOIS LAW)..................................................................276

COUNT III  UNJUST ENRICHMENT...........................................284

COUNT IV  BREACH OF THE IMPLIED WARRANTY FOR MERCHANTABILITY (810 ILL. COMP. STAT. 5/2-314) .285

N.    Claim Brought on Behalf of the Indiana Class Members......................................................................288

COUNT I  VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3) .......288

COUNT II  FRAUD BY CONCEALMENT (BASED ON INDIANA LAW).................................................................................293

COUNT III  UNJUST ENRICHMENT...........................................300

COUNT IV  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (IND. CODE § 26-1-2-314) ............301

O.    Claims Brought on Behalf of the Iowa Class Members......................................................................304

COUNT I  CONSUMER FRAUDS ACTS IN VIOLATION OF IOWA LAW (IOWA CODE § 714H.1 *ET SEQ.*).................304

COUNT II  FRAUDULENT CONCEALMENT (BASED ON IOWA LAW).................................................................................310

COUNT III  UNJUST ENRICHEMENT .........................................317

P.    Claims Brought on Behalf of the Kansas Class Members......................................................................319

COUNT I  VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT (KAN. STAT. ANN. § 50-623 *ET SEQ.*)........................................................................................319

COUNT II  FRAUDULENT CONCEALMENT (BASED ON KANSAS LAW)..................................................................327

COUNT III  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (KAN. STAT. ANN. § 84-2-341) ...334

Q.    Claims Brought on Behalf of the Kentucky Class Members......................................................................337

COUNT I VIOLATIONS OF THE KENTUCKY CONSUMER
       PROTECTION ACT (KY. REV. STAT. ANN. § 367.110 *ET
       SEQ.)*.........................................................................................337

COUNT II FRAUD BY CONCEALMENT (BASED ON
       KENTUCKY LAW).................................................................343

     R.    Claims Brought on Behalf of the Louisiana Class
          Members.....................................................................351

COUNT I VIOLATION OF THE LOUISIANA UNFAIR TRADE
       PRACTICES AND CONSUMER PROTECTION LAW (LA.
       STAT. ANN. § 51:1401 *ET SEQ.)* ........................................351

COUNT II FRAUDULENT CONCEALMENT (BASED ON
       LOUISIANA LAW)..............................................................357

COUNT III BREACH OF IMPLIED WARRANT OF
       MERCHANTABILITY/WARRANTY AGAINST
       REDHIBITORY DEFECTS (LA. CIV. CODE ART. 2520,
       2524).......................................................................................364

     S.    Claims Brought on Behalf of the Maine Class
          Members.....................................................................367

COUNT I VIOLATION OF MAINE UNFAIR TRADE PRACTICES
       ACT (ME. REV. STAT. ANN. TIT. 5, § 205A *ET. SEQ.)*....367

COUNT II FRAUDULENT CONCEALMENT (BASED ON
       MAINE LAW).......................................................................372

COUNT III BREACH OF IMPLIED WARRANTY OF
       MERCHANTABILITY (ME. REV. STAT. ANN. TIT. 11, § 2-
       314).........................................................................................380

     T.    Claims Brought on Behalf of the Maryland Class
          Members.....................................................................382

COUNT I VIOLATIONS OF THE MARYLAND CONSUMER
       PROTECTION ACT (MD. CODE ANN. COM. LAW. § 13-
       101 *ET SEQ.)* .......................................................................382

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MARYLAND LAW)............................................................389

COUNT III  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MD. CODE COM. LAW § 2-314) 396

    U.    Claims Brought on Behalf of the Massachusetts Class Members......................................................399

COUNT I  VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT (MASS. GEN. LAWS CH. 93A).....................................................................................399

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MASSACHUSETTS LAW)..................................................403

COUNT III  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MASS. GEN. LAW CH. 106, § 2-314)...............................................................................411

    V.    Claims Brought on Behalf of the Michigan Class Members......................................................413

COUNT I  VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT (MICH. COMP. LAWS § 445.901 *ET SEQ.*).....................................................................413

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MICHIGAN LAW) ............................................................420

COUNT III  UNJUST ENRICHMENT...........................................428

COUNT IV  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MICH. COMP. LAWS § 440.2314)...........................................................................429

    W.    Claims Brought on Behalf of the Minnesota Class Members......................................................432

COUNT I  VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68 *ET SEQ.*).....................................................................432

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
    MINNESOTA LAW) ............................................................438

COUNT III  BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (MINN. STAT. § 336.2-314) ..........446

    X.    Claims Brought on Behalf of the Mississippi Class
        Members ......................................................................448

COUNT I  FRAUDULENT CONCEALMENT (BASED ON
    MISSISSIPPI LAW)............................................................448

COUNT II  BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (MISS. CODE ANN. § 75-2-314)...456

    Y.    Claims Brought on Behalf of the Missouri Class
        Members ......................................................................458

COUNT I  VIOLATIONS OF THE MISSOURI MERCHANDISING
    PRACTICES ACT (MO. REV. STAT. § 407.010 *ET SEQ.*).458

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
    MISSOURI LAW)................................................................464

COUNT III  UNJUST ENRICHMENT...........................................471

COUNT IV  BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (MO. REV. STAT. § 400.2-314) ....473

    Z.    Claims Brought on Behalf of the Montana Class
        Members ......................................................................476

COUNT I  VIOLATOIN OF MONTANA UNFAIR TRADE
    PRACTICES AND CONSUMER PROTECTION ACT OF
    1973 (MONT. CODE ANN. § 30-14-101 *ET SEQ.*)..............476

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
    MONTANA LAW) ..............................................................482

COUNT III  BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (MONT. CODE § 30-2-314)...........490

AA.   Claims Brought on Behalf of the Nebraska Class
Members ..................................................................492

COUNT I  VIOLATIONS OF THE NEBRASKA CONSUMER
PROTECTION ACT (NEB. REV. STAT. § 59-1601 *ET*
*SEQ.*) .......................................................................492

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
NEBRASKA LAW) ..............................................................499

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (NEB. REV. STAT. § 30-2-314) ....506

BB.   Claims Brought on Behalf of the Nevada Class
Members ..................................................................509

COUNT I  VIOLATIONS OF THE NEVADA DECEPTIVE TRADE
PRACTICES ACT (NEV. REV. STAT. § 598.0903 *ET*
*SEQ.*) .......................................................................509

COUNT II  FRAUDULENT CONCEALMENT  (BASED ON
NEVADA LAW) ..............................................................515

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (NEV. REV. STAT. § 104.2314) ....523

CC.   Claims Brought on Behalf of the New Hampshire Class
Members ..................................................................525

COUNT I  VIOLATION OF N.H. CONSUMER PROTECTION ACT
(N.H. REV. STAT. § 358-A:1 *ET SEQ.*) ...............................525

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEW
HAMPSHIRE LAW) ............................................................532

COUNT III  UNJUST ENRICHMENT ...........................................540

COUNT IV  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (N.H. REV. STAT. ANN § 382-A:2-
314) .........................................................................542

DD.   Claims Brought on Behalf of the New Jersey Class
Members ..................................................................544

COUNT I  VIOLATIONS OF THE NEW JERSEY CONSUMER
    FRAUD ACT (N.J. STAT. ANN. § 56:8-1 *ET SEQ.)* ...........544

COUNT II  FRAUDulent concealment (based on new jersey law)..550

COUNT III  BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (N.J. STAT. ANN. § 12A:2-314)....558

    EE.   Claims Brought on Behalf of the New Mexico Class
         Members ....................................................................560

COUNT I  VIOLATIONS OF THE NEW MEXICO UNFAIR
    TRADE PRACTICES ACT (N.M. STAT. ANN. § 57-12-1 *ET
    SEQ.)* .......................................................................560

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEW
    MEXICO LAW) ....................................................................567

COUNT III  BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (N.M. STAT. ANN. § 55-2-314) ....574

    FF.   Claims Brought on Behalf of the New York Class
         Members ....................................................................577

COUNT I  VIOLATIONS OF NEW YORK GENERAL BUSINESS
    LAW § 349 (N.Y. GEN. BUS. LAW § 349)..........................577

COUNT II  VIOLATIONS OF NEW YORK GENERAL BUSINESS
    LAW § 350 (N.Y. GEN. BUS. LAW § 350)..........................583

COUNT III  FRAUDULENT CONCEALMENT (BASED ON NEW
    YORK LAW) .......................................................................588

COUNT IV  UNJUST ENRICHMENT ..........................................596

COUNT V  BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (N.Y. U.C.C. § 2-314)....................597

    GG.   Claims Brought on Behalf of the North Carolina Class
          Members....................................................................600

COUNT I  VIOLATIONS OF THE NORTH CAROLINA UNFAIR
AND DECEPTIVE ACTS AND PRACTICES ACT (N.C.
GEN. STAT. § 75-1.1 *ET SEQ.)* ...........................................600

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
NORTH CAROLINA LAW) .................................................606

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (N.C. GEN. STAT. § 25-2-314)......613

HH.    Claims Brought on Behalf of the North Dakota Class
Members ......................................................................616

COUNT I  VIOLATION OF THE NORTH DAKOTA CONSUMER
FRAUD ACT (N.D. CENT. CODE § 51-15-01 *ET SEQ.*) ....616

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
NORTH DAKOTA LAW) ....................................................623

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (N.D. CENT. CODE § 41-02-31) ...630

II.    Claims Brought on Behalf of the Ohio Class
Members ......................................................................633

COUNT I  VIOLATIONS OF THE OHIO CONSUMER SALES
PRACTICE ACT (OHIO REV. CODE § 1345.01 *ET SEQ.)* 633

COUNT II  FRAUDULENT CONCEALMENT (BASED ON OHIO
LAW) ...................................................................................640

COUNT III  BREACH OF IMPLIED WARRANTY IN TORT .....647

JJ.    Claims Brought on Behalf of the Oklahoma Class
Members ......................................................................649

COUNT I  VIOLATION OF OKLAHOMA CONSUMER
PROTECTION ACT (OKLA. STAT. TIT. 15 § 752 *ET
SEQ.*)....................................................................................649

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
OKLAHOMA LAW) ...........................................................657

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (OKLA. STAT. ANN. § 12A-2-
314).................................................................................664

    KK.   Claims Brought on Behalf of the Oregon Class
Members....................................................................667

COUNT I  VIOLATIONS OF THE OREGON UNLAWFUL TRADE
PRACTICES ACT (OR. REV. STAT. § 646.605, *ET SEQ.)* 667

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
OREGON LAW)....................................................................674

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (OR. REV. STAT. § 72-3140) ........681

    LL.   Claims Brought on Behalf of the Pennsylvania Class
Members....................................................................684

COUNT I  VIOLATIONS OF THE PENNSYLVANIA UNFAIR
TRADE PRACTICES AND CONSUMER PROTECTION
LAW (73 P.S. § 201-1 *ET SEQ.)*...........................................684

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
pENNSYLVANIA LAW) ......................................................691

COUNT III  UNJUST ENRICHMENT...........................................698

COUNT IV  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (13 PA. CONS. STAT. ANN.
§ 2314)...............................................................................700

    MM.  Claims Brought on Behalf of the Rhode Island Class
Members....................................................................703

COUNT I  VIOLATION OF THE RHODE ISLAND UNFAIR
TRADE PRACTICES AND CONSUMER PROTECTION
ACT (R.I. GEN. LAWS § 6-13.1 *ET SEQ.)*..........................703

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
RHODE ISLAND LAW) ......................................................710

COUNT III  UNJUST ENRICHMENT...........................................718

COUNT IV  BREACH OF IMPLIED WARRANTY OF
  MERCHANTABILITY (R.I. GEN. LAWS § 6A-2-314) ...... 719

    NN.   Claims Brought on Behalf of the South Carolina Class
          Members .................................................................. 722

COUNT I  VIOLATIONS OF THE SOUTH CAROLINA UNFAIR
  TRADE PRACTICES ACT (S.C. CODE ANN. § 39-5-10 *ET
  SEQ.*) ........................................................................ 722

COUNT II  VIOLATIONS OF THE SOUTH CAROLINA
  REGULATION OF  MANUFACTURERS, DISTRIBUTORS,
  AND DEALERS ACT (S.C. CODE ANN. § 56-15-10 *ET
  SEQ.*) ........................................................................ 729

COUNT III  FRAUDULENT CONCEALMENT (BASED ON
  SOUTH CAROLINA LAW) ................................................ 731

COUNT IV  BREACH OF IMPLIED WARRANTY OF
  MERCHANTABILITY (S.C. CODE ANN. § 36-2-314) ...... 738

    OO.   Claims Brought on Behalf of the South Dakota Class
          Members .................................................................. 741

COUNT I  VIOLATIONS OF SOUTH DAKOTA DECEPTIVE
  TRADE PRACTICES AND CONSUMER PROTECTION
  LAW (S.D. CODIFIED LAWS § 37-24-1 *ET SEQ.*) ............. 741

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
  SOUTH DAKOTA LAW) .................................................... 747

COUNT III  BREACH OF IMPLIED WARRANTY OF
  MERCHANTABILITY (S.D. CODIFIED LAWS § 57A-2-
  314) ........................................................................... 754

    PP.   Claims Brought on Behalf of the Tennessee Class
          Members .................................................................. 757

COUNT I  VIOLATIONS OF THE TENNESSEE CONSUMER
  PROTECTION ACT (TENN. CODE ANN. § 47-18-101 *ET
  SEQ.*) ........................................................................ 757

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
    TENNESSEE LAW) ............................................................764

COUNT III  BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (TENN. CODE ANN. § 47-2-314) .771

    QQ.   Claims Brought on Behalf of the Utah Class
           Members ......................................................................774

COUNT I  VIOLATIONS OF THE UTAH CONSUMER SALES
    PRACTICES ACT (UTAH CODE ANN. § 13-11-1 *ET
    SEQ.)*.........................................................................774

COUNT II  FRAUDULENT CONCEALMENT (BASED ON UTAH
    LAW)..................................................................................781

COUNT III  BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (UTAH CODE ANN. § 70A-2-
    314)..................................................................................788

    RR.   Claims Brought on Behalf of the Vermont Class
           Members ......................................................................791

COUNT I  VIOLATION OF VERMONT CONSUMER FRAUD
    ACT (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.)* ................791

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
    VERMONT LAW) ..............................................................797

COUNT III  BREACH OF IMPLIED WARRANTY OF
    MERCHANTIBILITY (VT. STAT. ANN. TIT. 9A § 2-314.804

    SS.   Claims Brought on Behalf of the Virginia Class
           Members ......................................................................807

COUNT I  VIOLATIONS OF THE VIRGINIA CONSUMER
    PROTECTION ACT (VA. CODE ANN. § 59.1-196 *ET
    SEQ.)*.........................................................................807

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
    VIRGINIA LAW)................................................................814

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (VA. CODE ANN. § 8.2-314) ........821

    TT.   Claims Brought on Behalf of the Washington Class
Members......................................................................824

COUNT I  VIOLATION OF THE WASHINGTON CONSUMER
PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010
*ET SEQ.)* ................................................................................824

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
WASHINGTON LAW)..........................................................830

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (WASH. REV. CODE ANN. § 62a.2-
314)..........................................................................................838

    UU.   Claims Brought on Behalf of the West Virginia Class
Members......................................................................840

COUNT I  VIOLATIONS OF THE WEST VIRGINIA CONSUMER
CREDIT AND PROTECTION ACT (W. VA. CODE § 46A-1-
101 *ET SEQ.)* .......................................................................840

COUNT II  FRAUDULENT CONCEALMENT (BASED ON WEST
VIRGINIA LAW)..................................................................846

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (W. VA. CODE § 46-2-314)...........854

    VV.   Claims Brought on Behalf of the Wisconsin Class
Members......................................................................856

COUNT I  VIOLATIONS OF THE WISCONSIN DECEPTIVE
TRADE PRACTICES ACT (WIS. STAT. § 110.18) ............856

COUNT II FRAUDULENT CONCEALMENT (BASED ON
WISCONSIN LAW)................................................................862

    WW. Claims Brought on Behalf of the Wyoming Class
Members......................................................................870

COUNT I  VIOLATIONS OF THE WYOMING CONSUMER
PROTECTION ACT (WYO. STAT. ANN. § 40-12-101 *ET
SEQ.*).........................................................................870

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
WYOMING LAW)...............................................................872

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (WYO. STAT. ANN. § 34.1-2-
314)...........................................................................880

PRAYER FOR RELIEF ..................................................882

DEMAND FOR JURY TRIAL ......................................883

PLAINTIFFS MARK WILLIAM DROESSER, JEFFREY A. FORD, JEFFERY FOWLKES, MATTHEW PARKER, and TREVOR WENTZ ("Plaintiffs"), each individually and on behalf of all others similarly situated, file this corrected First Amended Complaint against Defendant Ford Motor Company ("Ford"), in accordance with the Court's December 5, 2019 "Order Striking First Amended Complaint [17, 18] and Requiring Plaintiffs to Comply with Federal Rule of Civil Procedure 15(a)(2)" (ECF No. 19). Plaintiffs, having met and conferred with Ford, hereby affirm to the Court that Ford consents to the filing of Plaintiffs' First Amended Complaint. For the avoidance of doubt, Ford Motor Company only consents under Federal Rule of Civil Procedure 15(a)(2) to the filing of this amended complaint. Ford Motor Company does not consent to the sufficiency of the complaint and reserves all rights to move to dismiss it under Federal Rule of Civil Procedure 12. Plaintiffs' lawsuit is based upon the investigation of counsel, the review of scientific and automotive industry papers, and the investigation of experts with relevant education and experience. In support thereof, Plaintiffs state as follows:

## I.   INTRODUCTION

1.    Ford Motor Company has sold—and continues to sell—hundreds of thousands of diesel trucks equipped with high-pressure fuel injection pumps that are proverbial ticking time bombs, wholly unbeknownst to an unassuming American

public willing to pay a (falsely predicated) premium for vehicles with fictitious "durability," "longevity," and "topnotch fuel economy." Ford promised consumers the continued reliability of their diesel engines with increased power at greater fuel efficiency. However, this came with a hidden-but-material defect, which was deceptively passed on to consumers. The heart of the problem is the Bosch-supplied CP4 high-pressure fuel injection pump, which powers the high-pressure fuel injection system in 2011 to present Ford vehicles with 6.7L Power Stroke diesel engines (the "Class Vehicles"), and which unbeknownst to American consumers is incompatible with U.S. diesel fuel.

2.    The design of the CP4 pump is fundamentally flawed in several respects. While cheap and simple, the design is also extremely fragile and susceptible to failure caused by normal and expected U.S. diesel fuel quality, as well as its own expected wear and gradual disintegration, which scatters wear fragments into the fuel it relies on for lubrication.

3.    The CP4 lacks appropriate design margins. It was originally designed for European lubricity levels (HFRR 460 scar), and Ford actually lobbied domestically for diesel fuel with even greater lubricity (400 scar) so that it could withstand its pump design. But that never became a reality in the United States. Instead, the United States adopted a lubricity standard of 520 scar for its Ultra Low Sulfur Diesel (ULSD), a level that Bosch's Assessed Pump Wear Rating

chart (for pumps that rely on fuel for lubrication) describes as the edge of fatal breakdown.  U.S. diesel also allows for greater water content than European diesel, which can further reduce its lubricity.  And Ford's CP4 fuel pump design and testing did not take into account the realities of U.S. Biodiesel (including B-20), whose fuel qualities, including lubricity, are unstable and variable.  Thus, the CP4 was not designed or proven to be durable with real world U.S. diesel.[1]

4.     The CP4 design depends on a roller pin on cam drive, which is a radical change from the design of its predecessor, the CP3, which had a proven roller slider on polygon eccentric drive.  The roller pin design creates extreme Hertz contact stresses and bearing loads at the roller-to-cam interfaces.  The CP4 relies on the fuel itself for lubrication, but these extreme forces impair its ability to maintain even the minimum fuel film thickness needed for lubrication.  The roller follower shoe further scrapes lubrication from the roller pin as it turns.  The low volume of fuel and high

---

[1] *See, e.g.*, FORD_DIESEL_00051880, at -1884 (Bosch testing plan for the CP4 fuel pump sent to Ford on June 20, 2007, stating that "[f]uels of lesser quality would not be validated by this evaluation program"); FORD_DIESEL_00052471, at -2480 (May 30, 2012 presentation regarding Ford's testing of U.S. diesel fuel due to "[t]he instability of biodiesel blends with ULSD (S15)," concluding that the warranty "[r]isk from [the] tested B20 quality is expected to be high based on [the fact that l]oss of stability occurred during less critical Nov-May test period [and] stability depletion rate critically increased in Spring months . . . . Fuel aging conditions were tested in non-critical environment."); FORD_DIESEL_00057419 (Oct. 1, 2012 letter from Bosch to Ford

pressures at which the CP4 operates can lead to cavitation and the complete loss of lubrication. Normal seasonal or geographic variations in fuel lubricity and water content also result in lower lubricity than the CP4 requires to delay fatal breakdown. The extreme forces and poor lubrication of its design result in the accumulation of wear particles and/or degradation of the fuel inside the pump. Corrosion products from normal U.S. diesel fuel can also accelerate the occurrence of the CP4 pump's catastrophic failure.

5.     The CP4's roller bearing is particularly susceptible to malfunction and accelerated wear. The roller bearing lacks any detent or anti-rotation mechanism to prevent it from turning out of alignment with the rotating cam shaft. The tiniest contaminants, whether produced by the CP4 as wear particles, or those that may be found or develop in the fuel itself, can easily cause the roller bearing to become stuck in its shoe and/or flip sideways. When this happens, the roller bearing stops rolling and turns to sliding wear which grinds aggressively against the oval-shaped spinning cam shaft.

6.     The fragile design of the CP4, and its mis-match for use with U.S. diesel, was never remedied. A reasonable manufacturer would have chosen a more robust pump design, an oil-lubricated pump, or a lubrication monitoring and dosing system. Instead, Ford increased the filtering and water separation in the low-pressure fuel system, but these "Band-Aid" countermeasures are also easily

overwhelmed or circumvented by normal variations in U.S. diesel fuel quality, resulting in the same failure of the CP4 that they were purported to prevent.

7.     While wear particles are harmful and damaging to the entire high-pressure fuel system and engine, they are not readily apparent.  Metal fragments do considerable permanent and expensive damage to the engine, reducing engine efficiency, performance, and mileage, and ultimately resulting in catastrophic failure.  Because the CP4 has two pumping elements (CP4.2), one may compensate for or conceal the growing failure in the other.

8.     Ford has further sought to delay vehicle owners' discovery of the damage through re-defining "failure" and delaying repairs, in the hopes that the final and catastrophic failure occurs outside of the vehicles' warranty period.  Ford's efforts to conceal the problem include, but are not limited to, software updates to raise the threshold of reporting inefficiencies caused by pump damage; instructing its dealerships not to look in places where metal fragments are most likely to be found; and/or refusing to accept the presence of metal shavings as proof of catastrophic failure.  Ford's software update has further served to erase the water-in-fuel (WIF) sensor history, thereby denying the vehicle owner of his or her defense and record that the vehicle was properly maintained.

9.     Ford continues to profit from the sale of these expensive and unreasonably fragile diesel trucks.  While Ford advertised these vehicles as

appropriate for use in the United States, they are simply not durable when used with real world U.S. diesel.  Despite knowing better, Ford continues to pass the buck and blame consumers for a problem that is the result of Ford's bad design and failure to properly design, validate, and test these vehicles.

10.    Ford's motive for this deception is that it saw Bosch's CP4 fuel pump as a cost-saving measure: it uses less fuel by exerting higher fuel pressures, and is cheaper to manufacture than its predecessor, the CP3. The CP4 fuel pump gave Ford a way to profit by advertising the trucks' superior fuel efficiency, while also being able to tout the reliability and durability that diesel vehicles are known for. After the CP4 fuel injection system worked marginally successfully in vehicles in Europe, Ford sought to use the CP4 pump in American vehicles, promising consumers exactly what they were looking for—improvements in torque, horsepower, durability, and fuel economy. But Ford could never deliver on that promise for American vehicles because the CP4 fuel pump is not compatible with American diesel fuel; in fact, the improved fuel efficiency that comes with the CP4 pump *also* comes at the cost that it destroys itself, and—ultimately—destroys the fuel injection system and engine altogether. This "catastrophic" (i.e., complete and total) pump failure can occur as early as "mile 0," since the fuel injection disintegration process begins at the very first fill of the tank, and starts damaging the vehicle's fuel injection system and engine immediately upon the vehicle's first use.

11. U.S. diesel is cleaner than European diesel, which means that it also provides less lubrication than European diesel. When U.S. diesel is run through the fast-moving, high-pressure, lower-volume CP4 pump, it struggles to maintain lubrication. The cleaner, thinner diesel allows air pockets to form inside the pump during operation, causing metal to rub against metal, generating metal shavings which are dispersed throughout the fuel injection system, contaminating and destroying the fuel system and indeed the entire engine. Such catastrophic failure often causes the vehicle to shut-off while in motion and renders it unable to be restarted, because the vehicle's fuel injection system and engine component parts have been completely contaminated and destroyed. The sudden and unexpected shut-off of the vehicle's engine while it is in motion and subsequent inability to restart the vehicle present an inherent risk to consumer safety—one which Ford has recognized in the past—and one which Plaintiffs were not aware of prior to purchasing the Class Vehicles. Thus, contrary to Ford's claims that the CP4 fuel injection system renders the Class Vehicles more reliable, more powerful, and more fuel-efficient, the CP4 fuel injection system actually renders them unreasonably costly, destructive, and dangerous.

12. Moreover, when catastrophic CP4 fuel pump failure occurs, it results in an outrageously expensive repair bill, ranging from $8,000-$20,000, all for a

repair that will not truly ameliorate the issue so long as the vehicle is being filled with U.S. diesel.

13.    Compound this with the fact that the Class Vehicles come with a hefty price tag to begin with, as prices can reach as high as $90,000+ if purchased brand new and upwards of $80,000 if purchased used. Diesel fans pay so much more for their trucks because diesel trucks are expected to last for 500,000 to 800,000 miles, and have more power *and* a lower fuel bill than their gasoline counterparts.

14.    From the outset, Ford knew that the fundamental design of the pump was incompatible with the specifications of U.S. diesel. This is evidenced by the fact that Ford had experience with widespread catastrophic fuel injection pump failures when cleaner diesel standards were first implemented in the 1990s.  By 2002, the Truck & Engine Manufacturers Association ("EMA")—of which Ford is a member company[2]—acknowledged that the lower lubricity of American diesel could cause catastrophic failure in high-pressure fuel injection system components that are made to European diesel specifications.  Not only did Ford fail to inform American consumers and fail to stop touting the fabricated benefits of the vehicles containing CP4 pumps, they actively attempted to shift the blame to the American consumers. For instance, in 2010, Ford began claiming it was *consumers'* improper use of

_____

[2]*See* Truck & Engine Manufacturers Association (EMA) Membership webpage, http://www.truckandenginemanufacturers.org/companies/ (last accessed Aug. 5, 2019).

contaminated or substandard fuels that damaged the vehicles' fuel system, even when Ford knew that the malfunction was *actually* the result of the CP4 fuel injection pump design, which was simply not fit for American diesel fuel. Ford methodically informed its dealers about how to identify these failures in the 6.7L Power Stroke engine, and further instructed its authorized repairpersons as to the most effective ways of avoiding good-faith claims for warranty coverage, in response to (and anticipation of) its escalating rate of Bosch-supplied fuel pump failures in the U.S.[3] As a result, many consumers harmed by Ford's conduct have spent several hundred or several thousand dollars attempting to prevent or mitigate these failures by installing a lift pump or purchasing fuel additives to enhance the fuel lubrication in the vehicle.

15.    Put simply, Plaintiffs and all Members of the proposed Classes paid a premium for their diesel vehicles, and were harmed by being sold vehicles with a defective fuel injection pump that is substandard for American fuel. They have suffered the consequences of an innately manifested—though not readily apparent—

---

[3] *See, e.g.*, Ford Warranty Action Notice No.10-2011, "6.7L Powerstroke Diesel Engine Fuel Contamination, 2011 F-Super Duty, Article 10-B-2011," submitted in response to NHTSA Inquiry No. EA11-003, available at https://static.nhtsa.gov/odi/inv/2011/INRD-EA11003-50103P.pdf (last accessed Aug. 7, 2019), at 74 (Ford notifying its dealerships that "[a] review of warranty claims and returned parts has found that some dealers have replaced 6.7L Powerstroke Diesel Engine fuel system components (including the High Pressure fuel injection pump and injectors) due to damage caused by contaminated fuel," and instructing them, "**Don't** [r]eplace fuel system components under warranty for damage caused by fuel contamination").

defect that secretly existed in the Class Vehicles at the time of sale (or lease), and

which began damaging the Class Vehicles and their fuel delivery systems upon first

use.  Plaintiffs and members of the proposed Classes were thus injured at the point

of sale and throughout their ownership of the vehicles, and paid far more than they

would have if Ford had disclosed the defect prior to the underlying transactions.

## II.   PARTIES

**A.    The Plaintiffs**

16.    For ease of reference, the following chart identifies the Representative

Plaintiffs and their vehicles:

| Representative Plaintiff | Make | Model | Year |
|---|---|---|---|
| Mark William Droesser | Ford | F350 | 2015 |
| Jeffery A. Ford, Sr. | Ford | F250 | 2014 |
| Jeffery Fowlkes | Ford | F250 | 2014 |
| Matthew Parker | Ford | F250 | 2012 |
| Trevor Wentz | Ford | F350 | 2017 |

**Plaintiff Mark William Droesser**

17.    Plaintiff Mark William Droesser (for the purpose of this paragraph and

the immediately following paragraph, "Plaintiff") is a citizen of the State of

Louisiana, and domiciled in Eros, Louisiana. On or around May 1, 2014, Plaintiff

purchased a new 2015 Ford F350, VIN 1FT8W3DT1FEA81237 (for the purpose of

this paragraph and the immediately following paragraph, the "Class Vehicle") for

approximately $58,000 from Steven Ford of Augusta, an authorized Ford dealership

in Augusta, Kansas. Plaintiff still owns the Class Vehicle and it has approximately 115,906 miles on it. Plaintiff uses his F350 as his daily vehicle to get to and from work and for daily activities.

18.   In the days and weeks preceding Plaintiff's purchase, Plaintiff saw Ford's television commercials, internet advertisements, sales brochures, and heard statements from dealer sales representatives wherein Ford claimed the diesel truck, like the one Plaintiff would purchase, had superior horsepower, fuel economy, reliability, and durability compared to other trucks in the American market, and most importantly, that it was compatible for use with U.S. diesel.  On the date that Plaintiff purchased the vehicle, and in purchasing the vehicle, Plaintiff relied on representations from Ford and its dealership sales representatives that the vehicle was compatible with U.S. diesel fuel, was durable, and was reliable.  Absent these representations, Plaintiff would not have purchased the vehicle because it is unfit for its ordinary use and purpose.  Unbeknownst to Plaintiff, at the time of acquisition, the Class Vehicle contained a defective CP4 high-pressure fuel injection pump that was not suitable for American vehicles and which deceived American consumers. Consequently, the vehicle could not deliver the advertised combination of durability, power, reliability, and fuel efficiency of diesel that Plaintiff relied upon. Neither Ford nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully and unexpectedly defective

nature of the Ford Power Stroke diesel engine's CP4 high-pressure fuel injection pump—which is common to all Class Vehicles—prior to purchasing. Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of Ford's wrongful, deceptive conduct. As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, paying a high premium for the engine compared to what they would have paid for a gas-powered engine or other non-defective diesel truck, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, and diminished value of the vehicles. There is a substantial difference in the market value of the vehicle promised by Ford and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for. Plaintiff thusly brings claims individually and as a representative of the Class.

**Plaintiff Jeffrey A. Ford, Sr.**

19.    Plaintiff Jeffrey A. Ford, Sr. (for the purpose of this paragraph and the immediately following paragraph, "Plaintiff") is a citizen of the State of Louisiana, and is domiciled in Natchitoches, Louisiana. On or around September 1, 2017, Plaintiff purchased a certified pre-owned 2014 Ford F250, VIN 1FT7W2BT8EEA21091 (for the purpose of this paragraph and the immediately following paragraph, "Class Vehicle") for approximately $43,700 from A&G Auto

Sales, an authorized dealership in Shreveport, Louisiana. At the time of purchase the Class Vehicle had 76,395 miles on it. Plaintiff still owns the Class Vehicle and it has approximately 91,757 miles on the odometer. Plaintiff uses his F250 as his daily driving vehicle for daily activities. In or around May 23, 2019, Plaintiff was driving the Class Vehicle on Interstate 20 from Big Spring to his home when the truck shut down on the highway. A message alert came on that read "reduced engine power," the Class Vehicle stalled, and then fully died and would not restart. The Class Vehicle was towed by co-workers to Plaintiff's job site and then towed to a certified Ford mechanic at Power Source Diesel in Coahoma, Texas. At the time of the catastrophic failure, Plaintiff's Class Vehicle was still under a Ford-backed 5-year/100,000-mile manufacturing warranty. Ford informed Plaintiff that the CP4 pump was not covered under warranty and refused to cover the repairs despite the fact the truck had only approximately 91,632 miles on it. Plaintiff filed a claim with his insurance company and it was denied due to a faulty part. Plaintiff was forced to pay approximately $8,800 in out-of-pocket repair costs.

20.    In the days and weeks preceding Plaintiff's purchase, Plaintiff saw Ford's television commercials, internet advertisements, and sales brochures wherein Ford claimed the diesel truck, like the one Plaintiff would purchase, had superior horsepower, fuel economy, reliability, and durability compared to other trucks in the American market, and most importantly, that it was compatible with U.S. diesel.  On

the date that Plaintiff purchased the vehicle, and in purchasing the vehicle, Plaintiff relied on representations from Ford that the vehicle was compatible with American diesel fuel, was durable, and was reliable.  Absent these representations, Plaintiff would not have purchased the vehicle because it is unfit for its ordinary use and purpose.  Unbeknownst to Plaintiff, at the time of acquisition, the Class Vehicle contained a defective CP4 fuel injection system that was not suitable for American vehicles and which deceived American consumers. Consequently, the vehicle could not deliver the advertised combination of durability, power, reliability, and fuel efficiency of diesel that Plaintiff relied upon.  Neither Ford nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully and unexpectedly defective nature of the Ford Power Stroke diesel engine's CP4 high pressure fuel pump system—which is common to all Class Vehicles—prior to purchasing.  Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of Ford's wrongful, deceptive conduct.  As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, paying a high premium for the engine compared to what they would have paid for a gas-powered engine or other non-defective diesel truck, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, and diminished value of the vehicles. There is a substantial difference in the market value

of the vehicle promised by Ford and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for. Plaintiff thus brings claims individually and as a representative of the Class.

**Plaintiff Jeffery K. Fowlkes**

21.    Plaintiff Jeffery K. Fowlkes (for the purpose of this paragraph and the immediately following paragraph, "Plaintiff") is a citizen of the State of Michigan, and domiciled in Farmington Hills, Michigan. On or around May 5, 2018, Plaintiff purchased a 2014 Ford F250, VIN 1FT7W2BT6EEB10805 (for the purpose of this paragraph and the immediately following paragraph, the "Class Vehicle") for approximately $45,000 from Bob Maxey Ford of Detroit, an authorized Ford dealership in Detroit, Michigan. At the time of purchase the Class Vehicle had approximately 80,000 miles on it.  Plaintiff still owns the Class Vehicle and it has approximately 100,000 miles on it. Plaintiff uses his F250 as his daily vehicle to get to and from work and for daily activities.

22.    In the days and weeks preceding Plaintiff's purchase, Plaintiff saw Ford's television commercials, internet advertisements, sales brochures, and heard statements from dealer sales representatives wherein Ford claimed the diesel truck, like the one Plaintiff would purchase, had superior horsepower, fuel economy, reliability, and durability compared to other trucks in the American market.  On the

date that Plaintiff purchased the vehicle, and in purchasing the vehicle, Plaintiff relied on representations from Ford and its dealership sales representatives that the vehicle was compatible with American diesel fuel, was durable, and was reliable. Absent these representations, Plaintiff would not have purchased the vehicle because it is unfit for its ordinary use and purpose. Unbeknownst to Plaintiff, at the time of acquisition, the Class Vehicle contained a defective CP4 fuel injection system that was not suitable for American vehicles and which deceived American consumers. Consequently, the vehicle could not deliver the advertised combination of durability, power, reliability, and fuel efficiency of diesel that Plaintiff relied upon. Neither Ford nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully and unexpectedly defective nature of the Ford Power Stroke diesel engine's CP4 high pressure fuel pump system—which is common to all Class Vehicles—prior to purchasing. Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of Ford's wrongful, deceptive conduct. As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, paying a high premium for the engine compared to what they would have paid for a gas-powered engine or other non-defective diesel truck, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, and diminished value of the vehicles. There is a substantial difference

in the market value of the vehicle promised by Ford and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for. Plaintiff thusly brings claims individually and as a representative of the Class.

**Plaintiff Matthew Parker**

23.     Plaintiff Matthew Parker (for the purpose of this paragraph and the immediately following paragraph, "Plaintiff") is a citizen of the State of Ohio, and is domiciled in Lima, Ohio. On or around May 1, 2015, Plaintiff purchased a 2012 Ford F250, VIN 1FT7W2BT6CEA68021 (for the purpose of this paragraph and the immediately following paragraph, "Class Vehicle") for approximately $40,000 from Terry Hendricks Ford, an authorized Ford dealership in Archbold, Ohio. At the time of purchase the Class Vehicle had approximately 24,000 miles on it. Plaintiff still owns the Class Vehicle and it has approximately 70,000 miles on the odometer. Plaintiff uses his F250 as his daily vehicle for daily activities. In or around May 2018, Plaintiff was driving the Class Vehicle a few miles from his home on Interstate 75. He noticed the Class Vehicle had black smoke coming from the exhaust and soon thereafter the Class Vehicle shut down and would not restart. At the time of the catastrophic failure Plaintiff's Class Vehicle was still under a Ford-backed 5-year/100,000-mile manufacturing warranty. The Class Vehicle was taken to Popiel Diesel Performance, LLC in Harrod, Ohio, for repair. There were metal shavings

found in the fuel. Ford refused to cover this repair under warranty despite the fact the truck had only approximately 65,000 miles on it. Plaintiff's insurance company contacted the gas station to investigate if there was fuel contamination. The insurance company concluded it was not fuel contamination. Plaintiff was forced to pay approximately $8,000 in out-of-pocket repair costs.

24.    In the days and weeks preceding Plaintiff's purchase, Plaintiff saw Ford's television commercials, internet advertisements, sales brochures, and heard statements from dealer sales representatives wherein Ford claimed the diesel truck, like the one Plaintiff would purchase, had superior horsepower, fuel economy, reliability, and durability compared to other trucks in the American market, and most importantly, that it was compatible with U.S. diesel.  On the date that Plaintiff purchased the vehicle, and in purchasing the vehicle, Plaintiff relied on representations from Ford and its dealership sales representatives that the vehicle was compatible with American diesel fuel, was durable, and was reliable.  Absent these representations, Plaintiff would not have purchased the vehicle because it is unfit for its ordinary use and purpose.  Unbeknownst to Plaintiff, at the time of acquisition, the Class Vehicle contained a defective CP4 fuel injection system that was not suitable for American vehicles and which deceived American consumers. Consequently, the vehicle could not deliver the advertised combination of durability, power, reliability, and fuel efficiency of diesel that Plaintiff relied upon.

Neither Ford nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully and unexpectedly defective nature of the Ford Power Stroke diesel engine's CP4 high pressure fuel pump system—which is common to all Class Vehicles—prior to purchasing. Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of Ford's wrongful, deceptive conduct. As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, paying a high premium for the engine compared to what they would have paid for a gas-powered engine or other non-defective diesel truck, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, and diminished value of the vehicles. There is a substantial difference in the market value of the vehicle promised by Ford and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for. Plaintiff thus brings claims individually and as a representative of the Class.

**Plaintiff Trevor Wentz**

25.    Plaintiff Trevor Wentz (for the purpose of this paragraph and the immediately following paragraph, "Plaintiff") is a citizen of the State of Pennsylvania, and is domiciled in Haven, Pennsylvania. On or around May 25, 2018, Plaintiff purchased a 2017 Ford F350, VIN 1FT8W3BT2HEB72314 (for the purpose

of this paragraph and the immediately following paragraph, "Class Vehicle") for approximately $70,000 from Mark Martin Motors, a dealership in Mannheim, Pennsylvania. At the time of purchase the Class Vehicle had 24,000 miles on it. Plaintiff still owns the Class Vehicle and it has approximately 34,912 miles on the odometer. Plaintiff uses his F350 as his daily vehicle for daily activities and occasionally pulls a 36.5-foot fifth-wheeler trailer. In or around May 2019, Plaintiff was driving the Class Vehicle in a residential area in Pennsylvania when Class Vehicle shut down due to fuel pump failure and would not restart. At the time of the catastrophic failure Plaintiff's Class Vehicle was still under the Ford-backed 5-year/100,000-mile manufacturing warranty. The Class Vehicle was taken to a Ford dealership in Hamburg, Pennsylvania. Ford refused to cover the repair under warranty despite the fact the truck had only approximately 34,912 miles on it. Plaintiff had the repairs done by a personal mechanic with out-of-pocket costs of approximately $7,000.

26.    In the days and weeks preceding Plaintiff's purchase, Plaintiff saw Ford's television commercials, internet advertisements, and sales brochures wherein Ford claimed the diesel truck, like the one Plaintiff would purchase, had superior horsepower, fuel economy, reliability, and durability compared to other trucks in the American market, and most importantly, that it was compatible with U.S. diesel.  On the date that Plaintiff purchased the vehicle, and in purchasing the vehicle, Plaintiff

relied on representations from Ford that the vehicle was compatible with American diesel fuel, was durable, and was reliable.  Absent these representations, Plaintiff would not have purchased the vehicle because it is unfit for its ordinary use and purpose.  Unbeknownst to Plaintiff, at the time of acquisition, the Class Vehicle contained a defective CP4 fuel injection system that was not suitable for American vehicles and which deceived American consumers. Consequently, the vehicle could not deliver the advertised combination of durability, power, reliability, and fuel efficiency of diesel that Plaintiff relied upon.  Neither Ford nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully and unexpectedly defective nature of the Ford Power Stroke diesel engine's CP4 high pressure fuel pump system—which is common to all Class Vehicles—prior to purchasing.  Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of Ford's wrongful, deceptive conduct.  As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, paying a high premium for the engine compared to what they would have paid for a gas-powered engine or other non-defective diesel truck, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, and diminished value of the vehicles. There is a substantial difference in the market value of the vehicle promised by Ford and the market value of the vehicle received by

Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for. Plaintiff thus brings claims individually and as a representative of the Class.

### B. The Defendant

27.     Defendant Ford Motor Company ("Ford") is a publicly traded corporation organized under the laws of the State of Delaware with its principal place of business at One American Road, Dearborn, Michigan 48126. Defendant Ford Motor Company can be served with process through its agent The Corporation Company, 40600 Ann Arbor Road E. Ste. 201, Plymouth, Michigan, 48170.

28.     Defendant Ford designs, manufactures, distributes, and sells Ford automobiles in this District and multiple other locations in the United States and worldwide. Ford and/or its agents designed, manufactured, and installed the engine systems in the Class Vehicles. Ford also developed and disseminated the materially misrepresentative owner's manuals and warranty booklets, advertisements, and other intentionally unreasonable and deceptive promotional materials relating to the Class Vehicles. Ford also designed advertising material that it sent to Ford Dealerships for the purpose of having dealers distribute these to consumers, and Ford authorized dealers to communicate with consumers about the performance of the vehicles.

### III.    VENUE AND JURISDICTION

29.    Venue is proper in this District under 28 U.S.C. § 1391 in light of the following: (1) Defendant Ford Motor Company's principal place of business is in this District and thus it conducts substantial business in this District and has intentionally availed itself of the laws and markets of the United States and this District; and (2) Many of the acts and transactions giving rise to this action occurred in this District, including, *inter alia,* Ford's promotion, marketing, distribution, and sale of vehicles containing the defective Bosch CP4 fuel pump in this District.  At least one named Plaintiff, as well as thousands of Class Members, purchased their Class Vehicles from one of the multiple Ford dealerships located in this District. Further, a significant number of the Class Vehicles were registered in this District and thousands of Class Vehicles were in operation in this District.  Venue is also proper under 18 U.S.C. § 1965(a) because Ford is subject to personal jurisdiction in this District as alleged, *infra*, and Ford has agents, *i.e.,* Ford-certified dealerships, located in this District.

30.    The Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class Member is of diverse citizenship from one Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5 million, exclusive of interests

and costs.   Subject-matter jurisdiction also arises under the Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, *et seq*.

31.   This Court has personal jurisdiction over Defendant Ford Motor Company pursuant to 18 U.S.C. §§ 1965(b) and (d), and as well as supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.   Ford has committed and continues to commit acts giving rise to this action within Michigan and within this judicial District.   Ford has established minimum contacts within the forum such that the exercise of jurisdiction over Ford would not offend traditional notions of fair play and substantial justice.   In conducting business, *i.e.,* marketing, supplying, and distributing Ford-brand automobiles within the State of Michigan, and specifically, within this judicial District, Ford derives substantial revenue from its activities and its products being sold, used, imported, and/or offered for sale in Michigan and this judicial District. Ford has multiple Ford-brand dealerships in the State of Michigan and sells thousands of automobiles each year in the state. Ford provides advertising and customer facing information to theses dealers for the purpose of exposing consumers across the country to that information.

## IV.   FACTUAL ALLEGATIONS

### A.   The Class Vehicles

32.   For purposes of this Complaint, the "Class Vehicles" consist of Ford-manufactured diesel-fueled automobiles equipped with a 6.7L Power Stroke engine,

ranging from the 2011–present model years. All vehicles falling under this Class Vehicle group were manufactured with the defective CP4 fuel injection pump.

## B. The Rise of Diesel Vehicles in the United States

33.    Diesel engines have long enjoyed a loyal following in some U.S. market segments because of their reliability, fuel efficiency, and power.  Diesel engines produce higher torque, even at low revolutions per minute ("RPM"), making them popular in buses, heavy-duty pickups, and vans, including commercial vehicles, farm trucks, and ambulances.

34.    With the invention of common-rail systems, diesel fuel was injected at higher pressure, forming a finer mist that increases fuel efficiency and power. Common-rail systems also made diesel engines burn cleaner and with less noise. While diesel had long been popular overseas, these advances fueled a growing market here in the U.S. for diesel trucks, and even diesel passenger cars.

35.    From the outset, Ford was in competition with fellow Members of the "Big Three"—i.e., auto giants General Motors ("GM") and Fiat Chrysler ("FCA"), with each racing to dominate the American diesel vehicle market.[4]  Ford looked to

---

[4] Notably, both GM and FCA eventually incorporated the CP4 into their respective diesel-engine vehicle platforms with similarly catastrophic results – of which Ford was contemporaneously aware. *See, e.g.*, FORD_DIESEL_00005019, Oct. 21-25, 2011 email chain between Ford employees K. Pumford, B. Fulton, and C. Arnesto, at -5019 (Pumford writing, "Just to capture the information I mentioned in our Friday evening phone call, I've heard repeatedly and from different people at Bosch that the 2011 GM Duramax CP4.2 pump has had warranty problems . . .").

Europe and the expertise of international automotive parts supplier Bosch to increase the fuel efficiency and power of its diesel engines.  The heart of this diesel revolution would be powered by Bosch's more durable CP3 fuel injection pump, the predecessor to the CP4 fuel injection pump at issue in this suit.  The reliability of the CP3 became key to the "million-mile" reputation of diesel truck engines in the U.S. Not surprisingly, American trust in diesel technology grew.

36.    American consumers paid a "Built Ford Tough" premium for the increased reliability, fuel efficiency, and power of diesel—and, Bosch promised to continue to deliver advances and continued improvements.  Bosch claimed that the next generation of fuel pump, the CP4, would maintain reliability while also increasing fuel efficiency and power, but expressly cautioned Ford that *Ford* was responsible for validating the "durability and functionality" of the CP4 "with the target injection system by appropriate vehicle test[ing] under realistic conditions."[5] As discussed further below, this is something Ford did not sufficiently do.

37.    Much like what occurred in the nationwide Volkswagen emissions scandal involving Bosch, reliance on Bosch's expertise in the design of diesel engines would lead Ford into a course of action it should now regret.  The heart of Ford's success under increasingly competitive fuel efficiencies was Bosch's

---

[5] FORD_DIESEL_00008469, Feb. 27, 2008 Bosch CP4 Common-Rail High-Pressure Pump Characteristic Data Sheet, at -8477.

cheaper, substandard CP4 fuel injection pump.  Bosch had the technical know-how to do what needed to be done to get ahead; unfortunately for the American public, the easiest way for Ford to succeed was to cheat American consumers on durability and overall vehicle functionality by equipping the Class Vehicles with this ticking time bomb of a fuel injection pump that dooms the modern Ford Power Stroke diesel engine system from day one.

C.   **Ford's Knowledge of Incompatibility, Defectiveness, and Failures Associated with Bosch's CP4 Pump When Used with American Diesel Fuel**

38.     The CP4 Pump operates at higher pressures than its predecessor, the CP3. The CP4 achieves greater fuel efficiency by pumping less fuel through the engine; however, it is incompatible with U.S. diesel fuel.

39.     The CP4 relies on the diesel fuel itself to maintain lubrication.  The lubricity of diesel in Europe is more standardized than American diesel, but European diesel is also dirtier.  Because the sulfur in diesel exhaust is a major cause of smog and acid rain, in 2007, the EPA required diesel fuel sold in the U.S. to have less than 15 ppm of sulfur. This is known as Ultra Low Sulfur Diesel ("ULSD").  It is produced through a refinery process known as hydrodesulfurization ("HDS").  Sulfur provides some of the lubricity needed for the pump to operate.  But more importantly, the refinery process required to produce low sulfur diesel destroys a variety of important nitrogen and oxygen based polar and organic compounds that

give diesel fuel its lubricity.  Indeed, ULSD fuel is considered to be very 'dry' and incapable of lubricating vital diesel fuel delivery components, specifically high-pressure fuel pumps and injectors; as a result, American diesel does not contain the lubrication necessary for the Bosch CP4 Pump to operate durably, and these fuel injection system components "are at risk of premature and even catastrophic failure when ULSD fuel is introduced to the system."[6]  Low sulfur diesel fuel first appeared in American markets in the 1990s, with fewer than 500 ppm of sulfur.  It is estimated that 65 million fuel injection pumps failed as a result.  It was thought that the pumps failed at the equivalent of 100 to 200 hours of operation.  Thus, the critical importance of lubricity for diesel injection pumps was well known to all auto manufacturers for a decade or more before the Class Vehicles were designed or introduced into the market.

40.    Moreover, Ford was well aware of the foreseeable mismatch of the lower lubricity specifications of ULSD and the Bosch CP4 fuel pump:

> Lubricity describes the ability of a fluid to minimize friction between, and damage to, surfaces relative to motion under loaded conditions.  Diesel fuel injection equipment relies on the lubricating properties of fuel.  Shortened life of engine components such as fuel injection pumps and unit injectors can usually be attributed to lack of fuel lubricity and, hence, lubricity is of concern to engine manufacturers.  This property is not addressed adequately by ASTM D 975.

---

[6] Arlen Spicer, *Diesel Fuel Lubricity Additives: Study Results*, THE DIESEL PLACE, Aug. 26, 2007, available at http://www.jatonkam35s.com/DeuceTechnicalManuals/Diesel_fuel_additive_test.pdf (last accessed Aug. 5, 2019).

Apr. 22, 2002, Truck & Engine Manufacturers' Association ("EMA"),

Position Statement entitled, "EMA Consensus Position Pump Grade Specification."

41.     Ford Motor Company is a member of the EMA.[7]

42.     Further, the EMA made clear:

> Regardless of the fuel sulfur level, ASTM D975 currently requires lubricity specified as a maximum wear scar diameter of 520 micrometers using the HFRR test method (ASTM D6079) at a temperature of 60°C. Based on testing conducted on ULSD fuels, however, fuel injection equipment manufacturers have required that ULSD fuels have a maximum wear scar diameter of 460 micrometers. EMA recommends that the lubricity specification be consistent with the fuel injection equipment manufacturers' recommendation.

8/8/2005 Engine Manufacturers Association, Position Paper entitled "North

American Ultra Low Sulfur Diesel Fuel Properties."

43.     In 2005, the EPA instituted a lubricity requirement for the lower sulfur

diesel sold in the U.S.  It required sellers of diesel to ensure the fuel initially meets

a minimum lubricity level of a maximum wear scar diameter of 520 microns based

on the testing and standard propounded by the American Society for Testing and

Materials ("ASTM") D-975.

44.     By 2007, on-road diesel fuel in the U.S. for highway vehicles was

uniformly ULSD, which has an allowable sulfur content much lower (15 ppm) than

---

[7] *See* Truck & Engine Manufacturers Association (EMA) Membership webpage, *supra* note 2.

the previous U.S. on-highway standard for low sulfur diesel (500 ppm)."[8] In reality, 2007-and-later U.S. diesel frequently contains even less than 15 ppm, a truth that is widely known within the U.S. automotive industry and was indeed known by Ford early-on.[9]

45.     In 2008, Bosch published and presented a paper to a global audience of auto aficionados at SAE International. Bosch's study was entitled, "Investigation into the Formation and Prevention of Internal Diesel Injector Deposits," which explained in near-granular detail the purported compatibility-related fueling issues present in various diesel fuel markets, and how to prospectively avoid them.  This

---

[8] *See New Ultra Low Sulfur Diesel fuel and new engines and vehicles with advanced emissions control systems offer significant air quality improvement*, Clean Diesel Fuel Alliance, Feb. 25, 2017,                              available                              at https://web.archive.org/web/20170225141751/http://www.ct.gov/deep/lib/deep/air/ultra_low_sul fur_diesel/ulsdfs.pdf (last accessed Aug. 7, 2019); *see also* J. Thijssen, LLC, *The Impact of Future Diesel Fuel Specifications and Engine Emissions Standards on SOFC*, U.S. DEPT. OF ENERGY, NAT'L ENERGY TECHNOLOGY LABORATORY, June 29, 2004, at I.

[9] *See, e.g.,* FORD_DIESEL_00004956, Oct. 27, 2011 email chain between Ford employees K. Pumford, P. Bruckner, B. Fulton *et al.* beginning with Bruckner's question to Pumford, "Do you have any information specific to the range of diesel fuel quality (specifications) that should be used in the 6.7L to help our customers better understand what the requirements are? Trying to be a little pro-active here with the variability in fuels that we're seeing." Pumford responds, "What the ASTM D975 specification is and what is actually in the field are two different things, and unregulated biofuel adds another twist . . . . It's a very complicated topic." *See also 2014 Infineum Worldwide Winter Diesel Fuel Quality Survey*, INFINEUM INT'L LTD., available at https://www.infineum.com/media/80722/wdfs-2014-full-screen.pdf (last accessed Aug. 5, 2019), at 6-7 (Infineum Worldwide Winter Diesel Fuel Quality Survey in which 341 diesel fuel samples were tested from around the world and **all** diesel fuel samples that the organization collected and tested from the U.S. and Canada contained 10 ppm S or less).

paper, which was circulated among decision-makers at Ford and Bosch,[10] became

publicly available as part of a larger NHTSA investigation, as referenced and further

explained below.

46.     Moreover, in September 2009, the Joint Diesel Fuel Injection

Equipment Manufacturers ("Joint FIE Manufacturers") released a "Common

Position Statement regarding Fuel Requirements for Diesel Fuel Injection Systems,"

in which the Joint FIE Manufacturers expressed the following key points to their

U.S. automotive industry customers:

> The continuous world-wide tendency to increase engine
> performance and reduce emissions has necessitated the
> development of new generations of enhanced diesel fuel
> injection equipment, supporting the achievement of
> stringent legislation targets.  Rising injection pressures
> and multiple injections result in higher operating
> temperatures, increased contract pressures and reduced
> clearances . . . .  Alterations to fuel quality, e.g., by
> increasingly severe refinery hydroprocessing being
> introduced to remove Sulphur also reduce the content of
> aromatics and destroy surface active compounds and
> antioxidants. ***Removal of these beneficial compounds
> effects boundary lubrication, commonly known as
> lubricity, and inherent oxidation stability and must be
> compensated for.*** Fuel parameters such as cetane number,
> viscosity, density, lubricity, oxidation stability, sulfur and
> aroma content, together with the absence of free water and

---

[10] *See* Dec. 16, 2009, email from E. Santiago to Ford employees S. Eeley and D. Mondragon forwarding *Investigation into the Formation and Prevention of Internal Diesel Injector Deposits*, SAE Technical Paper Series (2008-01-0926), available at https://static.nhtsa.gov/odi/inv/2011/INRD-EA11003-50107P.pdf (last accessed Aug. 7, 2019), at 150-62.

dirt contamination, are key parameters required to ensure performance of equipment in the field.

Biofuels are becoming increasingly available to end-users [including] in the United States of America . . . . It must be recognized that the physical and chemical characteristics of bio components are significantly different to conventional fuels and that care must be taken in their specification and use.

Diesel fuel injection equipment (FIE) manufacturers fully support the development of alternative sources of fuel . . . . *However, many vehicles, engines and equipment are not designed to run on them.  It is recommended to refer to the vehicle and engine manufacturers 'Limitations of Use' documents for guidance.*"[11]

47.    A prudent manufacturer would design or select a fuel injection pump designed for the fuel of the country in which the vehicle is to be sold.

48.    Yet Ford solicited Bosch to provide the CP4 Pump for Ford's Power Stroke engines beginning with the 2011 model year.  It was no secret to them that the CP4 Pump is inappropriate for diesel vehicles in the U.S.  The CP4 Pump was originally designed for European fuel's greater lubricity standard of 460 wear scar. Ford never performed testing necessary to certify the vehicles containing CP4 pumps for use with American diesel (including Biodiesel).  Ford purposefully failed to test the vehicles with fuels that accurately represent the ASTM D-975 specification of

---

[11] Joint FIE Manufacturers, *Fuel Requirements for Diesel Fuel Injection Systems: Diesel Fuel Injection Equipment Manufacturers: Common Position Statement 2009*, Sept. 2009, available at http://www.globaldenso.com/en/topics/files/common_position_paper.pdf (last visited Aug. 5, 2019) (emphasis added).

U.S. diesel with regard to lubricity and water content.[12]   And Ford completely failed to test and design in accordance with the variability in fuel quality found in the real world at the pump.

49.    In order to reduce costs and increase fuel efficiency, Ford sold vehicles with a fuel injection pump that was clearly out of specification, having inadequate lubrication, corrosion resistance, and durability for the U.S. market.  Ford continues to feign ignorance while blaming consumers for the mismatch between its trucks and the fuel available at the pump.[13]

50.    The adverse effects of ULSD on high-pressure fuel pump injection systems have been acknowledged within the automotive industry. For example, in a July 2014 study on the use of fuel injection equipment with global diesel fuels, Parker Racor, the leading global supplier of diesel fuel filtration systems, explained the following:

> The increase in system pressures in diesel engines has a significant effect on filtration requirements.  These systems are highly vulnerable to many forms of

---

[12] *See, e.g.*, FORD_DIESEL_00005320, at 5321 (May 4, 2006 Ford Engineering Material Specification ("EMS") for general purpose Ultra-Low Sulfur Diesel ("ULSD") to be used in Ford vehicle testing, which ████████████████████████████████████ ████████████████████████████████ FORD_DIESEL_00049779 (May 17, 2012 EMS for general purpose ULSD stating same).

[13] Moreover, for a consumer, there *is* no "good versus bad" fuel retailer analysis – the consumer cannot "choose" the quality of the diesel fuel s/he purchases from Exxon, Chevron, Texaco, Valero, or any other diesel fuel retailer.  It is absurd to think that a consumer should have to perform scientific testing on the diesel fuel s/he acquires at his/her local gas station prior to putting said diesel into the Class Vehicles.  The bottom line is that fuel quality is not a customer choice.

contaminants and the need for robust high efficiency filtration has never been higher . . . . An analysis of global diesel fuel quality shows that although the fuel quality in the developed markets has improved, significant quality concerns still remain. Levels of water and contaminants remain at levels that can cause long term issues to the latest fuel injection systems. Specifically, the levels of contaminants smaller than 5 microns remain very high. These particles can be small enough to pass into the internal clearances of high pressure fuel injection systems and can lead to erosion and wear of critical areas leading to a loss in system performance and eventually system malfunction. Diesel filtration balances pressure drop, useful life and efficiency. ***However the real long term effect on fuel system life is often not adequately considered[,] as much of the engine durability testing performed is done using high quality fuel that doesn't represent the range of fuels seen in the market***. Consideration of filtration performance under less than ideal conditions is necessary to develop an acceptable level of protection.[14]

51. Indeed, the automotive industry was well aware of the consequences of this early-on. For example, in May 2010, after analyzing foreign particles found in the fuel filter of a failed Audi diesel engine and determining that the biodiesel used in the subject engine was "insufficient[ly] cleans[ed]" resulting in deposit formation

---

[14] Steven Hardison & Adam Pearce, *July 2014 Summary of Fuel Injection Equipment with Respect to Diesel Fuel Filtration*, PARKER RACOR & AVL, Jan. 7, 2015, available at https://www.parker.com/literature/Racor/RSL0194%20Rev%20-%20(TAP_AVL-Fuel-Study-Racor).pdf (last accessed Aug. 5, 2019), at *i*; *see also id.* at 13 ("Careful monitoring of fuel quality and filter performance is needed to protect sensitive diesel engine injection systems"); *id.* at 29 ("To avoid costly engine and fuel system components damages, advanced multi-stage filtration is recommended"); *id.* at 31 ("Modern high pressure diesel fuel injection systems contain very small internal clearances and are vulnerable to any build-up of deposits on these components . . . . This issue has become a significant concern in the industry").

"which is not conducive to establishing the lubricating film in the [fuel pump] roller support," Bosch noted that, "When [diesel fuel] viscosity is too low, the lubricating film is not established properly and mixed friction and surface contact occurs = bad."[15] Likewise, in its January 2012 submission to NHTSA in response to the agency's investigation into high-pressure fuel pump failures, Ford noted that, "Inadequate lubricity can result in increased tailpipe emissions, excessive pump wear and, in some cases, catastrophic failure."[16]  The CP4 is, by its own design, is expected to fail quickly through ordinary use in the U.S., and Ford saw this problem year after year[17] and yet continued to manufacture its diesel Super Duty trucks with the inherently defective fuel pump.

---

[15] Jul. 27, 2012 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59345P.pdf," at 12–14 (May 26, 2010 email chain between Audi and Bosch representatives re: "Particle analyses, fuel filter").

[16] Jan. 20, 2012, Ford Response to NHTSA Inquiry EA11-003, Document titled, "INRD-EA11003-50102P.pdf," at 19, available at https://static.nhtsa.gov/odi/inv/2011/INRL-EA11003-50102P.pdf (last accessed Aug. 7, 2019).

[17] *See, e.g.*, FORD_DIESEL_00015951, Mar. 10, 2016 Ford PowerPoint entitled, ███ at -5953 (discussing how ███ *id.* at -5958 ███ FORD_DIESEL_00016600, Nov. 4-17, 2017 email chain between Ford and Bosch employees, at -6600 (Ford Supervising OPD Engineer D. Kunitz discussing yet another "no-start" CP4-induced vehicle failure and noting, "With pump corrosion being identified as [the] cause . . . we need to trace back where and when corrosion occurred and take steps to eliminate the source. . . . If we cannot pinpoint a special cause, I would expect a rash of similar failures."); FORD_DIESEL_00016983, May 24, 2017 Ford PowerPoint entitled, ███ at -6984 (discussing ███ *id.* at at -6986 (under "Recommendations:"

- 35 -

52.     The Bosch CP4 Pump multiplies the diesel fuel problem in ways that are catastrophic.   Ford chose the Bosch CP4 Pump because it was supposed to improve fuel efficiency by using less fuel.  The Bosch CP4 Pump struggles to supply adequate fuel to the engine under the higher pressures and lower volume of fuel in newer engines, and it is overly susceptible to air pockets forming inside the pump during operation.  These air bubbles allow metal to rub against metal.  Ford had achieved greater fuel efficiency at the expense of often running the pump dry.

53.     To reiterate, as the CP4 fuel pump wears, it sends component metal shaving and other debris throughout the fuel system. As the shavings disperse and contaminate the engine and the high-pressure fuel system, the fuse of the proverbial CP4 "time bomb" has been lit, and it is only a matter of time before the entire engine system fails. The failure of a CP4 pump requires repair or replacement of the entire high-pressure fuel system, including the pump, fuel injectors, fuel rails, and injection lines.  Repair costs when a CP4 pump fails average between $8,000 and $20,000.

54.     Ford knew that the Bosch CP4 fuel injection pump was defective and incompatible with U.S. diesel fuel from the get-go, even prior to its usage in the Class Vehicles. CP4 failures began running rampant in American Audi and

Volkswagen vehicles at least as early as 2008.[18] These failures echo the very failures that continue to occur in the Class Vehicles to this day, and from late 2011 through early 2012, documentation regarding these widespread CP4 failures was provided to the National Highway Traffic Safety Administration ("NHTSA") by Bosch, Audi, and Volkswagen, in connection with NHTSA's Office of Defect Investigations ("ODI") Inquiry No. INRD-EA11003, an investigation which NHTSA eventually pulled Ford into as well.[19]

55.     This documentation, known in the industry, demonstrates the nature of the CP4 defect that would ultimately come to exist in the Class Vehicles.  For example, in August 2009, Audi sent Bosch a failed CP4 fuel pump for analysis after "[t]he high pressure fuel pump failed catastrophically shedding metal shavings throughout the entire fuel system . . . .  This car will require a complete new fuel

---

[18] *See, e.g.*, July 7, 2008 email between Audi and Bosch representatives re: "Performance drop AU716 98017 with shavings in the HPP," discussing how "[s]omething is disintegrating" in the Audi 716 fuel pump and that "[w]e are a bit speechless" about "[t]he shavings, or whatever it is"), submitted as part of Bosch's May 2012 responses to NHTSA ODI Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59334P.pdf," at 6; *id.* at 27 (July 31, 2008 email from Audi representative re: "Fuel quality in [**REDACTED**]," stating that, "With our [Audi's] V6TDI with the high-pressure pump CP4.2 we have significantly higher failure rates in [**REDACTED**] (higher by a factor of approx. 30 than the average of all markets) . . . . Have you any information suggesting that such a thing could be possible with this country-specific diesel fuel?"); *id.* at 28–31 (Feb.– May 2011 email chain between Audi, Volkswagen and Bosch representatives re: "Status CP4 USA," in which the parties discuss the substantial increase in warranty claims with the implementation of the CP4 in vehicles in the U.S. market).

[19] *See, e.g., infra* ¶¶ 63-64, 66, 71, 72, 74-75, and corresponding footnotes (discussing Ford's responses to NHTSA's requests pursuant to ODI Inquiry No. INRD-EA11003).

system from tank to injectors and everything in between. This will be a very lengthy repair (weeks) . . . [and w]e need to determine if component failure or bad fuel is to blame." March 7, 2011 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59347P.pdf," at 35. Thereafter, on September 1, 2009, Bosch responded to Audi with the following flippant analysis note from their failed pump inspection: "Gentleman, [t]he pump mentioned below was analyzed. The result of the finding is sand-like particles in the fuel. *Defect caused by customer*." *Id.* at 38 (emphasis added).[20]

56.     Likewise, in September 2009, Bosch, at the time supplying the defective CP4 fuel pump to Audi and Volkswagen, received a notice from Audi

_____

[20] *See also* March 7, 2011 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59347P.pdf," at 21 (Mar. 31, 2008 email from Volkswagen to Bosch re: "Radio: Drivetrain damage failure US07 (Jetta)," in which the parties are discussing an HPFP failure in a 2007 Jetta and the Volkswagen representative frustratedly states, "Can you (panel of experts) explain to us how the failure mechanism was after this mileage? . . . . We will certainly not accept a failure because of fuel quality! . . . . We also see a big risk here for our BIN5 pump, which has to manage with the same fuel in USA"); May 2012 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59334P.pdf," at 9–10 (July 4, 2008 email from Audi to Bosch re: "CP4 BIN5 3rd and 4th failure in USA," analyzing root cause of CP4 field failures and positing, "Why is it that EC pumps do not fail? Because of a different fuel?"); *id.* at 13–14 (July 11, 2008 email between Audi and Bosch representatives re: "W19 BIN5 pump failure" in which Audi writes, "For the zero error meeting in FeP on Tuesday we expect the information discussed at the error meeting on endurance testing of fuels with 'poor lubricity, containing water etc.' and all failures, drivetrain damage in all component, system and other endurance runs of Bosch and all customers"); July 27, 2012 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59345P.pdf," at 7 (emphasis added) (June 30, 2009 email between Bosch and Audi representatives re: "ANS: HPP measures/ USE," in which the Audi representative writes, "I don't think you're reading my mails anymore! Please look at the failure curves specifically, then you'll see that *we only have a problem in certain markets[.] . . . Depending on how poor the fuel currently on the market is*"); *id.* ("I'd prefer to have a more robust pump").

about a "3rd HPP failure" in the U.S., explaining, "I'm afraid there's bad news from the U.S.: After 2 failures in the field . . . the 3rd HPP failure has now occurred in the EC endurance run."[21] Photos attached to the email show the failed Bosch CP4 fuel pump, replete with metal shavings in the gasket (*see* photographic illustration hereafter):[22]

 

57.    By the end of 2011, catastrophic failures of the Bosch CP4 fuel pump in the U.S. were widespread.[23]

---

[21] Sept. 2, 2009, email from Audi representative to Bosch representatives regarding "3rd HPP Failure USA," produced in response to NHTSA Inquiry EA11003EN-00639[0], available at https://static.nhtsa.gov/odi/inv/2011/INRD-EA11003-59428P.PDF (last accessed Aug. 5, 2019), at 146.

[22] *Id.* at 148–50.

[23] *See* July 27, 2012 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59345P.pdf," at 69 (emphasis added) (Sept. 15, 2011 email from Volkswagen to Bosch re: "080211_Status_CP4.1_Bosch," in which the Volkswagen representative sends a formal "change request in [the] form of exemplary documents on failures of high-pressure diesel pump Bosch CP4.1. *I think the failures are well known*. It is also important to know that not only the high-pressure fuel pump, but the entire injection system is to be replaced in case of damage to a HPP with a cost >[**REDACTED**] caused by chip contamination"); *see also* Mar. 22, 2011, email from Bosch employee to Volkswagen employees regarding analysis of failing

58.     Yet Ford went on to commission Bosch's CP4 fuel pump for use in its Power Stroke-engine vehicles, enticed by the prospect of a cheaper fuel injection pump than the CP4's predecessor.

## D.     Ford Decides to Equip its Diesel Power Stroke Engines with the Bosch CP4 Pump.

59.     Since 1994, Ford has marketed a "Power Stroke" diesel engine.  The original "Power Stroke" engine was actually designed and manufactured by Navistar International, not Ford.  Ford relied on the expertise of Navistar, originally known as the International Harvester Company, from Chicago, Illinois, and re-branded the popular engine as its own.  The Navistar-produced "Power Stroke" engine enjoyed a reputation for reliability.  Ford utilized the Navistar 7.3L "Power Stroke" engine until the year 2003, and it enjoyed a reputation as possibly the best engine Navistar ever produced.

60.     Seeking to increase profits by cutting out the middle man, Ford began a partnership with Bosch in 2004 to design its own diesel engines.  Ford lacked experience designing modern diesel engines, but nevertheless chose an aggressive schedule to design and rush to market the 6.7L "PowerStroke" engine.

---

CP4 fuel pumps, produced in response to NHTSA Inquiry EA11003EN-00639[0], available at https://static.nhtsa.gov/odi/inv/2011/INRD-EA11003-59428P.PDF (last accessed Aug. 8, 2019), at 11 (noting that Bosch was continuing to receive "a respectable number" of catastrophic failures of the CP4 pump in the U.S. in which Volkswagen dealerships were reporting "[m]etal particle[s] at the filter"); *id.* at 19-22 (spreadsheet showing results of Bosch's pre-analysis of HPFP failures in Volkswagen/Audi vehicles where "metal chips found in fuel system").

Unbeknownst to consumers, this new "PowerStroke" engine contained the CP4 time bomb.

61.    The Class Vehicles also contain ineffective counter-measures such as the low-pressure water separation and filtration system.  Ford would use the potential failure to maintain these counter-measures to blame consumers and deny warranty coverage, even when usually the water-in-fuel (WIF) light indicator was not triggered, even though all diesel contains water and Ford designed and manufactured the water separator and filtration system, and even when Ford knows that water and other corrosive and clogging substances can pass undetected through the system or overwhelm the system, resulting in CP4 damage and failures.  Ford even erases the WIF history, so that vehicle owners cannot prove their lack of a "bad fuel" event, impeccable maintenance, or quick and appropriate response to any such event.   It is thus clear that Ford is only interested in hiding its tracks and blaming the consumer for the poor durability of its trucks.

62.    From the beginning, Ford was aware of a mismatch between Bosch's European fuel injection pumps and American diesel fuel at the pump.  Ford was also alarmed at the high stakes of a pump failure if it were covered under warranty.  In an email, a Ford fuel injection engineer referenced a trip to Germany to meet with Bosch and some photos that Bosch may share.  The attachment to his email stated:

> U.S. diesel standards (ASTM D975) allow up to 500 ppm
> water content in fuel; European specifications (EN590)

allow 200 ppm max.  More variation in U.S. Consumer
fuel sources and fuel quality vs. European markets—high
volume truck stops vs. low volume neighborhood gas
stations equipped w/diesel, use of off-road diesel fuel by
some consumers, etc. . . . failure mode in one component,
entire system (all injectors, pump, rails and lines) would
require replacement—major warranty expense component
. . . .[24]

Ford was thus clearly aware of the need for a design margin to accommodate real

world variations in fuel quality, and specifically in the U.S., whose standard is

already borderline lubricity for the catastrophic failure of Bosch's European pump

designs.

63.    In connection with this problem, in 2009, Ford was discussing the

decreased lubricity of ULSD.  A November 17, 2009 email from Brien Fulton,

Diesel Powertrain Systems Technical Specialist at Ford, to Beth Raney-Pablo from

the Fuels and Lubricants Engineering Department at Ford stated: "[T]he data does

contain some ULSD which due to the process to remove sulfur tends to reduce

lubricity."  A November 13, 2009 email from Brien Fulton to Scott Eeley at Ford

---

[24] Oct. 21, 2004, email from Ford Diesel Fuel Injection Systems Engineer Dave Eastman to
Ford Diesel Powertrain Systems Technical Specialist Brien Fulton and Ford employee Mike
Harrison re: "Water in Fuel Effects Paper," submitted by Ford to NHTSA in response to ODI
Inquiry No. EA11003, document titled, "INRD-EA11003-50108P," available at
https://static.nhtsa.gov/odi/inv/2011/INRD-EA11003-50108P.pdf (last accessed Aug. 7, 2019), at
148-49.

stated: "You need to be aware of the current fuel lubricity levels . . . we have lots of fuel above 520 [micrometers]."[25]

64.    Further, Ford accepted the fact that U.S. diesel was "out of spec" for its high-pressure fuel pumps, but chose against hardware changes or design margins to match the fuel, acknowledging and rejecting a suggestion from Chevron in November 2009 that "Ford need[s] to change hardware to be more robust instead of counting on the fuel suppliers to improve quality, or ask for tighter lubricity specification."[26]

65.    It should have come as no surprise to Ford, then, when it began experiencing serious problems with the CP4 fuel pump in its 6.7L diesel-engine vehicles during the pre-production phase. *See, e.g.*, FORD_DIESEL_00005438, Dec. 1, 2009 email chain between Ford employees K. Pumford, S. Eeley *et al.*

---

[25] Nov. 17, 2009, email chain involving Ford Diesel Powertrain Systems Technical Specialist Brien Fulton and other Ford employees re: "TLP09-117 Brief Report on HFRR Lubricity Evaluation of Diesel Fuels," submitted by Ford to NHTSA in response to ODI Inquiry No. EA11003, part of compilation of Ford fuel pump-related emails in "Appendix G" to Ford's Jan. 20, 2012 NHTSA submission (document titled "INRD-EA11003-50107P"), at 398-425. *See also id.* at 411 (from presentation slide headed, "Overview: North & South America Diesel Quality:" "North American fuels tend to have poorer lubricity and lower cetane[, whereas] South American fuels tend to have comparable lubricity to EU fuels.").

[26] Nov. 13, 2009, email from Chevron Ornite Company OEM & Industry Liaison Jerry C. Wang to Ford employees re: "TLP09-117 Brief Report on HFRR Lubricity Evaluation of Diesel Fuels," submitted by Ford to NHTSA in response to NHTSA ODI Inquiry No. EA11003, part of compilation of Ford fuel pump-related emails in "Appendix G" to Ford's Jan. 20, 2012 NHTSA submission (document titled "INRD-EA11003-50107P"), at 433. *See also id.* (emphasis added) (Wang presents another option to Ford, stating, "[T]his is an out of spec fuel issue so there is no need to change hardware and hope fuel quality will improve or *just accept this as fact of life if the warranty is manageable*").

discussing analysis of metal deposits found on fuel injectors in Ford's "Scorpion" engine (pre-production 6.7L engine); FORD_DIESEL_00005223 and -5224, Jan. 29, 2010 email chain between Ford employees A. Radke, J. Rauch, B. Fulton, et al. re: "Urgent (KTP J1 Issue) for 6.7L Diesel Fuel System Contamination Analysis" (discussing "latest analysis of the debris found in the high pressure pump, primary and secondary filters").

66.    In September 2010, when Ford was still experiencing lubricity issues with its diesel HPFPs, Ford engineer Brien Fulton noted that, "Diesel fuel systems and water don't mix, even on the microscopic level."[27]

67.    Thus, it is clear that Ford was concerned about the lubricity and uniformity of American diesel for its engines, and was aware of the cost to the consumer if the injection pump were to catastrophically fail.

68.    In 2010, Ford began selling its own "PowerStroke" diesel engine. Under the leadership of Derrick Kuzak, group vice president of Global Product Development, Ford advertised that its "new diesel engine will deliver significant improvements in torque, horsepower, and fuel economy while adding more fueling

---

[27] Sept. 17, 2010 email from Ford Diesel Powertrain Systems Technical Specialist Brien Fulton to Ford employees Robin Lawther, Forest Heggie, Karl Burroughs, and Carlos Armesto re: "High pressure fuel systems vs water in diesel fuel," submitted by Ford to NHTSA in response to ODI Inquiry No. EA11003, part of compilation of Ford fuel pump-related emails in "Appendix G" to Ford's Jan. 20, 2012 NHTSA submission (document titled "INRD-EA11003-50107P"), at 365-66.

flexibility." For 2011, Kuzak promised, "This all-new diesel engine has been so extensively tested both in the lab and in the real world that we're confident we're giving our customers the most reliable and productive powertrain available today." "Our Super Duty customers demand reliability and durability . . . That's exactly what this engine delivers." [28]

69.   Yet, Ford's first attempt at designing a modern diesel engine was also rushed.   Kuzak admitted, "Developing an all-new engine is a big deal" but he claimed that Ford had been successful in the design "efficiently and quickly."[29]

70.   Ford claimed that the new Power Stroke engine was "backed by extensive laboratory and real world testing" and that it could utilize up to 20 percent Biodiesel (B-20).[30]   But Ford failed to realistically test its new engine with representative U.S. diesel, including a failure to adequately test for use with Biodiesel.

71.   On February 7, 2011, as the first models of the Class Vehicles were being sold, and in light of the disastrous CP4 failures European vehicles sold in the United States, NHTSA launched an investigative regarding a potential diesel-

---

[28] *See* "A New Era in Ford Diesel Technology for Pickups Starts Now," Ford Social, available at: https://archive.li/eT10 (last accessed Aug. 7, 2019).

[29] *See* "A New Era in Ford Diesel Technology for Pickups Starts Now," Ford Social, available at: https://archive.li/eT10 (last accessed Aug. 7, 2019).

[30] *See* "A New Era in Ford Diesel Technology for Pickups Starts Now," Ford Social, available at: https://archive.li/eT10 (last accessed Aug. 7, 2019).

automotive-industry-wide defect in various automotive manufacturers' diesel high pressure fuel injection pumps, and roped Ford into that investigation.  But the failures of CP4 pumps were diluted or concealed because such investigation included non-CP4 equipped vehicles along with the first Ford trucks to contain the CP4 pump, which were still new at the time.[31]

72.   Nevertheless, on March 30, 2011, Ford internally activated a "Job Aid" for Ford dealers to address "2011 F-Super Duty vehicles equipped with a 6.7L diesel engine which . . . may have damaged fuel system components including the high pressure (HP) pump and fuel injectors. ***Fuel and additives which do not meet the minimum lubrication, cooling and anti-corrosion properties required by the high[-]pressure fuel system components*** may cause symptoms including, but not limited to, the following: crank/no start, long crank/hard start, rough run, low power, engine knocking, exhaust smoke and/or fuel rail pressure (FRP) slow to build."[32] These symptoms are known consequences of CP4 pump implosion.[33]

73.   Given the problems Ford saw pre-production with its CP4-equipped vehicles and U.S. diesel fuel, it should have come as no surprise to Ford when it

---

[31] The scope of the investigation under which Ford was incorporated included the 2008–2012 Super Duty F-Series trucks (NHTSA defect investigation EA11-003:NVS-213hkb).

[32] Ford Response to NHTSA Inquiry EA11-003, App'x F1, Global Concern Number 103-2011-0041, Activation Date 3/30/2011, available at FORD_DIESEL_00126408.

[33] *See, e.g.*, *infra* ¶¶ 81-85 (providing examples of CP4-related customer complaints in which drivers experience sudden engine shut off and inability to restart the vehicle).

encountered warranty problems due to catastrophic CP4 failures in the very first model-year of the 6.7L Power Stroke-engine trucks.[34] *See, e.g.,* FORD_DIESEL_00014053, at -4054, June 2012 Ford presentation discussing

██████████████████████████████████████████████

███████████████████████████████████ *id.* at -4055 (emphasis

added) ██████████████████████████████████████████████

█████████████████████████████████████████

74.    Ford saw field incidents involving CP4 implosions in 2011 MY Ford F-Series trucks nearly as soon as the vehicles were off the assembly line. For example, in its January 2012 submission to NHTSA in response to ODI Inquiry No. EA11-003, Ford submitted records of more than one-hundred 2011 model year F-Series diesel trucks having experienced engine destruction due to the defective CP4 fuel pump—many of which Ford identified as "Root Cause: Poor lubricity fuel."[35]

---

[34] Indeed, Ford contemplated these very warranty issues during the pre-production phase. *See, e.g.*, FORD_DIESEL_00026201, Nov. 5, 2008 email between Ford employees P. Bruckner, K. Pumford, *et al.* re: ████████████████████████████████████ at -6201 (Bruckner stating ████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████

[35] Ford Response to NHTSA Inquiry EA11-003, *supra* note 3, at App'x O.

75.    In this same January 2012 NHTSA submission, Ford represented the following: "Ford has ensured that the HPFP design in the peer vehicles is compatible with diesel fuels sold in the United States through engine and vehicle testing with the previously referenced diesel test fuels."[36] Ford also represented that, "[d]uring development of the 6.7L engine, Ford . . . addressed the risk of low lubricity fuel by specifying that HPFPs include a 'wear package' that the supplier [Bosch] had developed for pumps that were intended for use in markets where low lubricity fuel was known to be a concern."[37] This "wear package," if even implemented, was clearly ineffective, and there is simply no way that Ford's aforementioned engine and vehicle testing to "ensure[] that the HPFP design . . . is compatible with diesel fuels sold in the United States" did not show the CP4 pump failing when used with U.S. diesel fuel.

76.    Ford was clearly on notice that the Bosch CP4 Pump in its vehicles was not compatible with American diesel fuel.  Any reasonable person would think that Ford would utilize a more lubricated or robust pump design going forward, but they did not.  The affected Ford vehicles containing the Bosch CP4 Pump are 2011–present model year Ford Pickups with 6.7L Power Stroke engines, and the owners are saddled with the expense of Ford's poor design choice. Ford doubled-down on

---

[36] Ford Response to NHTSA Inquiry EA11-003, *supra* note 3, at 20.

[37] Ford Response to NHTSA Inquiry EA11-003, *supra* note 3, at 24.

its choice to use the CP4 as the heart of its diesel engines. Rather than replace it, Ford educated dealerships how to deceive customers convincing them that the devastating failures were caused instead by contaminated fuel.

77.     Moreover, Ford was on notice—and indeed, *admitted*—that high-pressure fuel pump failures pose an inherent risk to vehicle occupant safety. In August 2016, Ford conducted a safety recall for MY 2015–16 Ford Transit vans equipped with 3.2-liter diesel engines due to "[a] fuel injection pump malfunction" which "may cause the engine to not start or stall without warning and without the ability to restart."[38] Ford further acknowledged that "[a]n engine stall while driving, without warning or the ability to restart can increase the risk of a crash."[39]

78.     The federal Safety Act and related regulations require the quarterly submission to NHTSA of "early warning reporting" data, including claims relating to property damage received by the automotive manufacturer, warranty claims paid by the automotive manufacturer, consumer complaints, incidents involving injury or death, and field reports prepared by the automotive manufacturer's employees or

---

[38] *See* Aug. 22, 2016, Ford Part 573 Safety Recall Report for NHTSA Recall Campaign No. 16V-618, available at https://static.nhtsa.gov/odi/rcl/2016/RCLRPT-16V618-7678.PDF (last accessed Aug. 7, 2019); *see also* https://news.pickuptrucks.com/2016/08/recall-alert-2015-2016-ford-transit.html (last accessed Aug. 7, 2019).

[39] *Id.*

representatives concerning failure, malfunction, lack of durability, or other performance issues.  49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21.

79.    The Safety Act further requires immediate action when a manufacturer determines or should determine that a safety defect exists.  *United States v. General Motors Corp.*, 574 F. Supp. 1047, 1050 (D.D.C. 1983).  A safety defect is defined by regulation to include any defect that creates an "unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle" or "unreasonable risk of death or injury in an accident."   49 U.S.C. § 30102(a)(8).  Within five days of learning about a safety defect, a manufacturer must notify NHTSA and provide a description of the vehicles potentially containing the defect, including "make, line, model year, [and] the inclusive dates (month and year) of manufacture," a description of how these vehicles differ from similar vehicles not included in the recall, and "a summary of all warranty claims, field or service reports, and other information" that formed the basis of the determination that the defect was safety related.  49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c).  Then, "within a reasonable time" after deciding that a safety issue exists, the manufacturer must notify the owners of the defective vehicles.   49 C.F.R. §§ 577.5(a), 577.7(a).  Violating these notification requirements can result in a maximum civil penalty of $15,000,000.  49 U.S.C. § 30165(a)(1).

80.     To be sure, Ford has been put on notice of *scores* of consumer complaints regarding the now-notorious and catastrophic engine failure caused by CP4 pump failure.

81.     For example, on September 21, 2011, the following story was circulated on RV.net by one sorely disappointed owner of a 2011 F-350 6.7L Power Stroke diesel with only 35,000 miles:

> To all my friends here at Rvnet[:]
>
> I see my issues with my fuel system have traveled to Rvnet. I would have started a thread earlier in the saga but have been very busy. This should have been a simple situation to fix. It has turned into a circus.
>
> Here is the link to the story. It has escalated into an epic event:
>
> http://www.ford-trucks.com/forums/1099978-painful-an-update.html
>
> I wanted to know the facts of the failure before I brought the story here. I wanted to keep rampant speculation and unnecessary commentary out of the discussion. It is really an unfortunate turn of events. The cliff's notes version is as follows:
>
> Truck quit like the key was turned off. It was a Saturday[.]
>
> Ford Roadside assistance towed it to the nearest open Ford facility[.]
>
> This dealer began the service work late on Monday morning.
>
> According to them their diagnostics led them to replace

the fuel rail pressure sensor. After waiting a day for the part...still no start[.]

According to them, further diagnostics then led them to the fuel injection control module. The part will be in on Friday afternoon and we will get it out the door before we close...wrong again.

There has been no mention of contaminated fuel up to this point. This is a huge deal because fuel samples should have been taken before any fuel system work was attempted. Now the dealer has 3 days of work where he can not recover any warranty money. Anyone see what's coming?

Now the dealership dance starts. They claim fuel contamination and tell me I am paying. On Monday, they contacted the Ford tech hotline with an exaggerated story about water in the fuel.

I called Ford customer care. After 2.5 hours of discussion over the course of Monday afternoon, I was summarily dismissed with the admonition that the bill for the repairs would be mine. My request to talk to an upper level customer service manger was refused.

I removed the truck from the non servicing dealer. I can not tell you how much fun that was. I had it towed 75 miles to my servicing dealer.

They have begun work on the truck. There is no evidence of water penetration beyond the water separator/primary fuel filter. There was less than 2 ounces of water removed from the separator...if that is where it actually was found...they captured the sample in used drinking water bottles. The under hood secondary filter shows no evidence of ever having water in it. The parts they said were damaged with rust have no signs of rust.

The high pressure fuel pump is toast. There is no evidence

> present showing water contamination...or any other form
> of                                                       contamination.
>
> Now we wait for the Ford Field Service Engineer . . . .  I
> am not confident at all that this will be resolved in a
> fashion that makes me whole."[40]

82.     Then, the following day, this same user posted an update, which read

as follows:

> Well, another day has slipped by in my ongoing attempt to
> get my truck fixed under warranty. It has been 12 days
> since the truck quit. There have been some developments.
>
> First, my dealer has decided that this is unquestionably a
> warranty repair. His repair and service records on the truck
> indicate no history of water being found in the separator
> when they worked on the truck. There can be no long term
> water presence to do the type of damage that the non
> servicing dealer tried to claim. Ford technical documents
> with pictures showing the type of water and rust damage
> required to void warranty show parts exponentially more
> damaged than one might expect. My parts show no such
> damage.
>
> The Ford tech hotline is not cooperating with my dealer.
> They have refused to send out a Field Service Engineer . .
> . ."[41]

---

[40] *My Big Ford Drum is Broke*, RV.NET, Sept. 21, 2011, available at
http://www.rv.net/forum/index.cfm/fuseaction/thread/tid/25428988.cfm (last accessed Aug. 7,
2019).

[41] *Id.*

83.   Five years later, this same F-350 owner posts again to his original "Open Roads" enthusiasts forum now that the CP4 issue has gone viral, stating the following (after summarizing his 2011 debacle):

"The real cost to fix this problem, at least with Ford, is over $10,000...my repair was $10,300 . . . and if you do not make these repairs to Ford's specification (replace everything but the tank) the engine warranty is flagged[)]. [S]eeing that Ford does not fix many of them under warranty anyway rends that position moot[.]

"I close this missive with a comment made to me during my Ford ordeal by the lead engineer at Ford for the 6.7 engine project...paraphrasing for brevity...'I was at Bosch the other day. I walked by two pallets full of failed CP4 pump returns...one Ford and one GM...looked about the same size pile of each...'"[42]

84.   In a similar vein, on August 1, 2016, the owner of a 2015 Ford F-350 Supercab submitted the following complaint to NHTSA regarding the defective condition:

2015 F350 6.7 DIESEL WITH 46,000 MILES THAT IS DOWN BECAUSE HPOP IS DEFECTIVE AND SPREADING MEDAL THROUGH SYSTEM. FORD HAS INSPECTED AND SAID IT IS BECAUSE OF WATER IN FUEL, EVEN THOUGH NO WARNING LIGHTS OR CODES ARE AVAILABLE. FORD PULLED SENSORS OUT OF ENGINE AND REJECTED REPAIR BECAUSE OF TARNISH ON SENSORS. THE ONLY CODES WERE FOR (LOW

---

[42] *2011 Duramax and up fuel pump problems*, OPEN ROADS FORUM, Jan. 22, 2016, available at   https://forums.trailerlife.com/index.cfm/fuseaction/thread/tid/28726814/print/true.cfm(last accessed Aug. 7, 2019) (ellipses in original).

FUEL PRESSURE & REDUCED POWER). NO OTHER
CODES. INITIAL INSPECTION REVEALED ABOUT
3/4 INCH OF WATER IN WATER SEPARATOR BUT
NO LIGHT OR CODE. THE WARNINGS OCCURRED
WHEN TRUCK WAS STARTED AND IT RAN ABOUT
100 FT BEFORE BEING SHUTDOWN AND TOWED
TO DEALERSHIP. THIS APPEARS TO BE A
COMMON PROBLEM SINCE FORD OFFERS A
REPAIR KIT FOR THIS ISSUE. TOTAL COST OF
REPAIR IS BETWEEN $9500,00 & $12,500 DOLLARS
AND THIS ON A TRUCK WHICH IS STILL UNDER
WARRANTY THAT FORD WILL NOT HONOR. THE
TRUCK WASN'T A YEAR OLD UNTIL MAY 2016
AND HAS BEEN DOWN FOR OVER FOUR MONTHS
BECAUSE FORD WILL NOT REPAIR. THIS IS THE
BOSCH C4 SERIES PUMP. *BF *TR[43]

85.    Indeed, Ford is notorious for blaming consumers for this catastrophic

failure and blatantly refusing to take responsibility for its own defective vehicle

design.  By way of example, see the following non-exhaustive list of complaints that

consumers have filed with NHTSA regarding the same exact CP4-fueled issue

occurring over and over again in Ford diesel vehicles:

- Mar. 21, 2014, 2013 Ford F-250 Supercab customer complaint filed with
  NHTSA:

    HAD CHECK ENGINE LIGHT COME ON. BROUGHT
    TO FORD SERVICE 3 TIMES. THE LAST TIME THEY
    QUOTED ME 11,145 TO FIX SAYING WATER WAS
    IN FUEL. I THOUGHT IT WAS UNDER WARRANTY,
    WHICH THEY CLAIM IT IS NOT. MY INSURANCE
    COMPANY SENT BY AN ENGINEER, WHICH HE
    SENT   FUEL   TO   INDEPENDENT   LAB.   FUEL

---

[43] NHTSA ID No. 10892303.

RESULTS CAME BACK NEGATIVE FOR EXCESSIVE FUEL. TRUCK HAS BEEN AT SERVICE CENTER FOR 1 MONTH, WITH NO RESULTS. *TR"[44]

- Jan. 9, 2014, 2013 Ford F-250 Supercab customer complaint filed with NHTSA:

    "VEHICLE STALLED AND STOPPED RUNNING IN TRAFFIC ON HIGHWAY 231 IN MONTGOMERY AL. . . . CALLED FORD ROADSIDE ASSIST. I HAVE 125K EXTENDED WARRANTY AND HAD VEHICLE TOWED TO NEAREST FORD DEALERSHIP . . . . VEHICLE WAS DIAGNOSED WITH 'EVIDENCE OF WATER IN FUEL SYSTEM[.'] THERE WAS NO WATER PRESENT IN SYSTEM, NO 'WATER IN FUEL SYSTEM' WARNING LIGHT HAS [EVER] LIT UP ON THIS VEHICLE, HAD IT CHECKED IN THE PAST, WAS TOLD WAS FUNCTIONAL, WAS TOLD REPAIRS WERE 'NOT COVERED' . . . . THE REPAIRS ARE MORE THAN I CAN AFFORD FOR A TRUCK THAT IS UNDER WARRANTY. THIS IS CLEARLY A SYSTEM FAILURE. *TR"[45]

- Feb. 12, 2014, 2011 Ford F-350 Supercrew customer complaint filed with NHTSA:

    "THE ENGINE LIGHT CAME ON TODAY IN MY 2011 F350 DIESEL. DEALER SAYS DEF PUMP ERROR CODE. DEALER SAYS NO PUMPS AVAILABLE UNTIL 03/15/2014. I THINK FORD SHOULD ISSUE A SERVICE BULLETIN. DEALER SAYS NO WARRANTY. DEALER STATES TRUCK WILL SHUT DOWN AT ANY TIME. THIS SHOULD BECOME A RECALL ISSUE WITH THE NHTSA. OWNERS OF THESE TRUCKS TOW TRAILERS FREQUENTLY WITH LENGTHS IN EXCESS OF 36'.

---

[44] NHTSA ID No. 10576017.

[45] NHTSA ID No. 10559221.

HAVING A TOW VEHICLE SHUT DOWN IN
TRAFFIC AT HIGHWAY SPEEDS IS EMINENTLY
DANGEROUS AND WILL CAUSE FATALITIES
REFER TO NHTSA CAMPAIGN NUMBER:
13V535000 ON SIMILAR VEHICLES. *TR"[46]

- May 23, 2014, 2011 Ford F-350 Supercrew customer complaint filed with
  NHTSA:

  "THIS DIESEL TRUCK WAS BEING DRIVEN AT 20
  MPH WHEN WITHOUT ANY WARNING, THE
  ENGINE SHUT OFF RESULTING IN LOSS OF ALL
  POWER STEERING AND BRAKES. WOULD NOT
  RESTART. TOWED TO DEALER SERVICE. DEALER
  DIAGNOSED LACK OF FUEL PRESSURE AND
  THEY OBSERVED METAL SHAVINGS IN THE
  LOWER FILTER INDICATING THE HPFP WAS
  DISINTEGRATING. DEALER SUBMITTED
  PICTURES OF THE FLOW CONTROL VALVE TO
  FORD WARRANTY PRIOR APPROVAL PER
  SERVICE MANUAL DIRECTIONS. DEALER
  OBSERVATION WAS THAT THEY OBSERVED NO
  SIGNIFICANT WATER OR DEBRIS
  CONTAMINATION IN THE FUEL FILTER. PRIOR
  APPROVAL RESPONSE WAS THAT THE PICTURES
  SUBMITTED WERE REPRESENTATIVE OF FUEL
  CONTAMINATION AND DENIED THE WARRANTY
  COVERAGE FOR THE REPAIR. NO WATER IN FUEL
  INDICATION WAS EVER SEEN BY OWNER.
  FILTERS MAINTAINED PER MAINTENANCE
  SCHEDULE. BILL FOR REPAIR IS ESTIMATED AT
  APPROX                                $11,000.
  "TWO WEEKS PRIOR, THIS VEHICLE WAS
  TOWING A 14K LB 5TH WHEEL DOWN THE
  SANTIAM PASS IN OREGON. STEEP INCLINES,
  SHARP DROP OFFS, AND SNOW ON THE ROAD. A
  SUDDEN LOSS OF POWER WITHOUT WARNING

---

[46] NHTSA ID No. 10563967.

WOULD VERY LIKELY HAVE RESULTED IN LOSS OF CONTROL OF THE VEHICLE, SEVERE BODILY INJURY, OR DEATH. IT APPEARS THE BOSCH CP4 FUEL PUMP WAS NOT DESIGNED TO OPERATE WITH THE 560 SCAR FUEL LUBRICITY OF US FUELS AND THAT FORD IS BLAMING PUMP FAILURES ON WATER CONTAMINATION BY OBSERVATION OF A CORROSION APPEARANCE ON ANOTHER COMPONENT. WARRANTY COVERAGE WAS DENIED WITHOUT ANY OBSERVATION OF THE FUEL PUMP ITSELF. NOTE THAT NO INDICATION THAT ANYTHING WAS WRONG WITH THE TRUCK WAS OBSERVED PRIOR TO THE FAILURE. THE TRUCK IS EQUIPPED WITH A FACTORY 5TH WHEEL HITCH AND IS INTENDED TO HAUL UP TO 21.5K LB TRAILERS. SUDDEN LOSS OF POWER STEERING AND BRAKES WITHOUT WARNING UNDER THIS INTENDED USE IS EXTREMELY DANGEROUS. *TR"[47]

- Aug. 14, 2014, 2013 Ford F-350 Supercrew customer complaint filed with NHTSA:

  "I WAS DRIVING IN MY NEIGHBORHOOD AT ABOUT 25 MPH AND THE ENGINE QUIT, AND WOULD NOT RESTART!! [. . . ] THE TRUCK HAD TO BE TOWED TO THE DEALER AND IT HAS [BEEN] THERE FOR OVER A WEEK AND THEY CALLED YESTERDAY AND TOLD ME THERE WERE METAL SHAVINGS IN THE FUEL PUMP AND I DO NOT KNOW IF THE METAL SHAVINGS GOT INTO THE OIL SYSTEM TO RUIN THE ENGINE!! *TR"[48]

---

[47] NHTSA ID No. 10593571.

[48] NHTSA ID No. 10622326.

- Dec. 9, 2014, 2012 Ford F-250 Supercrew customer complaint filed with NHTSA:

  > "TL* THE CONTACT OWNS A 2012 FORD F-250 SD. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 63 MPH, THE REDUCED POWER AND THE CHECK ENGINE WARNING LIGHTS ILLUMINATED. THE VEHICLE WAS TOWED TO A SECOND DEALER, WHO DIAGNOSED THAT THERE WAS AN UNKNOWN SUBSTANCE IN THE FUEL TANK. THE VEHICLE WAS NOT REPAIRED . . . . THE APPROXIMATE FAILURE MILEAGE WAS 18,877."[49]

## E.   Supposed "Remedies" are Insufficient and Costly.

86.    Because of its incompatibility with U.S. diesel fuel, CP4 pumps and corresponding fuel injection systems, even when replaced or "fixed," will continue to fail in the Class Vehicles. Indeed, in a June 2010 email chain between Bosch and representatives of Audi and Volkswagen regarding the catastrophic failure of a CP4 pump in a 2010 Audi A3 TDI, Audi asked Bosch, "[W]hy are the defects mentioned below still present after replacing the high-pressure pump and the injector? What could the [dealer] have done wrong by way of incorrect repair so that such defects are appearing?" Bosch responded that "In this case the complete fuel system (HPP, rail, injectors, **all** lines) need to be changed . . . .  I assume that because of the 'cruncher,' the entire system is contaminated with chips, which are then pumped in circulation and can soon lead to the next failure! The rough running can be explained

---

[49] NHTSA ID No. 10663076.

by the fact that a chip is already present before or in the injector and is impairing its function."[50]

87.     The Bosch CP4 Pump problem is so prevalent that several independent parts suppliers now provide kits to mitigate the inevitable harm.  "Disaster Preventer Kits" (or "bypass kits") usually refer to a fuel bypass system that does not prevent the failure, the loss of the expensive injection pump, or the need to clean metal shavings from the fuel system.  But these kits are designed to redirect the lubricating fuel for the CP4 back to the fuel tank, so that it will be filtered before it returns to the engine.  The bypass kit directs the fuel contaminated with metal shavings into the gas tank, which is less expensive to clean than the engine and high-pressure fuel system—in other words, a Band-Aid solution.  These bypass kits are also less expensive than more complete remedies, requiring only $300-$400 in parts, and are marketed as having the ability to "[k]eep[] injectors/rails safe from CP4 pump failure debris."[51] Many consumers have turned to this sort of remedy preemptively due to the known impending failures their vehicles are facing.

--------

[50] March 7, 2011 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59347P.pdf," at 79-80 (June 7-9, 2010 email chain between Bosch, Audi, and Volkswagen representatives regarding CP4 fuel pump failure falsely attributed to "misfuel").

[51] Online sales listing for "Ford 6.7 CP4.2 bypass kit (2011+)," S&S DIESEL MOTORSPORT, available at https://ssdiesel.com/shop/all/ford-6-7-cp4-2-bypass-kit-2011/ (last accessed Aug. 7, 2019).

88.     Another way to mitigate the damage is to spend money for fuel additives to increase the lubricity of the fuel.  This approach may work best in conjunction with the previously discussed modifications, but even by itself, it can be expensive.

89.     In short, there is no known way to remedy or mitigate CP4 pump failure without decreasing the fuel efficiency promised to Plaintiffs and other Class Members and without significant expense to Plaintiffs and other Class Members. Accordingly, Plaintiffs' reasonable—but ultimately mistaken—reliance on Ford's (now-suspect) "Built Ford Tough" commercial identity epitomizes the reason for which they paid a premium; it was commercially reasonable to so do, from consumers' collective perspective.  In reality, Ford has acted unconscionably in the consumer context, especially in light of consumers' highly disparate bargaining position(s) going into the subject Class Vehicle transactions, of which Ford has taken advantage to a grossly unfair and profit-driven degree.

**F.    Ford Knew Durability and Superiority Were Material to Consumers and Made Hollow Promises of Durability and Superiority.**

90.     Ford's 2011 Super Duty truck brochures for the 6.7L Power Stroke engine equipped vehicles emphasized the "impressive fuel economy" and

"DURABILITY: Super duty is built to the extremely high standards of durability and reliability you'd expect in a full-size pickup that's Built Ford Tough."[52]

91.    This same brochure also touted how the 2011 Ford Super Duty's 6.7L Power Stroke diesel engine provided the "BEST DIESEL fuel economy, power and torque IN THE CLASS," with a "**20% IMPROVEMENT IN FUEL ECONOMY** over the previous model, making it the best in its class:"[53]

_____

[52]    2011    Ford    Super    Duty    Brochure,    at    2,    available    at https://www.ford.com/services/assets/Brochure?make=Ford&model=SuperDuty&year=2011&postalCode=55401 (last accessed Aug. 7, 2019).

[53] *Id.* at 5.



92.    Ford similarly touted its 2012 Super Duty 6.7L Power Stroke diesel trucks as "delivering up to a 20% improvement in fuel economy over the previous generation, making it the best in its class:"[54]

_____

[54] 2012 Ford Super Duty Brochure, at 7, available at http://www.legacydirect.com/brochures/2012_ford_superduty.pdf (last accessed Aug.7, 2019).





93.     Similarly, in its advertising materials for the 2013 Ford Super Duty

6.7L Power Stroke diesel truck, Ford noted that, "This Super Duty® has endured

more torture testing than any previous generation of Ford Truck—including over 10 million cumulative miles on the most tested Power Stroke® diesel engine ever."[55]

94.   The brochure specifically touts Ford's 2013 6.7L Power Stroke Diesel truck as having "[b]est-in-class horsepower, torque and fuel economy," explaining that the truck "delivers 400 hp, 800 lb.-ft of torque, and up to a 20% improvement in fuel economy over the previous generation, making it the best in its class[:]"[56]

_____

[55]   2013 Ford Super Duty Brochure, at 4, available at https://www.ford.com/services/assets/Brochure?make=Ford&model=SuperDuty&year=2013&postalCode=11738 (last accessed Aug. 7, 2019).

[56] *Id.* at 5.



**DIESEL BEATS THE COMPETITION 3 TIMES OVER.**

Best-in-class horsepower, torque and fuel economy.¹ The 6.7L Power Stroke® V8 Turbo Diesel gives you all 3. With this advanced engine, Super Duty® delivers 400 hp, 800 lb.-ft. of torque, and up to a 20% improvement in fuel economy over the previous generation, making it the best in its class. Designed, engineered and built by Ford, the 6.7L features many innovative details including aluminum cylinder heads with precision dual water jackets that help minimize weight and maximize cooling. It's also the most tested Power Stroke diesel ever. This B20-capable engine has proven itself in over 10 million miles of cumulative testing under extreme conditions from 120°F scorching heat to -40°F bone-chilling cold. It's Built Ford Tough.®

**Cleanest Super Duty diesel ever.** This engine generation utilizes industry-proven technology and innovative Ford strategies to meet the latest federal emissions standards – reducing nitrogen oxide (NOx) levels by more than 80% compared to the previous-generation diesel. For your part, just watch for a low diesel exhaust fluid (DEF) alert in the vehicle's message center, then locate the blue DEF fill cap and replenish the DEF supply. The reservoir holds 5 gallons of Ford-approved DEF, which can be purchased from your Ford Dealer or other authorized retailers.

**Delivers maximum power quickly.** The diesel engine's class-exclusive single-sequential turbocharger features the compact, efficient design of a dual-sided compressor wheel.

**Powers upfits any time the engine's running.** Whether you're in motion or at a complete stop, you can power your upfits with the diesel and our class-exclusive live-drive power take-off (PTO) provision.² It keeps the job going with an output gear linked directly to the engine crankshaft.

**Standard TorqShift® 6-speed SelectShift Automatic.®** This rugged transmission is also designed, engineered and built by the Ford powertrain team. Its torque converter includes low-speed lockup capability (down to 900 rpm), which enables the engine to run efficiently at lower rpm. The high-strength sinter-metal carrier, with its patented Ford rocker one-way clutch, easily handles the extreme low-end torque of the diesel engine, as well as the high speeds of the gas engine. Plus, a high-capacity, high-efficiency fluid filter extends your fluid- and filter-change intervals up to 150,000 miles.



¹Based on Ford drive-cycle tests of comparably equipped 2011/2012 Ford and 2011/2012 competitive models. ²Available feature.

2013 SUPER DUTY®
ford.com

BUILT Ford TOUGH

95.    Once again, in 2014, Ford proclaimed that its 6.7L diesel Power Stroke

was "[t]he diesel leader on 3 fronts," including "[b]est-in-class fuel economy[,]

[b]est-in-class 400 horsepower[,] [a]nd best-in-class 800-lb.-ft. of standard torque," with "innovative details that contribute to its durability:"[57]



96.    In its 2015 Super Duty brochure, Ford proclaimed that the 6.7L Power Stroke diesel truck had been "[p]roven in over 12 million miles of cumulative testing and real-world use under extreme conditions," making it "the most tested Power Stroke diesel ever."[58] Likewise, Ford's television advertisement for the 2015 Ford

---

[57]    2014   Ford   Super   Duty   Brochure,   at   4,   available   at http://cdn.dealereprocess.net/cdn/brochures/ford/2014-f250superduty.pdf (last accessed Aug. 7, 2019).

[58]    2015   Ford   Super   Duty   Brochure,   at   4,   available   at https://www.ford.com/services/assets/Brochure?make=Ford&model=SuperDuty&year=2015 (last accessed Aug. 7, 2019).

Super Duty touted its "main ingredient"—the "Ford Super Duty 2nd Generation 6.7 Liter Power Stroke Diesel"—as giving the vehicle "the most horsepower and the most torque in its class."[59]

97.    In fact, Ford has represented *in every single one of its television advertisements* that Ford Super-Duty vehicles are fit for driving on American roadways, by featuring the Class Vehicles *driving on American roadways*. For example, in its 2015 "Ford Super Duty Challenge" television advertisements, numerous Class Vehicles are seen traversing all sorts of American terrain as if they are all adequately drivable and compatible with American diesel fuel:[60]



---

[59] 2015 Ford Super Duty Television Advertisement, last aired Dec. 28, 2014, available at https://www.ispot.tv/ad/7jGb/2015-ford-super-duty-main-ingredient (last accessed Aug. 8, 2019).

[60] 2015 "Ford Super Duty Challenge" Television Advertisement, available at https://www.ispot.tv/ad/7icj/2015-ford-super-duty-super-duty-challenge (last accessed Aug. 8, 2019).









98.     Literally, every single Ford advertisement featuring the Class Vehicles falsely demonstrates that the Class Vehicles are compatible with American fuel, ***but they are not.***

99.      In Ford's 2016 Super Duty brochure, Ford touted its 6.7L Power Stroke diesel trucks by proclaiming that, "**Best-in-class diesel fuel economy** is maintained with the help of high-pressure fuel injectors that achieve a clean, efficient burn" – and once again, the vehicle is shown *driving* in this *American* advertisement:[61]






---

[61]    2016   Ford   Super   Duty   Brochure,   at   5,   available   at https://www.ford.com/services/assets/Brochure?make=Ford&model=SuperDuty&year=2016&postalCode=15001 (last accessed Aug. 7, 2019).

100.   The following year, Ford proclaimed that its 2017 6.7L Power Stroke diesel truck was "the strongest [] yet" and "[t]he most tested Power Stroke diesel ever," with "class-best 925 LB.-FT. torque" and "unsurpassed diesel fuel economy"—and once again, the Class Vehicle is driving problem-free in this American advertisement:[62]



101.   Ford's television ads for the 2017 Super Duty similarly featured the Class Vehicles driving across all sorts of American terrain, with a voiceover telling

---

[62] 2017 Ford Super Duty Brochure, at 7, available at https://www.ford.com/services/assets/Brochure?bodystyle=Truck&make=Ford&model=SuperDuty&year=2017 (last accessed Aug. 7, 2019).

consumers to, "Meet the all new 2017 Ford Super Duty,"[6364] and that it is, "Time to

imagine what *you* can do in a 2017 Ford Super Duty:"[65]



---

[63] 2017 Ford Super Duty Television Advertisement, available at https://www.ispot.tv/ad/AuMp/2017-ford-super-duty-punch-work-in-the-face (last accessed Aug. 8, 2019).

[64] 2017 Ford Super Duty Television Advertisement, available at https://www.ispot.tv/ad/A4vZ/2017-ford-super-duty-2017-motor-trend-truck-of-the-year (last accessed Aug. 8, 2019).

[65] 2017 Ford Super Duty Television Advertisement, available at https://www.ispot.tv/ad/wYRV/ford-truck-month-2017-super-duty-trade-assistance (last accessed Aug. 8, 2019).







102.   What consumers should *actually* imagine is their vehicles going into

limp mode or full-on stalling while driving on fast-paced, high-traffic freeways.

103.   For the 2018 model year, Ford promised consumers that its 6.7L Power

Stroke diesel trucks would "deliver [the Super Duty's] highest combination of

horsepower and torque ever."[66]   Ford further noted that its "twin-pilot injection

delivers smooth, quiet acceleration," and that the trucks' "large fuel tanks—up to 48

gallons maximum—help extend driving range."[67]   Most ironically, though, Ford

bragged that the "strength and integrity of the 6.7L diesel is maintained by a

---

[66]   2018   Ford   Super   Duty   Brochure,   at   8,   available   at
https://www.ford.com/services/assets/Brochure?bodystyle=Truck&make=Ford&model=SuperD
uty&year=2018 (last accessed Aug. 7, 2019).

[67] *Id.*

masterful mix of component materials," and that the truck has "excellent throttle response. . . delivered in part by a high-pressure, common rail fuel injection system . . . [with] plezo-controlled fuel injectors provid[ing] precise injection [and] superior fuel atomization."[68] The advertisement shows the Class Vehicle racing along an uphill highway while towing large bales of hay, promising consumers the performance of a vehicle that is, at base, *compatible with American fuel*:



---

[68] *Id.*

104.   And, in fact, Ford demonstrates the drivability range of *all* of its F-Series trucks in a 2017-2018 ad campaign[69] which, again, falsely demonstrates to consumers that the Class Vehicles are not only "drivable" but able to haul massive trailer loads morning through night – a representation that is defied by the above-mentioned complaints to NHTSA[70] alone:



---

[69] *See* https://www.youtube.com/watch?v=SR_mGhT2iLM (last accessed Aug. 8, 2019).

[70] *See, e.g.*, *supra* ¶¶ 81-85.

















105.   In addition, Ford provided an express five-year/100,000-mile limited warranty for the 6.7L Power Stroke diesel engine trucks.[71]

106.   Ford also represented to Ford Power Stroke diesel consumers that, with respect to the 2011–present 6.7L Power Stroke diesel engine, "You may operate your vehicle on diesel fuels containing up to 20% biodiesel, also known as B20,"[72] and

---

[71] *See, e.g.*, 2015 Ford Super Duty Brochure, *supra* note 61, at 24.

[72] *See* 2018 Ford Super Duty Owner's Manual, Section entitled, "Fueling and Refueling: FUEL QUALITY—DIESEL," at 189, available at http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2018-Ford-250-350-450-450-Owners-Manual-version-1_om_EN-US-EN-CA_10_2017.pdf (last accessed Aug. 7, 2019) ("You should use Ultra-Low Sulfur Diesel fuel (also known as ULSD) designated as number 1-D or 2-D with a maximum of 15-ppm sulfur in your diesel vehicle"); 2017 Ford Super Duty Owner's Manual, Section entitled, "Fueling and Refueling," at 188, available at http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2017-Super-Duty-Owners-Manual-version-1_om_EN-US_06_2016.pdf (last accessed Aug. 7, 2019) (stating same); 2016 Ford 6.7 Power Stroke Owner Manual Diesel Supplement, Section entitled, "Fuel and Refueling," at 18–19, available at http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2016-Ford-6.7L-Diesel-F-250-550-Supplement-version-1_60l6d_EN-US_04_2015.pdf (last accessed Aug. 7, 2019) (stating same); 2015 Ford 6.7 Power Stroke Owner Manual Diesel Supplement, Section entitled, "Fuel and Refueling," at 18, available at http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2015-Ford-6.7L-Diesel-F-250-550-Supplement-version-

provided further directions for which diesel fuel to use if *not* in North America—indicating Ford's obvious expectation that the Class Vehicles would be filled with American diesel fuel.

107.   Nevertheless, Ford has refused to honor its warranties, deviously claiming that the metal shavings caused by the failures of their pump design voided the warranty because they also caused fuel contamination.[73]

## G.   Ford Designed, Manufactured and Sold Vehicles It Knew Would Experience Catastrophic Failures, Which Ford Would Not Repair or Address Under Its Warranties.

108.   Despite the clear mis-match between the Bosch CP4 Pump and American diesel fuel, Ford has cleverly passed the $8,000–$20,000 cost of failure along to the consumer.   Moreover, Ford's agents, specifically its dealerships, are determining that CP4 pump failures are not under manufacturer warranty.   The logic

---

1_60l6d_EN-US_02_2014.pdf (last accessed Aug. 7, 2019) (stating same); 2014 Ford 6.7 Power Stroke Owner Manual Diesel Supplement, Section entitled, "Fuel and Refueling," at 17, available at http://www.fordservicecontent.com/Ford_Content/catalog/owner_guides/1460l6d1e.pdf (last accessed Aug. 7, 2019) (stating same); 2013 Ford 6.7 Power Stroke Owner Manual Diesel Supplement, Section entitled, "Fuel and Refueling," at 15, available at https://dmna.ny.gov/nynm/manuals/Ford_F_350_Owners_Manual_2013_Diesel_Supplement.pdf (last accessed Nov. 26, 2018) (stating same); 2012 Ford 6.7 Power Stroke Owner Manual Diesel Supplement, Section entitled, "Maintenance and Specifications," at 21-22, available at http://www.fordservicecontent.com/Ford_Content/catalog/owner_guides/1260l6d1e.pdf (last accessed Aug. 7, 2019) (stating same); 2011 Ford 6.7 Power Stroke Owner Manual Diesel Supplement, Section entitled, "Maintenance and Specifications," at 21-22, available at http://www.fordservicecontent.com/Ford_Content/catalog/owner_guides/1160l6d1e.pdf (last accessed Aug. 7, 2019) (stating same).

[73] *See, e.g.*, *supra* ¶¶ 81-85 (detailing how Ford has repeatedly refused to cover damage caused by CP4 pump implosion under warranty).

is that when a European-designed CP4 pump mists internal diesel engine components, its innate incompatibility with less American diesel produces damaging levels of metal-on-metal friction, launching metal debris into the high-pressure fuel system and the engine. Warranties do not cover the use of contaminated fuel. Because the fuel is now contaminated with metal from the pump, the repairs are for fuel contamination and are not covered by the warranties.

109. Ford induced Plaintiffs and other Class Members to pay a premium for increased durability, performance and fuel efficiency, with a design it has long known would cause fuel contamination—a condition Ford now uses to absolve itself of the catastrophic and costly consequences to Plaintiffs and other Class Members.

## H. Allegations Establishing Agency Relationship Between Manufacturer Ford and Ford Dealers

110. Upon information and belief, Manufacturer Defendant Ford has impliedly or expressly acknowledged that Ford-authorized dealerships are its sales agents, the dealers have accepted that undertaking, Ford has the ability to control authorized Ford dealers, and Ford acts as the principal in that relationship, as is shown by the following:

    a. Manufacturer Ford can terminate the relationship with its dealers at will;

    b. The relationships are indefinite;

c.  Manufacturer Ford is in the business of selling vehicles as are its dealers;

d.  Manufacturer Ford provides tools and resources for Ford dealers to sell vehicles;

e.  Manufacturer Ford supervises its dealers regularly;

f.  Without Manufacturer Ford, the relevant Ford dealers would not exist;

g.  Manufacturer Principal Ford requires the following of its dealers:

1.  Reporting of sales;

2.  Computer network connection with Manufacturer Ford;

3.  Training of dealers' sales and technical personnel;

4.  Use of Manufacturer Ford-supplied computer software;

5.  Participation in Manufacturer Ford's training programs;

6.  Establishment and maintenance of service departments in Ford dealerships;

7.  Certify Ford pre-owned vehicles;

8.  Reporting to Manufacturer Ford with respect to the car delivery, including reporting Plaintiffs' names, addresses, preferred titles, primary and business phone numbers, e-mail addresses, vehicle VIN numbers, delivery date, type of sale, lease/finance terms, factory incentive coding, if applicable,

vehicles' odometer readings, extended service contract sale designations, if any, and names of delivering dealership employees; and

9.      Displaying Manufacturer Ford logos on signs, literature, products, and brochures within Ford dealerships.

h.  Dealerships bind Manufacturer Ford with respect to:

1.      Warranty repairs on the vehicles the dealers sell; and

2.      Issuing service contracts administered by Manufacturer Ford.

i.  Manufacturer Ford further exercises control over its dealers with respect to:

1.      Financial incentives given to Ford dealer employees;

2.      Locations of dealers;

3.      Testing and certification of dealership personnel to ensure compliance with Manufacturer Ford's policies and procedures; and

4.      Customer satisfaction surveys, pursuant to which Manufacturer Ford allocates the number of Ford cars to each dealer, thereby directly controlling dealership profits.

j.  Ford dealers sell Ford vehicles on Manufacturer Ford's behalf, pursuant to a "floor plan," and Manufacturer Ford does not receive payment for its cars until the dealerships sell them.

k.  Dealerships bear Manufacturer Ford's brand name, use its logo in advertising and on warranty repair orders, post Ford signs for the public to see, and enjoy a franchise to sell Manufacturer Ford's products, including the Class Vehicles.

l.  Manufacturer Ford requires Ford dealers to follow the rules and policies of Manufacturer Ford in conducting all aspects of dealer business, including the delivery of Manufacturer Ford's warranties described above, and the servicing of defective vehicles such as the Class Vehicles.

m.  Manufacturer Ford requires its dealers to post Ford's name, logo, and signs at dealer locations, including dealer service departments, and to identify themselves and to the public as authorized Ford dealers and servicing outlets for Manufacturer Ford cars.

n.  Manufacturer Ford requires its dealers to use service and repair forms containing Manufacturer Ford's name and logos.

o.  Manufacturer Ford requires Ford dealers to perform Manufacturer Ford's warranty diagnoses and repairs, and to do the diagnoses and

repairs according to the procedures and policies set forth in writing by Manufacturer Ford.

p. Manufacturer Ford requires Ford dealers to use parts and tools either provided by Manufacturer Ford, or approved by Manufacturer Ford, and to inform Ford when dealers discover that unauthorized parts have been installed on one of Manufacturer Ford's vehicles.

q. Manufacturer Ford requires dealers' service and repair employees to be trained by Ford in the methods of repair of Ford's vehicles.

r. Manufacturer Ford audits Ford dealerships' sales and service departments and directly contacts the customers of said dealers to determine their level of satisfaction with the sale and repair services provided by the dealers; dealers are then granted financial incentives or reprimanded depending on the level of satisfaction.

s. Manufacturer Ford requires its dealers to provide Ford with monthly statements and records pertaining, in part, to dealers' sales and servicing of Manufacturer Ford's vehicles.

t. Manufacturer Ford provides technical service bulletins and messages to its dealers detailing chronic defects present in product lines, and repair procedures to be followed for chronic defects.

u. Manufacturer Ford provides its dealers with specially trained service and repair consultants with whom dealers are required by Manufacturer Ford to consult when dealers are unable to correct a vehicle defect on their own.

v. Manufacturer Ford requires Ford vehicle owners to go to authorized Ford dealers to obtain servicing under Ford warranties.

w. Ford dealers are required to notify Manufacturer Ford whenever a car is sold or put into warranty service.

## V.  TOLLING OF THE STATUTE OF LIMITATIONS

111.   As of the date of this Complaint, Ford continues to market its vehicles based on its "Built Ford Tough" motto and claims of superior durability, performance, and fuel efficiency, despite its knowledge that the Class Vehicles are defective and subject to inevitable catastrophe when used for ordinary, as-intended purposes.  In fact, Ford still has not disclosed and continues to conceal that the Class Vehicles are defective, incompatible with American diesel fuel, and will experience catastrophic and costly failure.

112.   Until shortly before the filing of this Complaint, Plaintiffs and other Class Members had no way of knowing about Ford's wrongful and deceptive conduct with respect to their defective Class Vehicles.

113.   As pleaded herein, Ford knew of and failed to disclose a major, inherent product defect, and thus any imposition of "durational limitations" on the warranty breaches or claims alleged herein constitute "overreaching," and therefore any such durational limitations are unconscionable.  When a manufacturer is aware that its product is inherently defective, but the buyer has no notice of or ability to detect the problem, there is perforce a substantial disparity in the parties' relevant bargaining power.  In such a case, Plaintiffs' acceptance of any limitations on his/her contractual remedies, including any warranty disclaimers, cannot be said to be "knowing" or "voluntary," and thereby renders such limitations unconscionable and ineffective.  Ford's superior knowledge of the CP4 defect over the weaker-situated Plaintiffs and Class Members demonstrates that the underlying vehicle transactions involved elements of deception such that there was significant unconscionability in the bargaining process, and any durational limitations that Ford may purport to assert on Plaintiffs' claims are unconscionable as a matter of law.

114.   With respect to Class Vehicles that have not experienced a catastrophic CP4 pump failure, Plaintiffs and other Class Members did not discover and could not reasonably have discovered that their Class Vehicles are defective, that their Class Vehicles are out of specification and incompatible with American diesel fuel, that this incompatibility has resulted in the breakdown of fuel components and contamination of fuel caused by the defective CP4 fuel pump, that their CP4 fuel

pumps will fail, that the durability and performance of their Class Vehicles is impaired by this defect and incompatibility and that such durability and performance is far less than Ford promised, or that, as a result of the foregoing, they overpaid for their vehicles, the value of their vehicles is diminished, and/or their vehicles will require costly modification to avoid a catastrophic even more costly failure, and that any such modifications will impair other qualities of the Class Vehicles that formed a material part of the bargain between the parties in the purchase of the Class Vehicles by Plaintiffs and other Class Members.

115.   With respect to Class Vehicles that have experienced a catastrophic CP4 pump failure prior to the filing of this Complaint, Plaintiffs and other Class Members did not discover and could not reasonably have discovered that their CP4 pump failure was due to a defect known to Ford or that such failure was due to an incompatibility between the Class Vehicle and the fuel intended by Ford to be used in the Class Vehicles.

116.   Within the time period of any applicable statutes of limitation or repose, Plaintiffs and Members of the proposed classes could not have discovered through the exercise of reasonable diligence that Ford were concealing the conduct complained of herein and misrepresenting the defective nature of the Class Vehicles.

117.   Plaintiffs and other Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect that Ford did not

report information within their knowledge to consumers, dealerships or relevant authorities; nor would a reasonable and diligent investigation have disclosed that Ford were aware of the non-conforming and defective nature of the CP4 fuel pump and the Class Vehicles in which it was incorporated. Plaintiffs only learned of the defective nature of the CP4 fuel injection pump and their vehicles and of Ford's scheme to design and sell such non-conforming and defective fuel pumps and vehicles only shortly before this action was filed.

118. All applicable statutes of limitation and repose have also been tolled by Ford's knowing, active, and fraudulent concealment, and denial of the facts alleged herein throughout the time period relevant to this action.

119. Instead of disclosing the defective nature of the CP4 fuel pumps to consumers, Ford falsely represented that CP4 pump failure in the Class Vehicles was caused by Plaintiffs' or other Class Members' conduct or by the use of contaminated fuel.

120. In reality, Ford's conduct in designing, manufacturing, marketing or selling Class Vehicles for use with American diesel fuel, with which Defendants knew the Class Vehicles were incompatible, causes the "fuel contamination" that ultimately leads to CP4 pump failure.

121. Ford, with the purpose and intent of inducing Plaintiffs and other Class Members to refrain from filing suit, pursuing warranty remedies, or taking other

action with respect to Ford's conduct or the Class Vehicles, fraudulently concealed the true cause of CP4 pump failure by blaming Plaintiffs, Class Members and/or contaminated fuel when Ford, even before the design, manufacture or sale of the Class Vehicles, knew that the defective nature of the Bosch CP4 Pump would and has caused fuel contamination and resulting CP4 pump failure.

122.   Ford was under a continuous duty to disclose to Plaintiffs and other Class Members the true character, quality and nature of the durability and performance of Class Vehicles, the ongoing process of fuel contamination in Class Vehicles, CP4 pump failure, and the true cause of CP4 pump failure.  Instead, Ford knowingly, affirmatively, and actively concealed or recklessly disregarded the foregoing facts.  As a result, Ford is estopped from relying on any statutes of limitation or repose as a defense in this action.

123.   For the foregoing reasons, all applicable statutes of limitation and repose have been tolled by operation of the discovery rule and by Ford's fraudulent concealment with respect to all claims against Ford; and, Ford is estopped from asserting any such defenses in this action.

## VI.   CLASS ACTION ALLEGATIONS

124.   Throughout this Complaint, "Class Vehicle" is defined as any Ford vehicle fitted at any time with a Bosch CP4 fuel pump.

125.   Plaintiffs bring this action on behalf of themselves and the Class initially defined below for the assertion of claims under the laws of each state and the District of Columbia and as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of the following class (collectively, the "Class"):

> All persons who purchased or leased a model year 2011-2019 Ford vehicle fitted at any time with a Bosch CP4 fuel pump.

126.   Excluded from the Class are Ford and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any entity in which Ford has a controlling interest. In addition, Governmental entities and any judge, justice, or judicial officer presiding over this matter and the Members of their immediate families and judicial staff are excluded from the Class. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

127.   Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

128.   The Class Representatives are asserting claims that are typical of claims of the Class, and they will fairly and adequately represent and protect the interests

of Class in that they have no interests antagonistic to those of the putative Class Members.

129.   The amount of damages suffered by each individual member of the Class, in light of the expense and burden of individual litigation, would make it difficult or impossible for individual Class Members to redress the wrongs done to them.  Plaintiffs and other Members of the Class have all suffered harm and damages as a result of Ford's unlawful and wrongful conduct.  Absent a class action, Ford will likely not have to compensate victims for Ford's wrongdoings and unlawful acts or omissions, and will continue to commit the same kinds of wrongful and unlawful acts or omissions in the future (indeed, upon information and belief, Ford continues to manufacture diesel-engine vehicles with the ticking time-bomb that is the CP4 pump to this day).

130.   **Numerosity under Federal Rule of Civil Procedure 23(a)(1):** The Classes are so numerous that individual joinder of all of its Members is impracticable.  Due to the nature of the trade and commerce involved, Plaintiffs believe that the total number of Class Plaintiffs is at least in the thousands, and are numerous and geographically dispersed across the country.  While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, as well as by the notice Class Members will receive by virtue of this litigation so that they may self-

identify. The disposition of the claims of Class Members in a single class action will provide substantial benefits to all Parties and the Court. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

131. **Commonality and Predominance under Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):** This action involves common questions of law and fact which predominate over any questions affecting individual Plaintiffs and Class Members, including, without limitation:

a. Whether Ford engaged in the conduct alleged herein;

b. Whether Ford knew about the CP4 defect and the inherent problems related thereto when said component part is used with American diesel fuel, and if so, how long Ford knew or should have known as much;

c. Whether Ford designed, advertised, marketed, distributed, leased, sold, or otherwise placed the defective Class Vehicles into the stream of commerce in the United States;

d. Whether the Ford diesel engine systems that are the subject of this complaint are defective such that they are not fit for ordinary consumer use;

e. Whether Ford omitted material facts about the quality, durability, fuel economy, and vehicle longevity of the Class Vehicles;

f. Whether Ford designed, manufactured, marketed, and distributed Class Vehicles with defective or otherwise inadequate fuel injection systems;

g.      Whether Ford's conduct violates the state consumer protection statutes identified herein, and constitutes breach of contract or warranty and fraudulent concealment/omission, as asserted herein;

h.      Whether Plaintiffs and the other Class Members overpaid for their vehicles at the point of sale; and

i.      Whether Plaintiffs and the other Class Members are entitled to damages and other monetary relief and, if so, what amount.

132.   **Typicality under Federal Rule of Civil Procedure 23(a)(3):** Plaintiffs' claims are typical of the other Class Members' claims because all have been comparably injured through Ford's wrongful conduct as described above.

133.   **Adequacy of Representation under Federal Rule of Civil Procedure 23(a)(3):** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class Members they seek to represent. Additionally, Plaintiffs have retained counsel with substantial experience in handling complex class action and multi-district litigation.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class Members and have the financial resources to do so.  The interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

134.   **Superiority of Class Action under Federal Rule of Civil Procedure 23(b)(3):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The financial detriment suffered

by Plaintiffs and the other Members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Ford.  Accordingly, it would be impracticable for the Members of the Class to individually seek redress for Ford's wrongful conduct.  Even if Members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.   CAUSES OF ACTION

**A.    Multi-state Claims**

### COUNT I

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *ET. SEQ.*

135.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

136.   Plaintiffs bring this Count on behalf of all persons who are Members of the Class set forth in Section (VI.) above (collectively for purposes of this Count, the "Magnuson-Moss Class").

137.   As set forth above, Plaintiffs and other Class Members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class Members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

138.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

139.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

140.   Plaintiffs and other Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

141.   Ford is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15. U.S.C. § 2301(4)-(5).

142.   15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

143.   Ford provided Plaintiffs and other Class Members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty

Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Ford warranted that the Class Vehicles were fit for their ordinary purpose as safe, American-diesel-fuel-compatible motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

144.   Ford breached its implied warranties, as described in more detail above, and is therefore liable to Plaintiffs and other Class Members pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share a common defect that they are all equipped with a Bosch CP4 high-pressure fuel injection pump which is not compatible with the lubricity of American diesel fuel (which fuel is intended by Ford to be used in the Class Vehicles, expected by Plaintiffs and other Class Members to be used in Class Vehicles, and is the only fuel reasonably available in order for Plaintiffs and other Class Members to use the Class Vehicles for their intended or ordinary purpose), which when used with the intended American diesel fuel, break down, resulting in fuel contamination, complete and catastrophic failure of the Bosch CP4 Pump, and contamination and catastrophic and costly failure of the Class Vehicles' fuel delivery systems. This incompatibility causes the Class Vehicles to suddenly fail during normal operation, leaving occupants of the Class Vehicles vulnerable to crashes, serious injury, and death. Even where death or serious injury does not occur, the CP4's incompatibility with American diesel fuel

renders the Class Vehicles, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving in American with standard American diesel fuel.

145. In its capacity as warrantor, Ford had knowledge of the inherently defective nature of the high-pressure fuel-injection system in the Class Vehicles. Any effort by Ford to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit such liability is null and void.

146. Any limitations Ford might seek to impose on its warranties are procedurally unconscionable. There was unequal bargaining power between Ford and Plaintiffs, as, at the time of purchase and lease, Plaintiffs and other Class Members had no other options for purchasing warranty coverage other than directly from Ford.

147. Any limitations Ford might seek to impose on its warranties are substantially unconscionable. Ford knew that the Class Vehicles were defective and incompatible with U.S. diesel fuel, and that the Class Vehicles would fail when used as intended. Moreover, Ford knew the Class Vehicles would pose safety risks after any warranties purportedly expired.

148. Despite knowing that failure was expected to occur with the intended use of American diesel fuel, Ford, failed to disclose these defects to Plaintiffs and

the other Class Members. Therefore, any enforcement of the durational limitations on those warranties is harsh and shocks the conscience, and moreover violates public policy.

149.   Plaintiffs and each of the other Class Members have had sufficient direct dealings with either Ford or its agents (dealerships) to establish privity of contract between Ford, on the one hand, and Plaintiffs and each of the Class Members, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between Ford and its dealers, and specifically, of Ford's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the aforementioned defect, as catastrophic CP4 fuel pump failure can cause the vehicle to stall while in motion and then subsequently become unable to be restarted, which increases the risk of a crash and presents an unreasonable risk to vehicle occupant safety.

150.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Ford notice and an opportunity to cure until such

time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

151. Furthermore, affording Ford an opportunity to cure its breach of warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, Ford knew or should have known of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the CP4 defect to consumers. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Ford a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

152. Nonetheless, Ford was provided notice of the defective and non-conforming nature of the Class Vehicles, as described herein, within a reasonable time of Plaintiffs' knowledge of the non-conforming and defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, presentation of the vehicles for repair to dealerships, intermediate sellers or repair facilities, and by the allegations contained in this Complaint.

153. Plaintiffs and other Class Members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made

by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not reaccepted their Class Vehicles by retaining them.

154.   The amount in controversy of Plaintiffs' individual claims meet or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of all other Magnuson-Moss Class Members, seek all damages permitted by law, including diminution in value of their class vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and other Magnuson-Moss Class Members in connection with the commencement and prosecution of this action.

155.   Plaintiffs also seek the establishment of a Ford-funded program for Plaintiffs and Magnuson-Moss Class Members to recover out of pocket costs incurred in attempting to rectify and/or mitigate the effects of the CP4 incompatibility defect in their Class Vehicles.

B.     **Claims Brought on behalf of the Alabama Class Members**[74]

## COUNT I

### VIOLATIONS OF THE ALABAMA
### DECEPTIVE TRADE PRACTICES ACT
### (ALA. CODE § 8-19-1, *ET SEQ.*)

156.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

157.   Plaintiffs bring this Count on behalf of Alabama Class Members.

158.   Plaintiffs and other Class Members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

159.   The Class Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

160.   Ford engaged in "trade or commerce" within the meaning of the Ala. Code § 8-19-3(8).

161.   The Alabama Deceptive Trade Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model,

_____

[74] As used herein, the "Alabama Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Alabama.

if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5. Ford participated in unfair and deceptive trade practices that violated the Alabama DTPA as described herein. In the course of its business, Ford knowingly concealed and suppressed material facts concerning the defective CP4 fuel pumps in the Class Vehicles. Ford falsely represented the quality of the Class Vehicles and omitted material facts regarding the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), as well as the durability and overall value of the Class Vehicles, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

162.   Specifically, by misrepresenting the Class Vehicles as safe, durable, reliable, and compatible with U.S. diesel, and by failing to disclose and actively concealing the CP4 fuel pump defect, Ford engaged in deceptive business practices prohibited by the Alabama DTPA, including:

a. Knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles;

b. Knowingly making a false representation as to whether the Class Vehicles are of a particular standard, quality, or grade;

c. Advertising the Class Vehicles with the intent not to sell them as advertised; and

d. Engaging in unconscionable, false, or deceptive act or practice in

connection with the sale of the Class Vehicles.

163.    Ford's unfair or deceptive acts or practices, including the above-mentioned concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including the Alabama Class Members about the true safety and reliability of Class Vehicles, the quality of Ford's Power Stroke diesel-engine vehicles, and the true value of the Class Vehicles.

164.    As alleged above, Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles and the defective high-pressure fuel pumps installed therein with an intent to mislead the Alabama Class Members.

165.    Ford knew or should have known that its conduct violated the Alabama DTPA.

166.    To protect its profits, Ford concealed the CP4 fuel pump defect and continued to allow unsuspecting new and used vehicle purchasers to continue to buy, lease, and drive the inherently defective Class Vehicles.

167.    Ford owed the Alabama Class Members a duty to disclose the truth about the quality, reliability, durability, and safety of the Class Vehicles because Ford:

a. Possessed exclusive knowledge of the CP4 fuel pump defect in its Power Stroke diesel-engine vehicles;

b. Intentionally concealed the foregoing from the Alabama Class Members; and/or

c. Made incomplete representations about the quality, reliability, durability, and safety of the Class Vehicles, while purposefully withholding material facts from the Alabama Class Members that contradicted these representations.

168.   Because Ford fraudulently concealed the CP4 fuel pump defect in the Class Vehicles, and failed to disclose to the Alabama Class Members at the time of purchase or lease that said vehicles are prone to catastrophic high-pressure fuel pump failure which (1) causes the Class Vehicles to stall while in motion with a subsequent inability to restart; and (2) results in a comprehensive high-pressure fuel injection system repair/replacement process costing $8,000 - $20,000 that Ford will not cover, the Class Vehicles are worth significantly less than the amounts paid by the Alabama Class members at the time of purchase or lease. Indeed, consumers who purchased or leased the Class Vehicles would not have purchased or leased said vehicles, or would have paid significantly less for them, had they known of the existence of this defect prior to purchase or lease.

169.   The Alabama Class Members suffered ascertainable loss caused by Ford's misrepresentations and its failure to disclose material information. The Alabama Class Members did not receive the benefit of their bargains as a result of Ford's misconduct.

170.   As a direct and proximate result of Ford's violations of the Alabama DTPA, the Alabama Class Members have suffered injury-in-fact and/or actual damages.

171.   Pursuant to Ala. Code § 8-19-10, Plaintiffs seek monetary relief against Ford measured as the greater of: (a) actual damages in an amount to be determined at trial; and (b) statutory damages in the amount of $100 for each Alabama Class Member.

172.   Plaintiffs also seek an order enjoining Ford's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under Ala. Code § 8-19-1 *et seq.*

173.   In accordance with Ala. Code § 8-19-10(e), Plaintiffs sent a letter to Ford with notice of their allegations regarding Ford's violations of the Alabama DTPA relating to the Class Vehicles and the Alabama Class Members' demand that Ford correct or agree to correct the actions described therein. As Ford has failed to do so within the statutorily required fifteen days, Plaintiffs now seek compensatory and monetary damages to which Plaintiffs and Alabama Class Members are entitled.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON ALABAMA LAW)

174. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

175. Plaintiffs bring this Count on behalf of Alabama Class Members.

176. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles.

177. As alleged above, Ford knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

178. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

179. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

180.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

181.   Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had not significant defects and that the Class Vehicles were compatible with U.S. diesel fuel.

182.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

183.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles,

Ford had a duty to disclose to Plaintiffs and other Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and other Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

184. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's

representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

185.   Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

186.   Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

187.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

188.   Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles,

then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

189.   Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

190.   Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

191.   Because of Ford's false representations and omissions, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles, and had Plaintiffs and other Class Members known the truth about the true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

192.   Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

193.   Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding

the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

194.   Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

195.   Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## UNJUST ENRICHMENT

196.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

197.   Plaintiffs bring this Count on behalf of Alabama Class Members.

198.   This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

199.   As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than

the Class Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

200.  Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

201.  Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

202.  Ford received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

203.  It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

204.  Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

205.  Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

206.  As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the Class, in an amount to be

proven at trial. Plaintiffs and other Class Members, therefore, seek an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (ALA. CODE §§ 7-2-314)

207.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

208.   Plaintiffs bring this Count on behalf of Alabama Class Members.

209.   Ford was at all times a "merchant" with respect to motor vehicles under Ala. Code § 7-2-104.

210.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code. § 7-2-105.

211.   Pursuant to Ala. Code § 7-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

212.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used

by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the Bosch CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

213. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

214. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

215. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

216. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class

Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

217. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**C.    Claims Brought on Behalf of the Alaska Class Members[75]**

**COUNT I**

**VIOLATIONS OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT**
**(ALASKA STAT. ANN. § 45.50.471, *ET SEQ.*)**

218.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

219.  Plaintiffs bring this Count on behalf of the Alaska Class Members.

---

[75] As used herein, the "Alaska Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Alaska.

220.   The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") proscribes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful: "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," "(8) advertising goods or services with intent not to sell them as advertised;" or "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged." Alaska Stat. Ann. § 45.50.471.

221.   Plaintiffs will make a demand in satisfaction of Alaska Stat. Ann. § 45.50.535, and may amend this Complaint to assert claims under the Alaska CPA once the required notice period has elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Alaska CPA.

## COUNT II

## FRAUDULENT CONCEALMENT
### (BASED ON ALASKA LAW)

222.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

223.  Plaintiffs bring this Count on behalf of the Alaska Class Members.

224.  As set forth above, Plaintiffs and other Class Members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class Members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

225.  As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Class Members about the true nature of the Class Vehicles.

226.  As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

227.   As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

228.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

229.   As alleged above, Ford knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicles models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

230.   Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel.

231.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by

Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

232.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and other Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in

fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

233.   Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members did reasonably rely upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

234.   Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

235.   Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

236.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in

the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

237.   Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

238.   Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

239.   Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have

purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

240.  Because of Ford's false representations and omissions, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicles.  Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

241.  Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

242.   Ford still has not made a full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

243.   Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

244.   Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.   Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### (ALASKA STAT. §§ 45.02.314)

245.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

246.   Plaintiffs bring this Count on behalf of the Alaska Class Members.

247.   Ford was at all times a "merchant" with respect to motor vehicles within the meaning of Alaska Stat. §§ 45.02.314.

248.   The Class Vehicles are and were at all times "goods" within the meaning of Alaska Stat. §§ 45.02.105.

249.   Under Alaska Stat. § 45.02.314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs or other Class Members purchased or leased their Class Vehicles from Ford.

250.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

251.   It was reasonable to expect that Plaintiffs and Class Members may use, consume or be affected by the defective vehicles.

252.   The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse

throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

253.   Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

254.   Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and Class Members, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

255.   As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

D.      **Claims Brought on Behalf of the Arizona Class Members[76]**

## COUNT I

### VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
### (ARIZ. REV. STAT. § 44-1521 *ET SEQ.*)

256.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

257.   Plaintiffs bring this Count on behalf of the Arizona Class Members.

258.   The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, …misrepresentation, or concealment, suppression, or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

259.   Ford's actions as set forth above, occurred in the conduct of trade or commerce.

260.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards

---

[76] As used herein, the "Arizona Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Arizona.

to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Ford's acts had the capacity, tendency, or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same connection with the Class Vehicles. Ford engaged in unfair and deceptive business practices in violation of the Arizona CFA.

261.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure

(oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

262. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

263. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

264.   Ford's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

265.   Ford's intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

266.   Ford knew or should have known that its conduct violated the Arizona CFA.

267.   Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

   a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

   b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

   c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel,

while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

268.  Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to the Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles

creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

269.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

270.   Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

271.   Plaintiffs and the other Class Members were injured and suffered ascertainable injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their vehicles, did not get the benefit of their bargain, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequences of Ford's representations and omissions.

272.   Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest. Accordingly, Ford is liable to Plaintiffs and the other Class member for damages in an amount to be proven at trial.

273.   Plaintiffs and the Class Members seek monetary relief against Ford in an amount to be determined at trial. Plaintiffs and the Class Members also seek punitive damages because Ford engaged in aggravated and outrageous conduct with an evil mind.

274.   Plaintiffs and the Class also seek attorneys' fees and any other just and proper relief available.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON ARIZONA LAW)

275.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

276.   Plaintiffs bring this Count on behalf of the Arizona Class Members.

277.   As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles.

278.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system,

leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

279.   As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

280.   As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

281.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

282.   As alleged above, Ford knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

283.   Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel- representations that Ford knew were false when made.

284.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

285.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles,

Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

286.   Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew

would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

287.   Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

288.   Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

289.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

290.   Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous

model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

291.   Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

292.   Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

293.   Because of Ford's false representations and omissions, Plaintiffs and other Class Members have sustained damages because they own vehicles that are

diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles, and had Plaintiffs and other Class Members known the truth about the true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

294.   Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

295.   Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

296. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

297. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## E.  Claims Brought on Behalf of the Arkansas Class Members[77]

### COUNT I

### VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE ACT (ARK. CODE ANN. § 4-88-101 *ET SEQ.*)

298. Plaintiffs incorporate by reference all paragraphs though fully set forth herein.

299. Plaintiffs bring this Count on behalf of the Arkansas Class Members.

300. Ford, Plaintiffs, and other Class Members are "persons" within the meaning of the Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), Ark. Code Ann. § 4-88-102(5).

---

[77] As used herein, the "Arkansas Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Arkansas.

301.   The Class Vehicles are "goods" within the meaning of Ark. Code. Ann. § 4-88-102(4).

302.   The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10). The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. § 4-88-108.

303.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or

practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

304.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

305.   Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

306.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

307.   The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

308.   Ford's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

309.   Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

310.   Ford knew or should have known that its conduct violated the Arkansas DTPA.

311.   Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump  in the Class Vehicles with U.S. diesel fuel because Ford:

    a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel

injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

312.  Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted

and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

313. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

314. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

315. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered

a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's representations and omissions.

316.   Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

317.   Plaintiffs and the Class seek monetary relief against Ford in an amount to be determined at trial. Plaintiffs and the Class also seek punitive damages because Ford engaged in aggravated and outrageous conduct with an evil mind.

318.   Plaintiffs and other Class Members seek monetary relief measured as actual damages in an amount to be determined at trial, reasonable attorneys' fees; and any other just and proper relief available under Arkansas law. Plaintiffs and other Class Members also seek punitive damages against Ford because it carried despicable conduct with willful and conscious disregard of the right of others. Ford's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON ARKANSAS LAW)

319.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

320.   Plaintiffs bring this Count on behalf of the Arkansas Class Members.

321.   As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles.

322.   In the course of Ford's business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

323.   As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

324.   As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

325.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

326.   As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

327.   Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant

defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

328.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

329.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the

value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

330.   Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

331.   Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

332.   Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

333.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

334.   Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

335.   Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

336.   Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

337.   Because of Ford's false representations and omissions, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

338.   Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

339.   Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

340.   Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

341.   Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.   Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (ARK. CODE ANN. §§ 4-2-314, 4-2A-212)

342.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

343.  Plaintiffs bring this Count on behalf of the Arkansas Class Members.

344.  Ford was a merchant with respect to motor vehicles within the meaning of the Ark. Code Ann. §§ 4-2-314.

345.  The Class Vehicles are and were at all times "goods" within the meaning of Ark. Code Ann. §§ 4-2-105.

346.  Under Ark. Code Ann. § 4-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

347.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design

and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

348. It was reasonable to expect that Plaintiffs and Class Members may use, consume or be affected by the defective vehicles.

349. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

350. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

351. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate

sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

352.   As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**F.**   **Claims Brought on Behalf of the Colorado Class Members[78]**

**COUNT I**

**VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT (COLO. REV. STAT. § 6-1-101 *ET SEQ.*)**

353.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

354.   Plaintiffs bring this Count on behalf of the Colorado Class Members.

355.   Colorado's Consumer Protection Act ("Colorado CPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a false representation as to the source, sponsorship, approval, or certification of goods," or "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods." Colo. Rev. Stat. § 6-

---

[78] As used herein, the "Colorado Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Colorado.

1-105(1)(b), (e). The Colorado CPA further prohibits "represent[ing] that goods … are of a particular standard, quality, or grade … if he knows or should know that they are of another," "advertis[ing], goods … with intent not to sell them as advertised," and "fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105(1)(g), (i), & (u).

356.   Ford is a "person" under § 6-1-102(6) of the Colorado CPA, Colo. Rev. Stat. § 6-1-101 *et seq.*

357.   Plaintiffs and other Class Members are "consumers" for the purpose of Colo. Rev. Stat. § 6-1-113(1)(a) who purchased or leased one or more Class Vehicles.

358.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly,

Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

359.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

360.   Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

361.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

362.   The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

363.   Ford's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

364.   Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

365.   Ford knew or should have known that its conduct violated the Colorado CPA.

366.   Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump  in the Class Vehicles with U.S. diesel fuel because Ford:

       a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel

injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

367. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to the Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth.

These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

368.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

369.   Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

370.   Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered

a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's representations and omissions.

371.  Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by Ford's deceptive practices are in the hundreds of thousands nation-wide; (2) Ford has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class Members; and (3) so long as the Class Vehicles continued to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

372.  Ford's widespread false and deceptive advertisement directed to the market generally implicates a significant public impact under Colorado Law.[79]

373.  Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs and the Class seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and the discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for Plaintiffs and each Class member.

---

[79] *See Electrology Lab., Inc. v. Kunze*, 169 F. Supp.3d 1119, 1162 (D. Colo. 2016); *see also Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

374.   Plaintiffs and the Class Members also seek declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON COLORADO LAW)

375.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

376.   Plaintiffs bring this Count on behalf of the Colorado Class Members.

377.   As set forth above, Plaintiffs and other Class Members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class Members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

378.   As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Colorado Class about the true nature of the Class Vehicles.

379.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards

to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

380.   As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

381.   As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

382.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

383.   As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

384.   Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

385.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

386.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles,

Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

387.   Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew

would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

388.    Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

389.    Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

390.    Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

391.    Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous

model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

392.   Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

393.   Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

394.   Because of Ford's false representations and omissions, Plaintiffs and other Class Members have sustained damages because they own vehicles that are

diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

395.   Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

396.   Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

397.   Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

398.   Ford's   acts   were   done   wantonly,   maliciously,   oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.   Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## UNJUST ENRICHMENT

399.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

400.   Plaintiffs bring this Count on behalf of the Colorado Class Members.

401.   This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

402.   As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than the Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

403.   Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

404.   Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

405.   Ford has received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

406.   It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

407.   Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

408.   Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

409.   As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial. Plaintiffs and the Class, therefore, seek an order

establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT IV

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (COLO. REV. STAT. § 4-2-314)

410.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

411.   Plaintiffs bring this Count on behalf of the Colorado Class Members.

412.   Ford was a merchant with respect to motor vehicles within the meaning of the Colo. Rev. Stat. § 4-2-314.

413.   The Class Vehicles are and were at all times "goods" within the meaning Colo. Rev. Stat. § 4-2-105.

414.   Under Colo. Rev. Stat. § 4-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in transactions when Plaintiffs or other Class Members purchased or leased their Class Vehicles from Ford.

415.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown

of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

416.   It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

417.   The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

418.   Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

419.   Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally

or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

420.   As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## G.   Claims Brought on Behalf of the Connecticut Class Members[80]

### COUNT I

### VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT (CONN. GEN. STAT. ANN. § 42-110A *ET SEQ.*)

421.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

422.   Plaintiffs bring this Count on behalf of the Connecticut Class Members.

423.   Ford, Plaintiffs, and other Class Members are each "persons" as defined by Conn. Gen. Stat. Ann. § 42-110a(3).

424.   The Connecticut Unfair Trade Practices Act ("Connecticut UPTA") provides that "[n]o person shall engage in unfair methods of competition and unfair

---

[80] As used herein, the "Connecticut Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Connecticut.

or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a). The Connecticut UTPA further provides a private right of action under Conn. Gen. Stat. Ann. § 42-110g(a).

425.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Accordingly, Ford engaged in unfair and deceptive trade practices because its conduct (1) offends public policy as it has been established by statutes, the common law or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers, competitors, or other business persons. The harm caused to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and Ford fraudulently concealed the defective nature of the Class Vehicles from consumers.

426.  Ford has also engaged in deceptive conduct because (1) it made misrepresentations, omissions, or engaged in other conduct likely to mislead consumers; (2) consumers interpret the message reasonably under the

circumstances; and (3) the misleading representation, omission, or practice is material – that is, likely to affect consumer decisions or conduct.

427.   Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

428.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

429.   Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-

pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

430.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

431.   The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

432.   Ford's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

433.   Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

434.   Ford knew or should have known that its conduct violated the Connecticut UTPA.

435.   Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

436.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability

over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

437. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

438.   Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

439.   Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's representations and omissions.

440.   Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

441.   Plaintiffs and the Class seek monetary relief against Ford in an amount to be determined at trial. Plaintiffs and the Class also seek punitive damages because Ford engaged in aggravated and outrageous conduct with an evil motive and reckless indifference to rights of others or wanton violation of rights of others.

442.   Plaintiffs and the Class Members also seeks attorneys' fees and any other just and proper relief available.

## COUNT II

## FRAUDULENT NON-DISCLOSURE
## (BASED ON CONNECTICUT LAW)

443.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

444.   Plaintiffs brings this Count on behalf of the Connecticut Class Members.

445.   As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles.

446.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or

practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

447.   As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

448.   As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

449.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

450.   As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

451.   Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further

affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

452.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

453.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their

vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

454.   Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

455.   Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

456.   Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

457.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

458.   Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

459.   Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

460.   Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

461.   Because of Ford's false representations and omissions, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid

substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring, and for repair of Class Vehicles after catastrophic failure.

462.   Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

463.   Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

464.   Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

465. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other

Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## UNJUST ENRICHMENT

466.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

467.   Plaintiffs bring this Count on behalf of the Connecticut Class Members.

468.   This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

469.   As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than the Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

470.   Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

471.   Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

472.   Ford has received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

473.   It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

474.   Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

475.   Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

476.   As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial. Plaintiffs and other Class Members, therefore, seek an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

**H.**     **Claims Brought on Behalf of the Delaware Class Members**[81]

## COUNT I

## VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT
### (DEL. CODE ANN. TIT. 6 § 2513 *ET SEQ.* AND § 2532)

477.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

478.   Plaintiffs bring this Count on behalf of the Delaware Class Members.

479.   Ford is a "person" within the meaning of 6 Del. Code § 2511(7).

480.   The Delaware Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a). Under the Delaware Deceptive Trade Practices Act "a person engages in a deceptive trade practice when, in the course of business, … that person (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; …(7) Represents that

---

[81] As used herein, the "Delaware Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Delaware.

goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; … (12) Engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." Del. Code Ann. tit 6, § 2532.

481.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

482.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure

(oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

483.  Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations, and would not have purchased the vehicles (or would have paid less for them) had they known of the Class Vehicles' susceptibility to catastrophic CP4 fuel pump failure. They had no way of knowing that Ford's representations and omissions were false and gravely misleading.

484.  Ford's actions as set forth above occurred in the conduct of trade or commerce.

485.  The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

486.  Ford's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

487.   Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

488.   Ford knew or should have known that its conduct violated the Delaware CFA.

489.   Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump  in the Class Vehicles with U.S. diesel fuel because Ford:

    a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

490.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due

to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

491.  Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in

the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

492.   Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

493.   Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's representations and omissions.

494.   Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

495.   Plaintiffs seeks damages under the Delaware CFA for injury resulting from the direct and natural consequences of Ford's unlawful conduct. *See, e.g.*, *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1981). Plaintiffs also seeks declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

496.   Ford engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON DELAWARE LAW)

497.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

498.   Plaintiffs bring this Count on behalf of the Delaware Class Members.

499.   As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles.

500.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly,

Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

501.   As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

502.   As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

503.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

504.   As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

505.   Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

506.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

507.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch

CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

508.   Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of

the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

509.   Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

510.   Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

511.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

512.   Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American

public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

513.   Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

514.   Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

515.   Because of Ford's false representations and omissions, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicle, and had Plaintiffs and other Class

Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring, and for repair of Class Vehicles after catastrophic failure.

516.   Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

517.   Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

518.   Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

519. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (6 DEL. CODE § 2-314)

520. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

521. Plaintiffs bring this Count on behalf of the Delaware Class Members.

522. Ford was a merchant with respect to motor vehicles within the meaning of the 6 Del. Code. § 2-314.

523. Under 6 Del. Code § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

524. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used

by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

525.   It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

526.   The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

527.   Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

528.   Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class

Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

529.   As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

I.      **Claims Brought on Behalf of the District of Columbia Class Members[82]**

**COUNT I**

**VIOLATIONS OF DISTRICT OF COLUMBIA'S CONSUMER PROTECTION PROCEDURES ACT (D.C. CODE § 28-3901, *ET SEQ.***

530.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

531.   Plaintiffs bring this Count on behalf of the District of Columbia Members.

---

[82] As used herein, the "District of Columbia Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the District of Columbia.

532.   Ford is a "person" under the District of Columbia's Consumer Protection Procedures Act ("District of Columbia CPPA"). D.C. Code § 28-3901(a)(1).

533.   Plaintiffs and other Class Members are "consumers" as defined by D.C. Code § 28-3901(1)(2), who purchased or leased one or more of the Class Vehicles.

534.   Ford's actions and conduct as set forth herein constitute "trade practices" under D.C. Code § 28-3901.

535.   Ford participated in unfair and deceptive acts or practices that violated the District of Columbia CPPA. By systemically concealing the defects in the Class Vehicles, Ford engaged in unfair and deceptive practices prohibited by the District of Columbia CPPA, including: (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; (4) misrepresenting as to a material fact which as a tendency to mislead; and (5) failure to state a material fact when such failure tends to mislead. D.C. Code § 28-3901, *et seq.*

536.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards

to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

537.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

538.   Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations, and would not have purchased the vehicles (or would have paid less for them) had they known of the Class Vehicles' susceptibility to catastrophic CP4 fuel pump failure. They had no way of knowing that Ford's representations and omissions were false and gravely misleading.

539.  Ford's actions as set forth above occurred in the conduct of trade or commerce.

540.  The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

541.  Ford's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

542.  Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

543.  Ford knew or should have known that its conduct violated the District of Columbia CPPA.

544.  Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump  in the Class Vehicles with U.S. diesel fuel because Ford:

a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

545.  Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage

to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

546.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

547.   Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

548.   Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of

Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's representations and omissions.

549.   Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

550.   Plaintiffs are entitled to recover treble damages or $1,500, whichever is greater, punitive damages, reasonable attorneys' fees, and any other relief the Court deems proper under D.C. Code § 28-3901.

551.   Plaintiffs seek punitive damages against Ford because Ford's conduct evidences malice and/or egregious conduct. Ford maliciously and egregiously misrepresented the safety and reliability of the Class Vehicles, deceived Plaintiffs and other Class Members on life-or-death matters, concealed material facts that only it knew. Ford's unlawful conduct constitutes malice and warrants punitive damages.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON DISTRICT OF COLUMBIA LAW)

552.   Plaintiff incorporate by reference all paragraphs as though fully set forth herein.

553.   Plaintiffs bring this Count on behalf of the District of Columbia Class Members.

554.   As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class members about the true nature of the Class Vehicles.

555.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

556.   As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

557.   As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

558.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

559.   As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

560.   Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant

defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

561.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

562.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of

the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

563.   Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

564.   Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

565. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

566. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

567. Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

568. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

569.   Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

570.   Because of Ford's false representations and omissions, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent

catastrophic CP4 failure from occurring or reoccurring, and for repair of Class Vehicles after catastrophic failure.

571.   Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

572.   Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

573.   Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

574.   Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of

punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (D.C. CODE § 28-:2-314)

575.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

576.   Plaintiffs bring this Count on behalf of the District of Columbia Class Members.

577.   Ford was a merchant with respect to motor vehicles within the meaning of the D.C. Code § 28:2-104(1).

578.   Under D.C. Code § 28:2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

579.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design

and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

580.  It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

581.  The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

582.  Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

583.  Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally

or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

584.   As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**J.     Claims Brought on Behalf of the Georgia Class Members[83]**

**COUNT I**

**VIOLATIONS OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
(GA. CODE ANN. § 10-1-390 *ET. SEQ.*)**

585.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

586.   Plaintiffs bring this Count on behalf of the Georgia Class Members.

587.   Plaintiffs and other Class Members are "consumers" within the meaning of Ga. Code Ann. § 10-1-392(6).

588.   Plaintiffs, the other Class Members, and Ford are "persons" within the meaning of Ga. Code Ann. § 10-1-392(24).

---

[83] As used herein, the "Georgia Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Georgia.

589.   Ford was and is engaged in "trade" and "commerce" within the meaning of Ga. Code Ann. § 10-1-392(28).

590.   The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code Ann. § 10-1-393(a), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods and services are of a particular standard, quality, or grade . . . if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised." Ga. Code Ann. § 10-1-393(b).

591.   Ford participated in unfair and deceptive trade practices that violated the Georgia FBPA as described herein. In the course of its business, Ford knowingly concealed and suppressed material facts concerning the defective CP4 fuel pumps in the Class Vehicles. Ford falsely represented the quality of the Class Vehicles and omitted material facts regarding the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), as well as the durability and overall value of the Class Vehicles, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

592.   Specifically, by misrepresenting the Class Vehicles as safe, durable, reliable, and compatible with U.S. diesel, and by failing to disclose and actively concealing the CP4 fuel pump defect, Ford engaged in deceptive business practices prohibited by the Georgia FBPA, including:

a. Knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles;

b. Knowingly making a false representation as to whether the Class Vehicles are of a particular standard, quality, or grade; and

c. Advertising the Class Vehicles with the intent not to sell them as advertised.

593.   Ford's unfair or deceptive acts or practices, including the above-mentioned concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including the Georgia Class Members about the true safety and reliability of Class Vehicles, the quality of Ford's Power Stroke diesel-engine vehicles, and the true value of the Class Vehicles.

594.   As alleged above, in the course of its business, Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles and the defective high-pressure fuel pumps installed therein with an intent to mislead the Georgia Class Members.

595.   Ford knew or should have known that its conduct violated the Georgia FBPA.

596.   To protect its profits, Ford concealed the CP4 fuel pump defect and continued to allow unsuspecting new and used vehicle purchasers to continue to buy, lease, and drive the inherently defective Class Vehicles.

597.   Ford owed the Georgia Class Members a duty to disclose the truth about the quality, reliability, durability, and safety of the Class Vehicles because Ford:

a. Possessed exclusive knowledge of the CP4 fuel pump defect in its Power Stroke diesel-engine vehicles;

b. Intentionally concealed the foregoing from the Georgia Class Members; and/or

c. Made incomplete representations about the quality, reliability, durability, and safety of the Class Vehicles, while purposefully withholding material facts from the Georgia Class Members that contradicted these representations.

598.   Because Ford fraudulently concealed the CP4 fuel pump defect in the Class Vehicles, and failed to disclose to the Georgia Class Members at the time of purchase or lease that said vehicles are prone to catastrophic high-pressure fuel pump failure which (1) causes the Class Vehicles to stall while in motion with a subsequent inability to restart; and (2) results in a comprehensive high-pressure fuel injection system repair/replacement process costing $8,000 - $20,000 which Ford will not cover, the Class Vehicles are worth significantly less than the amounts paid by the Georgia Class members at the time of purchase or lease. Indeed, the consumers who purchased or leased the Class Vehicles would not have purchased or leased said

vehicles, or would have paid significantly less for them, had they known of the existence of this defect prior to purchase or lease.

599.  The Georgia Class Members suffered ascertainable loss caused by Ford's misrepresentations and its failure to disclose material information. The Georgia Class Members did not receive the benefit of their bargains as a result of Ford's misconduct.

600.  As a direct and proximate result of Ford's violations of the Georgia FBPA, the Georgia Class Members have suffered injury-in-fact and/or actual damages.

601.  The Georgia Class Members are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code Ann. § 10-1-399(a).

602.  The Georgia Class Members also seek an order enjoining Ford's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code Ann. § 10-1-399.

603.  In accordance with Ga. Code Ann. § 10-1-399(b), Plaintiffs' counsel, on behalf of Plaintiffs, sent a letter to Ford with notice of their allegations regarding Ford's violations of the Georgia FBPA relating to the Class Vehicles and the Georgia Class Members' demand that Ford correct or agree to correct the actions described therein. Ford has failed to do so. Plaintiffs therefore seek compensatory and monetary damages to which Plaintiffs and Georgia Class Members are entitled.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON GEORGIA LAW)

604.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

605.   Plaintiffs bring this Count on behalf of Georgia Class Members.

606.   As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true defective nature of the Class Vehicles.

607.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any

material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

608.  As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

609.  As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

610.  As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

611.  As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

612.  Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising

and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

613.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

614.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members,

Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

615.   Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

616.   Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

617.   Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

618.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

619.   Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

620.   Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

621.   Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

622.   Because of Ford's false representations and omissions, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid

substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring, and for repair of Class Vehicles after catastrophic failure.

623.  Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

624.  Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

625.  Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

626. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other

Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

### UNJUST ENRICHMENT

627.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

628.  Plaintiffs bring this Count on behalf of the Georgia Class Members.

629.  This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

630.  As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than the Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

631.  Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

632.   Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

633.   Ford has received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

634.   It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

635.   Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

636.   Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

637.   As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial. Plaintiffs and other Class Members, therefore, seek an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

**K.**      **Claims Brought on Behalf of the Hawaii Class Members[84]**

### COUNT I

### UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW (HAW. REV. STAT. § 480 *ET SEQ.*)

638.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

639.   Plaintiffs bring this Count on behalf of the Hawaii Class Members.

640.   Ford is a "person" under Haw. Rev. Stat. § 480-1.

641.   Plaintiffs and other Class Members are "consumers" as defined by Haw. Rev. Stat. § 480-1, who purchased or leased one or more Class Vehicles.

642.   Ford's acts or practices as set forth above occurred in the conduct of trade or commerce.

643.   The Hawaii Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…."   Ford's conduct violated the Haw. Rev. Stat. § 480-2(a).

644.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards

---

[84] As used herein, the "Hawaii Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Hawaii.

to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

645.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

646.   Plaintiff and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiff and Class Members did not,

and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

647.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

648.   The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

649.   Ford's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

650.   Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

651.   Ford knew or should have known that its conduct violated the Hawaii Act.

652.   Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

653.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiff's and other Class Members' reliance on these material representations, Ford

had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

654. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

655.  Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

656.  Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

657.  Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

658.  Plaintiffs and other Class Members also seek monetary relief against Ford measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial and attorneys' fees, and any other just and proper relief available under the Hawaii Act.

659.  Under Haw. Rev. Stat. § 480-13.5, Plaintiffs seek an additional award against Ford of up to $10,000 for each violation directed at a Hawaiian elder. Ford

knew or should have known that its conduct was directed to one or more Plaintiffs who are elders. Ford's conduct was in willful disregard of the rights of elders and caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder. Plaintiffs who are elders are substantially more vulnerable to Ford's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Ford's conduct.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON HAWAII LAW)

660. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

661. Plaintiffs bring this Count on behalf of the Hawaii Class Members.

662. As set forth above, Plaintiffs and other Class Members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class Members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

663. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more

importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

664.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

665.   As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

666.   As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

667.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

668.   As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

669.   Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

670. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

671. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

672.   Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

673.   Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

674.   Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

675.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

676.   Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

677.   Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

678.   Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford

to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

679.   Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

680.   Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs

and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

681. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

682. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

683. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (HAW. REV. STAT. § 490:2-314)

684.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

685.   Plaintiffs bring this Count on behalf of the Hawaii Class Members.

686.   Ford was at all times a merchant with respect to motor vehicles under Haw. Rev. Stat. § 490:2-104(1).

687.   Under Haw. Rev. Stat. § 490:2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

688.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and

inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

689.   It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

690.   The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

691.   Plaintiffs were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs.

692.   Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and other Class Members, to Ford, complaints by Plaintiffs or other Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer

complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

693.   As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and other Class Members have been damaged in an amount to be proven at trial.

## L.   Claims Brought on Behalf of the Idaho Class Members[85]

### COUNT I

### VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT (IDAHO CODE § 48-601 *ET. SEQ.)*

694.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

695.   Plaintiffs bring this Count on behalf of the Idaho Class Members.

696.   Ford is a "person" under the Idaho Consumer Protection Act ("Idaho CPA"), Idaho Code § 48-602(1).

697.   Ford's acts or practices as set forth above and herein occurred in the conduct of "trade" or "commerce" under the Idaho Code § 48-602(2).

698.   The Idaho Consumer Protection Act declares the following unfair methods of competition and unfair or deceptive acts or practices in the conduct of

---

[85] As used herein, the "Idaho Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Idaho.

any trade or commerce unlawful: "(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have…(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; … (9) Advertising goods or services with intent not to sell them as advertised; … (17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer; … (19) Engaging in any unconscionable method, act or practice in the conduct of trade or commerce, as provided in section 48-603C." Idaho Code § 48-603.

699.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any

material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

700.  In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

701.  Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations, and would not have purchased the Class Vehicles (or would have paid less for them) had they known of the Class Vehicles' susceptibility to catastrophic CP4 fuel pump failure. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiff and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

702.  The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding

whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

703.   Ford's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

704.   Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

705.   Ford knew or should have known that its conduct violated the Idaho CPA.

706.   Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump  in the Class Vehicles with U.S. diesel fuel because Ford:

   a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty

claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

707.  Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the

value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

708. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

709. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

710. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and

destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's representations and omissions.

711.   Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

712.   Plaintiffs and the Class seeks the greater of $1,000 or actual ascertainable damages, including out-of-pocket and/or benefit-of-the-bargain damages, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

713.   Plaintiffs and the Class also seeks punitive damages against Ford because Ford's conduct evidences an extreme deviation from reasonable standards. Ford's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON IDAHO LAW)

714.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

715.   Plaintiffs bring this Count on behalf of the Idaho Class Members.

716.   As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more

importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles.

717.  In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

718.  As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

719.   As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

720.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

721.   As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or other Class Members.

722.   Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

723.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

724.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck

consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

725.   Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

726.   Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

727.   Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

728.    Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

729.    Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

730.    Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

731.    Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford

to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

732.   Because of Ford's false representations and omissions, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring, and for repair of Class Vehicles after catastrophic failure.

733.   Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class

Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

734. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

735. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

736. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## UNJUST ENRICHMENT

737.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

738.   Plaintiffs bring this Count on behalf of the Idaho Class Members.

739.   This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

740.   As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than the Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

741.   Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

742.   Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

743.   Ford has received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

744.   It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

745.   Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

746.   Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

747.   As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial. Plaintiffs and other Class Members, therefore, seek an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

**M.**    **Claims Brought on Behalf of the Illinois Class Members[86]**

### COUNT I

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILL. COMP. STAT. 505/1 *ET. SEQ.*)

748. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

749. Plaintiffs bring this Count on behalf of the Illinois Class Members.

750. Ford is a "person" as that term is defined in 815 Ill. Comp. Stat. 505/1(c).

751. Plaintiffs and the Class Members are "consumers" as that term is defined in 815 Ill. Comp. Stat. 505/1(e).

752. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. 505/2. The following have been declared "deceptive trade practices:" "(5) represents that goods

---

[86] As used herein, the "Illinois Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Illinois.

or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; …(7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another."  815 Ill. Comp. Stat. 510/2.

753.   In the course of Ford's business, it willingly failed to disclose and actively concealed, suppressed, and/or omitted that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair methods of competition or unfair or deceptive acts or practices, including but not limited to the use or employment of deception, fraud, false pretense, false promise, misrepresentations, or concealment, suppression, or omission of any material fact, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not. Ford acted with intent that Plaintiffs and

other Class Members rely upon such concealment, suppression, or omission of the material facts, in connection with the sale of Class Vehicles.

754.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose or omission that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

755.   Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

756.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

757.   The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding

whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

758.   Ford's methods of unfair competition and unfair or deceptive acts or practices, deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

759.   Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

760.   Ford knew or should have known that its conduct violated the Illinois CFA.

761.   Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump  in the Class Vehicles with U.S. diesel fuel because Ford:

> a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty

claims it saw upon the introduction of the CP4 into the Class Vehicles;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

762.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class

Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

763. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

764. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

765. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and

destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's representations and omissions.

766.   Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

767.   Pursuant to 815 Ill. Comp. Stat. 505/10a(a), Plaintiffs and the Class Members seek monetary relief against Ford in the amount of actual damages, as well as punitive damages because Ford acted with fraud and/or malice and/or was grossly negligent.

768.   Plaintiffs also seeks attorneys' fees, and any other just and proper relief available under 815 Ill. Comp. Stat. § 505/1 *et. seq.*

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON ILLINOIS LAW)

769.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

770.   Plaintiffs bring this Count on behalf of the Illinois Class Members.

771.   As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members

about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiff and the other Class Members information that is highly relevant to their purchasing decision.

772.  Ford knew these representations were false when made.

773.  In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

774.  As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

775.   As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

776.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

777.   As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

778.   Ford concealed and suppressed the defects with the Class Vehicles with the intent to deceive Plaintiffs and other Class Members.

779.   Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant

defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

780.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

781.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of

the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

782.   Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

783.   Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

784.   Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

785.   Ford actively concealed and/or suppressed or falsely represented these material facts the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

786.   Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

787.   Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

788.   Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

789.   Because of Ford's false representations and omissions, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

790.   Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

791.   Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

792.   Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

793.   Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.   Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## UNJUST ENRICHMENT

794.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

795.   Plaintiffs bring this Count on behalf of the Illinois Class Members.

796.   This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

797.   As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than the Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

798.   Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

799.   Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

800.   Ford has received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

801.   It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

802.   Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

803.   Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

804.   As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial. Plaintiffs and other Class Members, therefore, seek an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT IV

## BREACH OF THE IMPLIED WARRANTY FOR MERCHANTABILITY
## (810 ILL. COMP. STAT. 5/2-314)

805.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

806.   Plaintiffs bring this Count on behalf of the Illinois Class Members.

807. Ford was a merchant with respect to motor vehicles within the meaning of the 810 Ill. Comp. Stat. 5/2-314.

808. Under 810 Ill. Comp. Stat. 5/2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

809. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

810. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

811. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use

of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

812.   Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

813.   Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

814.   As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

N. **Claim Brought on Behalf of the Indiana Class Members**[87]

## COUNT I

### VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3)

815. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

816. Plaintiffs bring this Count on behalf of the Indiana Class Members.

817. Ford is a "person" within the meaning of Ind. Code § 24-5-0.5-2(2).

818. The Indiana Class Members' acquisitions of the Class Vehicles are "consumer transactions" within the meaning of Ind. Code § 24-5-.05-2(a)(1).

819. Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person or supplier from engaging in "an unfair, abusive or deceptive act, or omission, or practice in connection with a consumer transaction." "Deceptive acts" include: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not: . . . (c)

---

[87] As used herein, the "Indiana Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Indiana.

Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false." Ind. Code § 24-5-0.5-3.

820. Ford participated in unfair and deceptive trade practices that violated the Indiana DCSA as described herein. In the course of its business, Ford knowingly concealed and suppressed material facts concerning the defective CP4 fuel pumps in the Class Vehicles. Ford falsely represented the quality of the Class Vehicles and omitted material facts regarding the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), as well as the durability and overall value of the Class Vehicles, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

821. Specifically, by misrepresenting the Class Vehicles as safe, durable, reliable, and compatible with U.S. diesel, and by failing to disclose and actively concealing the CP4 fuel pump defect, Ford engaged in deceptive business practices prohibited by the Indiana DCSA, including:

a. Knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles;

b. Knowingly making a false representation as to whether the Class Vehicles are of a particular standard, quality, or grade;

c. Advertising the Class Vehicles with the intent not to sell them as advertised; and

d. Otherwise engaging in conduct likely to deceive.

822.  Ford's unfair or deceptive acts or practices, including the above-mentioned concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including the Indiana Class Members about the true safety and reliability of Class Vehicles, the quality of Ford's Power Stroke diesel-engine vehicles, and the true value of the Class Vehicles.

823.  As alleged above, in the course of its business, Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles and the defective high-pressure fuel pumps installed therein with an intent to mislead the Indiana Class Members.

824.  Ford knew or should have known that its conduct violated the Indiana DCSA.

825.  To protect its profits, Ford concealed the CP4 fuel pump defect and continued to allow unsuspecting new and used vehicle purchasers to continue to buy, lease, and drive the inherently defective Class Vehicles.

826.   Ford owed the Indiana Class Members a duty to disclose the truth about the quality, reliability, durability, and safety of the Class Vehicles because Ford:

a. Possessed exclusive knowledge of the CP4 fuel pump defect in its Power Stroke diesel-engine vehicles;

b. Intentionally concealed the foregoing from the Indiana Class Members; and/or

c. Made incomplete representations about the quality, reliability, durability, and safety of the Class Vehicles, while purposefully withholding material facts from the Indiana Class Members that contradicted these representations.

827.   Because Ford fraudulently concealed the CP4 fuel pump defect in the Class Vehicles, and intentionally failed to disclose to the Indiana Class Members at the time of purchase or lease that said vehicles are prone to catastrophic high-pressure fuel pump failure which (1) causes the Class Vehicles to stall while in motion with a subsequent inability to restart; and (2) results in a comprehensive high-pressure fuel injection system repair/replacement process costing $8,000 - $20,000 which Ford will not cover, the Class Vehicles are worth significantly less than the amounts paid by the Indiana Class Members at the time of purchase or lease. Indeed, consumers who purchased or leased the Class Vehicles would not have purchased or leased said vehicles, or would have paid significantly less for them, had they known of the existence of this defect prior to purchase or lease.

828.   The Indiana Class Members suffered ascertainable loss caused by Ford's misrepresentations and its failure to disclose material information. The

Indiana Class Members did not receive the benefit of their bargains as a result of Ford's misconduct.

829.   As a direct and proximate result of Ford's violations of the Indiana DCSA, the Indiana Class Members have suffered injury-in-fact and/or actual damages.

830.   Pursuant to Ind. Code § 24-5-0.5-4, the Indiana Class Members are entitled to monetary relief from Ford measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 for each Indiana Class Member, including treble damages up to $1,000 for Ford's willfully deceptive acts.

831.   The Indiana Class Members also seek punitive damages based on the outrageousness and recklessness of Ford's conduct and Ford's high net worth.

832.   In accordance with Ind. Code § 24-5-0.5-5(a), Plaintiffs' counsel, on behalf of Plaintiffs, sent a letter to Ford with notice of their allegations regarding Ford's violations of the Indiana DCSA relating to the Class Vehicles and the Indiana Class Members' demand that Ford correct or agree to correct the actions described therein. Ford has failed to do so. Plaintiffs therefore seek compensatory and monetary damages to which Plaintiffs and Indiana Class Members are entitled.

## COUNT II

## FRAUD BY CONCEALMENT
## (BASED ON INDIANA LAW)

833.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

834.   Plaintiffs bring this Count on behalf of Indiana Class Members.

835.   As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles.

836.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any

material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

837. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

838. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

839. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

840. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

841. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising

and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

842. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

843. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class

Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

844.   Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

845.   Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

846.   Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

847.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

848.   Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

849.   Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

850.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased a Class Vehicle, or would not have continued to own or drive their Class Vehicles or would have paid substantially less for their Class Vehicle, or would have taken other affirmative steps to mediate the impact of or prevent failure. Plaintiffs' actions were justified, Ford was in exclusive control of the material facts and such facts were not known to the public, including Plaintiffs.

851.   Because of Ford's false representations, concealment, and/or suppression  of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

852.   Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

853.   Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

854.   Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

855.   Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## UNJUST ENRICHMENT

856.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

857.   Plaintiffs bring this Count on behalf of the Indiana Class Members.

858.   This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

859.   As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than the Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

860.   Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

861.   Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

862.   Ford has received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

863.   It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

864.   Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

865.   Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

866.   As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial. Plaintiffs and other Class Members, therefore, seek an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (IND. CODE § 26-1-2-314)

867.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

868.   Plaintiffs bring this Count on behalf of the Indiana Class Members.

869.   Ford was a merchant with respect to motor vehicles within the meaning of the Ind. Code § 26-1-2-314.

870.   Under Ind. Code § 26-1-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

871.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

872.   It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

873.   The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse

throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

874.  Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

875.  Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

876.  As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**O.    Claims Brought on Behalf of the Iowa  Class Members[88]**

## COUNT I

### CONSUMER FRAUDS ACTS IN VIOLATION OF IOWA LAW
### (IOWA CODE § 714H.1 *ET SEQ.*)

877.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

878.    Plaintiffs bring this Count on behalf of the Iowa Class Members.

879.    Ford is "person" under Iowa Code § 714H.2(7).

880.    Plaintiffs and other Class members are "consumers" as defined by Iowa Code § 714H.2(3), who purchased or leased one or more Class Vehicles.

881.    The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3. Ford participated in misleading, false, or deceptive acts that violated the

---

[88] As used herein, the "Iowa Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Iowa.

Iowa CFA with the intent that Plaintiffs and other Class Members rely on it. By systematically concealing the defects in Class Vehicles, Ford engaged in deceptive business practices prohibited by the Iowa CFA

882. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Ford's acts had the capacity, tendency, or effect of deceiving or misleading consumers. Ford engaged in unfair and deceptive business practices in violation of the Iowa CFA.

883. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse

throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

884. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

885. Ford's actions as set forth above occurred in the conduct of trade or commerce.

886. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they

purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

887.   Ford's unfair or deceptive acts or practices, deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

888.   Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

889.   Ford knew or should have known that its conduct violated the Iowa CFA.

890.   Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

> a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;
>
> b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

891.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to Ford's false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in

fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

892.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

893.   Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

894.   Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's representations and omissions.

895.   Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

896.   Pursuant to Iowa Code § 714H.5, Plaintiffs and the Class seek an order enjoining Ford's unfair and/or deceptive acts or practices; actual damages; in addition to an award of actual damages, statutory damages up to three times the amount of actual damages awarded as a result of Ford's willful and wanton disregard for the rights or safety of others; attorneys' fees; and such other equitable relief as the Court deems necessary to protect the public from further violation of the Iowa CFA.

## COUNT II

## FRAUDULENT CONCEALMENT
### (BASED ON IOWA LAW)

897.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

898.   Plaintiffs bring this Count on behalf of the Iowa Class Members.

899.   As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, with intent to deceive, defraud, and mislead Plaintiffs and other Class Members about the true defective nature of the Class Vehicles, or Ford acted

with reckless disregard for the truth and denied Plaintiffs and the other Class Members information that is highly relevant to their purchasing decision.

900.   In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

901.   As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

902.   As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

903.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

904.   As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

905.   Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

906.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would

purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

907.  Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking

time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

908.   Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

909.   Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

910.   Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

911.   Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

912.   Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

913.   Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

914.   Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class

Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

915.   Because of Ford's concealment and/or suppression of the facts and false representations and omissions, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

916.   Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of

repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

917. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

918. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

919. Plaintiffs seek attorneys' fees and any other just and proper relief available.

920. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## UNJUST ENRICHMENT

921. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

922.   Plaintiffs bring this Count on behalf of the Iowa Class Members.

923.   This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

924.   As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than the Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

925.   Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

926.   Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

927.   Ford has received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

928.   It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

929.   Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

930.   Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

931.   As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial. Plaintiffs and other Class Members, therefore, seek an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

**P.     Claims Brought on Behalf of the Kansas Class Members[89]**

## COUNT I

**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
(KAN. STAT. ANN. § 50-623 *ET SEQ.*)**

932.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

933.   Plaintiffs bring this count on behalf of the Kansas Class Members.

---

[89] As used herein, the "Kansas Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Kansas.

934.   Ford is a "supplier" under the Kansas Consumer Protection Act ("Kansas CPA"), Kan. Stat. Ann. § 50-624(1).

935.   Plaintiffs and other Class Members are "consumers," within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased or leased one or more Class Vehicles.

936.   The sale of the Class Vehicles to the Kansas Class Members was a "consumer transaction" within the meaning of the Kan. Stat. Ann. § 50-624(c).

937.   The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-624(a), and that deceptive acts or practices include: (1) knowingly making a representation or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact," and "(3) the willful failure to state a material fact, or the willful concealment, suppression, or omission of a material fact." The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-627(a).

938.   In the course of Ford's business, it willingly failed to disclose and willfully concealed, suppressed, or omitted the fact that the CP4 fuel pump in the

Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair methods of competition , unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles in light of representations of fact made in a positive manner. Fords actions were unconscionable in connection with the transaction involving the Class Vehicle.

Ford engaged in unfair and deceptive business practices in violation of the Kansas CPA.

939.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle) as described above.

940.   Ford acted with intent that others rely on the concealment or omission of material facts. Plaintiff and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiff and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

941.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

942.   The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

943.   Ford's unfair or deceptive acts or practices, willful misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

944.   Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

945.   Ford knew or should have known that its conduct violated the Kansas CPA.

946.   Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

    a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel

injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

947. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth.

These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

948. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

949. Ford's conduct directly and proximately caused injuries to Plaintiffs and the other Class Members.

950. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have

suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's representations and omissions.

951.   Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by Ford's deceptive practices are in the hundreds of thousands nation-wide; (2) Ford has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class Members; and (3) so long as the Class Vehicles continued to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant. Accordingly, Ford is liable to Plaintiffs and the other Class Members for damages in an amount to be proven at trial.

952.   Pursuant to Kan. Stat. Ann. § 50-634, Plaintiffs and other Class Members seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for Plaintiffs and each other Class Members. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

953.   Plaintiff also seeks an order enjoining Ford's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Kan. Stat. Ann. §. 50-623 *et seq.*

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON KANSAS LAW)

954.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

955.   Plaintiffs bring this Count on behalf of the Kansas Class Members.

956.   As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and the other Class Members information that is highly relevant to their purchasing decision.

957.   In the course of Ford's business, it willingly failed to disclose and willfully concealed, suppressed, or omitted that fact that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes

while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

958.   As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

959.   As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

960.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

961.   As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

962.   Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

963.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

964.   Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles,

Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

965. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew

would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

966.    Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

967.    Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

968.    Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

969.    Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous

model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

970.   Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

971.   Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

972.   Because of Ford's false representations, concealment and omissions and/or suppression of material facts, Plaintiffs and other Class Members have

sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

973.   Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

974.   Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

975.   Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

976.   Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.   Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

977.   Plaintiffs and other Class Members seek attorneys' fee and any other just and proper relief available.

<div align="center">

**COUNT III**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(KAN. STAT. ANN. § 84-2-341)**

</div>

978.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

979.   Plaintiffs bring this Count on behalf of the Kansas Class Members.

980.   Ford was a merchant with respect to motor vehicles within the meaning of the Kan. Stat. Ann. § 84-2-314.

981.   Under Kan. Stat. Ann. § 84-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when

Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

982.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

983.   It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

984.   The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

985.   Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

986.   Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

987.   As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

Q.    **Claims Brought on Behalf of the Kentucky Class Members**[90]

## COUNT I

## VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. ANN. § 367.110 *ET SEQ.*)

988.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

989.   Plaintiffs bring this Count on behalf of the Kentucky Class Members.

990.   Ford, Plaintiffs, and other Class Members are a "person" within the meaning of the Ky. Rev. Stat. Ann. § 367.110(1).

991.   Ford engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. § 367.110(2).

992.   The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. § 367.170(1). Plaintiffs and the Class purchased or leased the Class Vehicles primarily for personal, family, or household purposes. Ky. Rev. Stat. Ann. § 367.220. Ford participated in misleading, false, or deceptive acts that violated the Kentucky CPA. Accordingly, Ford engaged in deceptive business practices prohibited by the Kentucky CPA.

---

[90] As used herein, the "Kentucky Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Kentucky.

993.   In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair, false, misleading, or deceptive acts or practices. unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

994.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

995.   Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

996.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

997.   The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

998.   Ford's unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and other Class Members, about the true safety and reliability of their vehicles.

999.   Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1000. Ford knew or should have known that its conduct violated the Kentucky CPA.

1001. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump  in the Class Vehicles with U.S. diesel fuel because Ford:

    a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

    b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel,

while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1002. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates

a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1003. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1004. Ford's conduct and violation of the Kentucky CPA directly and proximately caused injury-in-fact and/or actual damages to Plaintiffs and the other Class Members.

1005. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's representations and omissions.

1006. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

1007. Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiffs and the Class seek to recover actual damages in an amount to be determined at trial and punitive damages where appropriate. Plaintiffs and the Class seek declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

## COUNT II

## FRAUD BY CONCEALMENT
## (BASED ON KENTUCKY LAW)

1008. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1009. Plaintiffs bring this Count is brought on behalf of the Kentucky Class Members.

1010. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless

disregard for the truth and denied Plaintiffs and the other Class Members information that is highly relevant to their purchasing decision.

1011. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford made false representations with the intent to deceive Plaintiffs.

1012. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1013. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1014. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the

Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1015. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1016. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1017. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1018. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1019. Ford acted with intent that others rely upon the concealment and false representations of material fact. Plaintiffs and other Class Members reasonably relied upon Ford's deception, false representations and omissions.  Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1020. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1021. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1022. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1023. Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1024. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1025. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class

Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1026. Because of Ford's false representations, concealment and/or suppression of the facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1027. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of

repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1028. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1029. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1030. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

**R.**     **Claims Brought on Behalf of the Louisiana Class Members**[91]

**COUNT I**

**VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**(LA. STAT. ANN. § 51:1401 *ET SEQ.*)**

1031. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1032. Plaintiffs bring this Count on behalf of the Louisiana Class Members.

1033. Ford, Plaintiff, and other Class Members are "persons" within the meaning of La. Stat. Ann. § 51:1402(1).

1034. Ford engaged in "trade" or "commerce" within the meaning of La. Stat. Ann. § 51:1402(9).

1035. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Stat. Ann. § 51:1405(A). Ford participated in misleading, false, or deceptive acts that violated Louisiana CPL. By systemically concealing that incompatibility of the CP4 fuel pump in the Class Vehicles with the U.S. diesel fuel, Ford engaged in deceptive business practices prohibited by the Louisiana CPL. These facts concealed would be material to a reasonable consumer.

---

[91] As used herein, the "Louisiana Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Louisiana.

1036. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful conduct of unfair or deceptive acts or practices in the conduct of any trade or commerce with the intent that a consumer rely on the same in connection therewith.

1037. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1038. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in

extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1039. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1040. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1041. Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1042. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1043. Ford knew or should have known that its conduct violated the Louisiana CPL.

1044. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump  in the Class Vehicles with U.S. diesel fuel because Ford:

> a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;
>
> b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or
>
> c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1045. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles

were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1046. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1047. As a direct and proximate result of Ford's violations of the Louisiana CPL, Plaintiffs and the other Class Members have suffered injury in fact and/or actual damage.

1048. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's representations and omissions.

1049. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest. Ford's violations offend public policy and are immoral, unethical, oppressive, unscrupulous and substantially injurious. Specifically: (1) the number of consumers affected by Ford's deceptive practices are in the hundreds of thousands nation-wide; (2) Ford has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class Members; and (3) so long as the

Class Vehicles continued to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant. Accordingly, Ford is liable to Plaintiffs and the other Class Members for damages an amount to be proven at trial.

1050. Pursuant to La. Stat. Ann. § 51:1409, Plaintiffs and other Class Members seek to recover actual damages in an amount to be determined at trial; treble damages for Ford's knowing violations of the Louisiana CPL; an order enjoining Ford's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Stat. Ann. § 51:1409.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON LOUISIANA LAW)

1051. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1052. Plaintiffs bring this Count on behalf of the Louisiana Class Members.

1053. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles.

1054. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1055. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1056. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1057. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the

Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1058. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1059. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1060. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1061. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1062. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and Class Members reasonably relied upon Ford's deception. Plaintiffs and other Class Members had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1063. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1064. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1065. Ford falsely represented the durability of the Class Vehicles and concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that

incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1066. Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1067. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1068. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class

Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1069. Because of Ford's false representations, concealment, suppression, or omissions of the material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump and the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1070. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of

repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1071. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1072. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1073. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANT OF MERCHANTABILITY/WARRANTY AGAINST REDHIBITORY DEFECTS
### (LA. CIV. CODE ART. 2520, 2524)

1074. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1075. Plaintiffs bring this Count on behalf of the Louisiana Class Members.

1076. Ford was a merchant with respect to motor vehicles within the meaning of the La. Civ. Code Art. 2520, 2524.

1077. Under La. Civ. Code Art. 2520 and 2524, a warranty that the Class Vehicles did not have redhibitory defects was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

1078. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. The Class Vehicles had a redhibitory defect. The Class Vehicles were totally useless, or their use so inconvenient that it must be presumed that a buyer would not have bought it had he known of the defect. The Class Vehicles had a defect that is redhibitory as the defect diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic

failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1079. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1080. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1081. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs.

1082. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the

defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1083. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

S.    **Claims Brought on Behalf of the Maine Class Members[92]**

### COUNT I

### VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT (ME. REV. STAT. ANN. TIT. 5, § 205A *ET. SEQ.*)

1084. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1085. This Count is brought by Plaintiffs on behalf of Maine Class Vehicle purchasers or lessees who are members of the Class.

1086. Maine's Unfair Trade Practices Act ("MUTPA") prohibits "[u]nfair methods of competition and unfair deceptive acts or practices in the conduct of any trade or commerce." Me. Rev. Stat. Ann. tit. 5, § 207.

1087. Ford, Plaintiffs, and Class Members are "person[s]" within the meaning of the MUTPA. Me. Rev. Stat. Ann. tit. 5, § 206(1).

---

[92] As used herein, the "Maine Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Maine.

1088. The actions of Ford, as set forth above, occurred in the conduct of "trade" or "commerce" within the meaning of the MUTPA. Me. Rev. Stat. Ann. tit. 5, § 206(3).

1089. Ford participated in unfair and deceptive trade practices that violated the MUTPA as described herein. In the course of its business, Ford knowingly concealed and suppressed material facts concerning the defective CP4 fuel pumps in the Class Vehicles. Ford falsely represented the quality of the Class Vehicles and omitted material facts regarding the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), as well as the durability and overall value of the Class Vehicles, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1090. Specifically, by misrepresenting the Class Vehicles as safe, durable, reliable, and compatible with U.S. diesel, and by failing to disclose and actively concealing the CP4 fuel pump defect, Ford engaged in deceptive business practices prohibited by the MUTPA, including:

a. Knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles;

b. Knowingly making a false representation as to whether the Class Vehicles are of a particular standard, quality, or grade;

c. Advertising the Class Vehicles with the intent not to sell them as advertised; and

d. Otherwise engaging in conduct likely to deceive.

1091. Ford's unfair or deceptive acts or practices, including the above-mentioned concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including the Maine Class Members about the true safety and reliability of Class Vehicles, the quality of Ford's Power Stroke diesel-engine vehicles, and the true value of the Class Vehicles.

1092. As alleged above, in the course of its business, Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles and the defective high-pressure fuel pumps installed therein with an intent to mislead the Maine Class Members.

1093. Ford knew or should have known that its conduct violated the MUTPA.

1094. To protect its profits, Ford concealed the CP4 fuel pump defect and continued to allow unsuspecting new and used vehicle purchasers to continue to buy, lease, and drive the inherently defective Class Vehicles.

1095. Ford owed the Maine Class Members a duty to disclose the truth about the quality, reliability, durability, and safety of the Class Vehicles because Ford, by virtue of designing, producing, and warranting the Class Vehicles, possessed exclusive, superior knowledge of the CP4 fuel pump defect in its Power Stroke diesel-engine vehicles, and Plaintiffs and Class Members could not reasonably be

expected to learn of or discovery the CP4 fuel pump defect which is latent in nature and manifests in a deeply internal component part of the Class Vehicles' high-pressure fuel injection systems.

1096. Plaintiffs and Class Members relied on Ford's representations and omissions regarding the safety, quality, and durability of the Class Vehicles, and specifically that said vehicles were compatible with U.S. diesel. Ford, by the conduct, statements, and omissions described above, knowingly and intentionally concealed from Plaintiffs and the Class Members that the Class Vehicles suffer from an inherent defect (and the costs, safety risks, and diminished value of the vehicles as a result of this defect).

1097. Ford's acts and practices have deceived Plaintiffs and Class Members and are likely to, and did, deceive the public. In misrepresenting the attributes and performance properties of Class Vehicles, and failing to disclose the CP4 fuel pump defect and suppressing material facts from Plaintiffs and Class Members, Ford violated the MUTPA and substantially injured them. Ford's misrepresentations, omissions, and acts of concealment pertained to information that was material to Plaintiffs and Class Members, as it would have been to all reasonable consumers.

1098. Because Ford fraudulently concealed the CP4 fuel pump defect in the Class Vehicles, and intentionally failed to disclose to Plaintiffs and the Maine Class Members at the time of purchase or lease that said vehicles are prone to catastrophic

high-pressure fuel pump failure which (1) causes the Class Vehicles to stall while in motion with a subsequent inability to restart; and (2) results in a comprehensive high-pressure fuel injection system repair/replacement process costing $8,000 - $20,000 which Ford will not cover, the Class Vehicles are worth significantly less than the amounts paid by Plaintiffs and the Maine Class Members at the time of purchase or lease. Indeed, Ford's conduct proximately caused Plaintiffs' and Maine Class Members' injuries, as consumers who purchased or leased the Class Vehicles would not have purchased or leased said vehicles, or would have paid significantly less for them, had they known of the existence of this defect prior to purchase or lease.

1099. Plaintiffs and the Maine Class Members suffered ascertainable loss caused by Ford's misrepresentations and its failure to disclose material information. Plaintiffs and the Maine Class Members did not receive the benefit of their bargains as a result of Ford's misconduct.

1100. The injuries suffered by Plaintiffs and Maine Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, and are not injuries that Plaintiffs and Maine Class Members could or should have reasonably avoided.

1101. Pursuant to Me. Rev. Stat. Ann. tit. 5, § 213(2), Plaintiffs and the Class seek costs, attorneys' fees, and any other just and proper relief under applicable law.

1102. In accordance with Me. Rev. Stat. Ann. tit. 5, § 213(1-A), Plaintiffs' counsel, on behalf of Plaintiffs and Maine Class Members, sent a letter to Ford with notice of their allegations regarding Ford's violations of the MUTPA relating to the Class Vehicles and Plaintiffs' demand that Ford correct or agree to correct the actions described therein. More than thirty days have passed since Plaintiffs' counsel sent that letter and Ford has failed to correct or agree to correct the actions described therein. Plaintiffs therefore seek compensatory and monetary damages to which Plaintiffs and Maine Class Members are entitled.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MAINE LAW)

1103. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1104. Plaintiffs bring this Count on behalf of the Maine Class Members.

1105. As set forth above, Plaintiffs and other Class Members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class Members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

1106. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more

importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

1107. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1108. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1109. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1110. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1111. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1112. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1113. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1114. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1115. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1116. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1117. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1118. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1119. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1120. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1121. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford

to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1122. Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1123. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs

and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1124. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1125. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1126. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (ME. REV. STAT. ANN. TIT. 11, § 2-314)

1127. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1128. Plaintiffs bring this Count on behalf of the Maine Class Members.

1129. Ford was at all times a merchant with respect to motor vehicles under Me. Rev. Stat. Ann. tit. 11 § 2-104(1).

1130. Under Me. Rev. Stat. Ann. tit. 11 § 2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

1131. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and

inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1132. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1133. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1134. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1135. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the

defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1136. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## T.      Claims Brought on Behalf of the Maryland Class Members[93]

### COUNT I

### VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT (MD. CODE ANN. COM. LAW. § 13-101 *ET SEQ.*)

1137. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1138. Plaintiffs bring this Count on behalf of the Maryland Class Members.

1139. Ford, Plaintiffs, and other Class Members are "persons" within the meaning of Md. Code Ann., Com. Law § 13-101(h).

1140. The Maryland Consumer Protection Act ("Maryland Act") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good. Md. Code Ann., Com. Law Code § 13-303. These include "(1) false, falsely disparaging, or misleading oral or written statement, visual

---

[93] As used herein, the "Maryland Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Maryland.

description, or other representations of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (2) Representation that: (i) consumer goods . . . . have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quality which they do not have:… (iv) Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;" and (6) false or misleading representation of fact which concerns; (i) The reason for or the existence of a price reduction; or (ii) A price comparison to a price of a competitor or to one's price at a past or future time;" and (9) Deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) The promotion or sale of any consumer goods." Ford participated in misleading, false, deceptive acts that violated the Maryland CPA. By concealing the known defects in Plaintiffs' Class Vehicles, Ford engaged in deceptive business practices prohibited by the Maryland CPA.

1141. In the course of Ford's business, it willingly failed to disclose and actively concealed that the Bosch CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the

vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with intent that others rely upon the same in connection with the sale of Class Vehicles.

1142. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure

(oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle), as described above..

1143. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class Members were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1144. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1145. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they

purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1146. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1147. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1148. Ford knew or should have known that its conduct violated the Maryland CPA.

1149. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump  in the Class Vehicles with U.S. diesel fuel because Ford:

> a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;
>
> b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1150. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in

fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1151. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1152. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

1153. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

1154. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

1155. Pursuant to Md. Code Ann., Com. Law § 13-408, Plaintiffs and the Maryland Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON MARYLAND LAW)

1156. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1157. Plaintiffs bring this Count on behalf of the Maryland Class Members.

1158. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiff and other Class Members information that is highly relevant to their purchasing decision.

1159. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles

is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1160. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1161. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1162. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system

components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1163. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1164. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1165. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1166. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1167. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1168. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1169. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1170. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1171. Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1172. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1173. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump

failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1174. Because of Ford's false concealment and/or suppression, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1175. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1176. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1177. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1178. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MD. CODE COM. LAW § 2-314)

1179. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1180. Plaintiffs bring this Count on behalf of the Maryland Class Members.

1181. Ford was a merchant with respect to motor vehicles within the meaning of the Md. Code Com. Law § 2-314.

1182. Under Md. Code Com. Law § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

1183. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1184. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1185. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure

(oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1186. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1187. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1188. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

U.    **Claims Brought on Behalf of the Massachusetts Class Members**[94]

## COUNT I

## VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
## (MASS. GEN. LAWS CH. 93A)

1189. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1190. Plaintiffs bring this Count on behalf of the Massachusetts Class Members.

1191. Plaintiffs, Massachusetts Class Members, and Ford are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

1192. Ford was and is engaged in "trade" or "commerce" within the meaning of Mass. Gen Laws ch. 93A, § 1(b).

1193. The Massachusetts Consumer Protection Act ("MCPA") makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." Mass Gen. Laws ch. 93A, § 2(1).

1194. Ford participated in misleading, false, and deceptive acts or practices in the conduct of trade or commerce as described herein. By failing to disclose and

---

[94] As used herein, the "Massachusetts Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Massachusetts.

actively concealing the CP4 fuel pump defect and the dangers and issues stemming therefrom, Ford engaged in deceptive business practices prohibited by the MCPA.

1195. Ford knowingly concealed and suppressed material facts concerning the defective CP4 fuel pumps in the Class Vehicles. Ford falsely represented the quality of the Class Vehicles and omitted material facts regarding the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), as well as the durability and overall value of the Class Vehicles, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1196. Specifically, by misrepresenting the Class Vehicles as safe, durable, reliable, and compatible with U.S. diesel, and by failing to disclose and actively concealing the CP4 fuel pump defect, Ford engaged in deceptive business practices prohibited by the MCPA, including:

a. Knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles;

b. Knowingly making a false representation as to whether the Class Vehicles are of a particular standard, quality, or grade;

c. Advertising the Class Vehicles with the intent not to sell them as advertised; and

d. Otherwise engaging in conduct likely to deceive.

1197. Ford's unfair or deceptive acts or practices, including the above-mentioned concealments, omissions, and suppressions of material facts, had a

tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Massachusetts Class Members about the true safety and reliability of Class Vehicles, the quality of Ford's Power Stroke diesel-engine vehicles, and the true value of the Class Vehicles.

1198. As alleged above, in the course of its business, Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles and the defective high-pressure fuel pumps installed therein with an intent to mislead the Massachusetts Class Members.

1199. Ford knew or should have known that its conduct violated the MCPA.

1200. To protect its profits, Ford concealed the CP4 fuel pump defect and continued to allow unsuspecting new and used vehicle purchasers to continue to buy, lease, and drive the inherently defective Class Vehicles.

1201. Ford owed the Massachusetts Class Members a duty to disclose the truth about the quality, reliability, durability, and safety of the Class Vehicles because Ford:

> a. Possessed exclusive knowledge of the CP4 fuel pump defect in its Power Stroke diesel-engine vehicles;
>
> b. Intentionally concealed the foregoing from the Massachusetts Class Members; and/or
>
> c. Made incomplete representations about the quality, reliability, durability, and safety of the Class Vehicles, while purposefully withholding material

facts from the Massachusetts Class Members that contradicted these representations.

1202. Because Ford fraudulently concealed the CP4 fuel pump defect in the Class Vehicles, and intentionally failed to disclose to the Massachusetts Class Members at the time of purchase or lease that said vehicles are prone to catastrophic high-pressure fuel pump failure which (1) causes the Class Vehicles to stall while in motion with a subsequent inability to restart; and (2) results in a comprehensive high-pressure fuel injection system repair/replacement process costing $8,000 - $20,000 which Ford will not cover, the Class Vehicles are worth significantly less than the amounts paid by the Massachusetts Class Members at the time of purchase or lease. Indeed, consumers who purchased or leased the Class Vehicles would not have purchased or leased said vehicles, or would have paid significantly less for them, had they known of the existence of this defect prior to purchase or lease.

1203. Accordingly, the Massachusetts Class Members have suffered ascertainable loss caused by Ford's misrepresentations and its failure to disclose material information. The Massachusetts Class Members did not receive the benefit of their bargains as a result of Ford's misconduct.

1204. As a direct and proximate result of Ford's violations of the MCPA, the Massachusetts Class Members have suffered injury-in-fact and/or actual damages.

1205. Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts Class Members are entitled to monetary relief from Ford measured as the greater of (a)

actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $25 for each Massachusetts Class Member. Because Ford's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover up to three times actual damages, but no less than two times actual damages.

1206. Plaintiffs and Massachusetts Class Members also seek an order enjoining Ford's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the MCPA.

1207. In accordance with Mass. Gen. Laws ch. 93A, § 9(3), Plaintiffs' counsel, on behalf of Plaintiffs, sent a letter to Ford on August 13, 2019, providing Ford with notice of the allegations regarding Ford's violations of the MCPA relating to the Class Vehicles and the Massachusetts Class Members' demand that Ford correct or agree to correct the actions described therein. More than thirty days have passed and Ford has failed to do so. Plaintiffs therefore seek compensatory and monetary damages to which Plaintiffs and Massachusetts Class Members are entitled.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON MASSACHUSETTS LAW)

1208. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1209. Plaintiffs bring this Count on behalf of the Massachusetts Class Members.

1210. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1211. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such

concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1212. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1213. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1214. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1215. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1216. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising

and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1217. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1218. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class

Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1219. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1220. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1221. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1222. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1223. Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1224. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1225. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1226. Because of Ford's false representations and omissions, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid

substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1227. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1228. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1229. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1230. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them

were made in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MASS. GEN. LAW CH. 106, § 2-314)

1231. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1232. Plaintiffs bring this Count on behalf of the Massachusetts Class Members.

1233. Ford was a merchant with respect to motor vehicles within the meaning of the Mass. Gen. Law Ch. 106, § 2-314.

1234. Under Mass. Gen. Law Ch. 106, § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

1235. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only

fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1236. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1237. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1238. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1239. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing,

complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1240. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## V.    Claims Brought on Behalf of the Michigan Class Members[95]

### COUNT I

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT (MICH. COMP. LAWS § 445.901 *ET SEQ.*)

1241. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1242. Plaintiffs bring this Count on behalf of the Michigan Class Members.

1243. Plaintiffs and other Class Members were "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

---

[95] As used herein, the "Michigan Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Michigan.

1244. Ford was a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

1245. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including "(c) Representing that goods or services have … characteristics … that they do not have;" "(e) Representing that goods or services are of a particular standard … if they are of another," "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1). Ford participated in unfair, unconscionable, or deceptive methods, acts, or practices that violated the Michigan CPA. By concealing the known defects in Plaintiffs' Class Vehicles, Ford engaged in deceptive business practices prohibited by the Michigan CPA.

1246. In the course of Ford's business, it willingly failed to disclose and actively concealed that the Bosch CP4 fuel pump in the Class Vehicles is

incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state or affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of face made in a positive manner. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission

of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1247. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1248. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1249. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1250. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding

whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1251. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1252. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1253. Ford knew or should have known that its conduct violated the Michigan CPA.

1254. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

> a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty

claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1255. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiff and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the

value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1256. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1257. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

1258. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and

destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

1259. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

1260. Plaintiffs and the Class seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 per each Plaintiff; and reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911. Plaintiffs also seeks punitive damages against Ford because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others. Ford's conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MICHIGAN LAW)

1261. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1262. Plaintiffs bring this Count on behalf of the Michigan Class Members.

1263. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles

and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1264. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1265. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1266. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1267. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1268. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1269. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1270. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1271. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck

consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1272. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1273. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1274. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1275. Ford falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1276. Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1277. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1278. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford

to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1279. Because of Ford's false representations, concealment, suppression and/or omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1280. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class

Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1281. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1282. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1283. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## UNJUST ENRICHMENT

1284. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1285. Plaintiffs bring this Count on behalf of the Michigan Class Members.

1286. This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

1287. As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than the Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

1288. Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

1289. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

1290. Ford has received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

1291. It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

1292. Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

1293. Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

1294. As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial. Plaintiffs and other Class Members, therefore, seek an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MICH. COMP. LAWS § 440.2314)

1295. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1296. Plaintiffs bring this Count on behalf of the Michigan Class Members.

1297. Ford was a merchant with respect to motor vehicles within the meaning of the Mich. Comp. Laws § 440.2314.

1298. Under Mich. Comp. Law § 440.2314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

1299. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1300. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1301. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use

of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1302. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1303. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1304. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

W.    **Claims Brought on Behalf of the Minnesota Class Members**[96]

## COUNT I

### VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
### (MINN. STAT. § 325F.68 *ET SEQ.*)

1305. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1306. Plaintiffs bring this Count on behalf of the Minnesota Class Members.

1307. The Class Vehicles constitute "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

1308. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69(1). Under the Minnesota Deceptive Trade Practices Act "a person engages in a deceptive trade practice when, in the course of business….. the person (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; … (7)

---

[96] As used herein, the "Minnesota Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Minnesota.

represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Minn. Stat. § 325D.44. Ford participated in misleading, false, or deceptive acts that violated the Minnesota CFA. By concealing the known defects in Plaintiffs' Class Vehicles, Ford engaged in deceptive business practices prohibited by the Minnesota CFA.

1309. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged fraud, misrepresentation, and deceptive practices. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that Plaintiff and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1310. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1311. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1312. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1313. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with

the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1314. Ford's unfair or deceptive acts or practices, fraud, misrepresentations, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1315. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1316. Ford knew or should have known that its conduct violated the Minnesota CFA.

1317. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

> a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1318. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiff and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck

consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1319. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1320. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

1321. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

1322. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by Ford's deceptive practices are in the hundreds of thousands nation-wide; (2) Ford has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiff and individual Class Members; and (3) so long as the Class Vehicles continued to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

1323. Pursuant to Minn. Stat. § 8.31(3a), Plaintiffs and Minnesota Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

1324. Plaintiffs also seeks punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that Ford's acts show deliberate disregard for the rights of others.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MINNESOTA LAW)

1325. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1326. Plaintiffs bring this Count on behalf of the Minnesota Class Members.

1327. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1328. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1329. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1330. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1331. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1332. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1333. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant

defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1334. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1335. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of

the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1336. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1337. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1338. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1339. Ford falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1340. Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1341. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1342. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1343. Because of Ford's false representations, concealment and/or omissions of the material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel

additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1344. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1345. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1346. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1347. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of

punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MINN. STAT. § 336.2-314)

1348. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1349. Plaintiffs bring this Count on behalf of the Minnesota Class Members.

1350. Ford was a merchant with respect to motor vehicles within the meaning of the Minn. Stat. § 336.2-314.

1351. Under Minn. Stat. § 336.2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and Class Members purchased or leased their Class Vehicles from Ford.

1352. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and

inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1353. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1354. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1355. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1356. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the

defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1357. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## X.   Claims Brought on Behalf of the Mississippi Class Members[97]

### COUNT I

### FRAUDULENT CONCEALMENT
### (BASED ON MISSISSIPPI LAW)

1358. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1359. Plaintiffs bring this Count on behalf of the Mississippi Class Members.

1360. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and the Class Members about the true nature of the Class Vehicles, or Ford acted with reckless

---

[97] As used herein, the "Mississippi Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Mississippi.

disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1361. In the course of Ford's business, it willingly failed to disclose and systematically actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1362. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1363. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1364. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1365. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1366. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1367. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1368. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1369. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1370. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1371. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1372. Ford falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1373. Ford's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1374. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1375. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford

to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1376. Because of Ford's false representations, concealment, suppression and/or omissions of the material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1377. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class

Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1378. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1379. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1380. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT II

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (MISS. CODE ANN. § 75-2-314)

1381. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1382. Plaintiffs bring this Count on behalf of the Mississippi Class Members.

1383. Ford was a merchant with respect to motor vehicles within the meaning of the Miss. Code Ann. § 75-2-314.

1384. Under Miss. Code Ann. § 75-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

1385. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and

inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1386. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1387. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1388. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1389. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the

defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1390. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**Y.    Claims Brought on Behalf of the Missouri Class Members[98]**

**COUNT I**

**VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT (MO. REV. STAT. § 407.010 *ET SEQ.*)**

1391. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1392. Plaintiffs bring this Count on behalf of the Missouri Class Members.

1393. Ford, Plaintiffs, and other Class Members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

1394. Ford engaged in "trade" or "commerce" in the State of Missouri within the meaning of the Mo. Rev. Stat. § 407.010(7).

1395. The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false

---

[98] As used herein, the "Missouri Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Missouri.

pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020. Ford used or employed deception, fraud, false pretense, false promise, misrepresentations, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of the Class Vehicles in trade or commerce, in violation of the Missouri MPA.

1396. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1397. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1398. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1399. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1400. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs

and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1401. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1402. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1403. Ford knew or should have known that its conduct violated the Missouri CPA.

1404. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

    a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1405. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck

consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1406. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1407. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

1408. Plaintiffs and the other Class Members purchased Class Vehicles for personal, family, or household use and were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump.

These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

1409. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

1410. Ford is liable to Plaintiffs and other Class Members for damages in amounts to be proven at trial, including actual damages, attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Ford's unfair and deceptive practices, and any other just and proper relief available under Mo. Rev. Stat. § 407.025.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON MISSOURI LAW)

1411. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1412. Plaintiffs bring this Count on behalf of the Missouri Class Members.

1413. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for

the truth and denied Plaintiff and other Class Members information that is highly relevant to their purchasing decision.

1414. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1415. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1416. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1417. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1418. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1419. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1420. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would

purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1421. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates

a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1422. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1423. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1424. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1425. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1426. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1427. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1428. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class

Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1429. Because of Ford's false representations, concealment, and/or omissions of the material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1430. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of

repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1431. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1432. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1433. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## UNJUST ENRICHMENT

1434. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1435. Plaintiffs bring this Count on behalf of the Missouri Class Members.

1436. This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

1437. As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than the Class Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

1438. Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

1439. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

1440. Ford has received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

1441. It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

1442. Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

1443. Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

1444. As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial. Plaintiffs and other Class Members, therefore, seek an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (MO. REV. STAT. § 400.2-314)

1445. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1446. Plaintiffs bring this Count on behalf of the Missouri Class Members.

1447. Ford was a merchant with respect to motor vehicles within the meaning of the Mo. Rev. Stat. § 400.2-314.

1448. Under Mo. Rev. Stat. § 400.2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transaction when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

1449. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1450. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1451. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1452. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1453. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1454. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**Z.     Claims Brought on Behalf of the Montana Class Members[99]**

## COUNT I

**VIOLATOIN OF MONTANA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION ACT OF 1973
(MONT. CODE ANN. § 30-14-101 *ET SEQ.*)**

1455. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1456. Plaintiffs bring this Count on behalf of the Montana Class Members.

1457. Ford, Plaintiffs, and other Class Members are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

1458. Plaintiffs and other Class Members are "consumer[s]" under Mont. Code Ann. § 30-14-102(1).

1459. The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-14-103. Ford participated in false, misleading, or deceptive acts or practices that violated the Montana CPA. By concealing known defects in the Class Vehicles, Ford's conduct and action offends established public policy and is

---

[99] As used herein, the "Montana Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Montana.

immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

1460. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive acts or practices which offend public policy and immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

1461. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1462. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1463. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1464. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1465. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1466. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1467. Ford knew or should have known that its conduct violated the Montana CPA.

1468. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

> a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;
>
> b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or
>
> c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel,

- 479 -

while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1469. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiff and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles

creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1470. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1471. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

1472. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations, fraud, deceptive practices, and omissions.

1473. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest and offends established public policy,

and is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Specifically: (1) the number of consumers affected by Ford's deceptive practices are in the hundreds of thousands nation-wide; (2) Ford has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiff and individual Class Members; and (3) so long as the Class Vehicles continued to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant. Accordingly, Ford is liable to Plaintiffs and the other Class Members for damages in an amount to be proven at trial.

1474. Because Ford's unlawful methods, acts, and practices have caused Plaintiffs and other Class Members to suffer an ascertainable loss of money and property, Plaintiffs and the Class seek from Ford actual damages, discretionary treble damages, reasonable attorneys' fees, and any other relief the Court considers necessary or proper, under Mont. Code Ann. § 30-14-133.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON MONTANA LAW)

1475. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1476. Plaintiffs bring this Count on behalf of the Montana Class Members.

- 482 -

1477. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1478. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful, unfair, deceptive practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission of any material fact with intent that others rely upon such

concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1479. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1480. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1481. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1482. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1483. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising

and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1484. The foregoing omitted facts and representations were material because they directly impacted the value, quality, and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1485. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to

their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1486. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1487. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1488. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1489. Ford falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1490. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1491. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1492. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1493. Because of Ford's false representations, concealment, suppression and/or omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have

purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1494. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1495. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1496. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1497. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (MONT. CODE § 30-2-314)

1498. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1499. Plaintiffs bring this Count on behalf of the Montana Class Members.

1500. Ford was a merchant with respect to motor vehicles within the meaning of the Mont. Code § 30-2-314.

1501. Under Mont. Code § 30-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

1502. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used

by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1503. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1504. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1505. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1506. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to

Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1507. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**AA.   Claims Brought on Behalf of the Nebraska Class Members[100]**

**COUNT I**

**VIOLATIONS OF THE NEBRASKA CONSUMER PROTECTION ACT**
**(NEB. REV. STAT. § 59-1601 *ET SEQ.*)**

1508. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1509. Plaintiffs bring this count on behalf of the Nebraska Class Members.

---

[100] As used herein, the "Nebraska Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Nebraska.

1510. Ford, Plaintiffs and other Class Members are "person[s]" under the Nebraska Consumer Protection Act ("Nebraska CPA"), Neb. Rev. Stat. § 59-1601(1).

1511. The Nebraska CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. § 59-1602. Ford's conduct as set forth herein constitutes unfair or deceptive acts or practices prohibited by the Nebraska CPA.

1512. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful and unfair methods of competition and unfair or deceptive acts or practices. Ford's acts had the capacity, tendency, or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or knowing concealment, suppression, or omission of any

material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1513. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1514. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1515. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1516. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1517. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1518. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1519. Ford knew or should have known that its conduct violated the Nebraska CPA.

1520. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

> a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel

injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1521. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to

Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1522. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1523. Ford's conduct proximately caused injuries to Plaintiff and the other Class Members.

1524. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of

Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations, fraud, deceptive practices and omissions.

1525. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by Ford's deceptive practices are in the hundreds of thousands nation-wide; (2) Ford has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiff and individual Class Members; and (3) so long as the Class Vehicles continued to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant. Accordingly, Ford is liable to Plaintiffs and the other Class Members for damages in an amount to be proven at trial.

1526. Because Ford's conduct caused injury to Nebraska Class Members' through violations of the Nebraska CPA, Plaintiffs and the other Class Members seek recovery of actual damages, as well as enhanced damages up to $1,000, an order enjoining Ford's unfair and deceptive acts and practices, court costs, reasonable

attorneys' fees, and any other just and proper relief available under the Neb. Rev. Stat. § 59-1609.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NEBRASKA LAW)

1527. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1528. Plaintiffs bring this Count on behalf of the Nebraska Class Members.

1529. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1530. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the

vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1531. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1532. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1533. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1534. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4

fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1535. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1536. The foregoing omitted facts and representations were material because they directly impacted the value, quality, and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1537. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material misrepresentations, Ford had a duty to disclose to Plaintiffs and Class Members that

their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1538. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles

were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1539. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1540. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1541. Ford falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1542. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous

model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1543. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1544. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1545. Because of Ford's false representations, concealment, and/or omissions of material facts, Plaintiffs and other Class Members have sustained damages

because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1546. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1547. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding

the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1548. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1549. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (NEB. REV. STAT. § 30-2-314)

1550. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1551. Plaintiffs bring this Count on behalf of the Nebraska Class Members.

1552. Ford was a merchant with respect to motor vehicles within the meaning of the Neb. Rev. Stat. § 30-2-1314.

1553. Under Neb. Rev. Stat. § 30-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when

Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

1554. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1555. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1556. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1557. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1558. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1559. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

BB.    **Claims Brought on Behalf of the Nevada Class Members**[101]

## COUNT I

## VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT (NEV. REV. STAT. § 598.0903 *ET SEQ.*)

1560. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1561. Plaintiffs bring this Count on behalf of the Nevada Class Members.

1562. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903 *et seq.,* prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;" "7. Represents that goods or services for sale or lease are of a particular standard, quality, or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model;" "9. Advertises goods or services with intent not to sell or lease them as

---

[101] As used herein, the "Nevada Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Nevada.

advertised;" or "15. Knowingly makes any other false representation in a transaction." "A person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly… 2. Fails to disclose a material fact in connection with the sale or lease of goods or services." Nev. Rev. Stat. Ann. § 598,0923.

1563. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that the person reasonably believes the represented and suggested

state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that Plaintiffs or the Class Members rely on the same, in connection with the sale of Class Vehicles.

1564. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1565. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiff and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class

Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1566. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1567. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1568. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1569. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1570. Ford knew or should have known that its conduct violated the Nevada DTPA.

1571. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1572. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiff and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps

will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1573. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1574. Ford's conduct proximately caused injuries to Plaintiff and the other Class Members.

1575. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations, fraud, deceptive practices, and omissions.

1576. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

1577. Accordingly, Plaintiffs and other Class Members seek their actual damages, punitive damages, court costs, attorneys' fees, and any other just and proper or equitable relief available under the Nevada DTPA, Nev. Rev. Stat. § 41.600.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NEVADA LAW)

1578. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1579. Plaintiffs bring this Count on behalf of the Nevada Class Members.

1580. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1581. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1582. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1583. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1584. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1585. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1586. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant

defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1587. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1588. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth.

These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1589. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1590. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1591. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1592. Ford falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1593. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1594. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1595. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1596. Because of Ford's false representations, concealment, and/or omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel

additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1597. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1598. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1599. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1600. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them

were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (NEV. REV. STAT. § 104.2314)

1601. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1602. Plaintiffs bring this Count on behalf of the Nevada Class Members.

1603. Ford was at all times a "merchant" with respect to motor vehicles within the meaning of Nev. Rev. Stat. § 104.2314.

1604. Under Nev. Rev. Stat. § 104.2314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

1605. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only

fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1606. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1607. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1608. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1609. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing,

complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1610. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## CC.   Claims Brought on Behalf of the New Hampshire Class Members[102]

### COUNT I

### VIOLATION OF N.H. CONSUMER PROTECTION ACT
### (N.H. REV. STAT. § 358-A:1 *ET SEQ.*)

1611. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1612. Plaintiffs bring this Count on behalf of the New Hampshire Class Members.

---

[102] As used herein, the "New Hampshire Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of New Hampshire.

1613. Plaintiffs, other Class Members, and Ford are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. § 358-A:1.

1614. Ford's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

1615. The New Hampshire CPA prohibits a person in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to the following … (V) Representing that goods or services have … characteristics, ... uses, benefits, or quantities that they do not have," "(VII) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another," (IX) Advertising goods or services with intent not to sell them as advertised; and (XI) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." N.H. Rev. Stat. § 358-A:2. Ford participated in unfair method of competition or unfair or deceptive acts or practices that violated the New Hampshire CPA. By concealing the known defects of the Class Vehicles, Ford engaged in deceptive business practices prohibited by the New Hampshire CPA.

1616. In the course of Ford's business, it willingly and knowingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles

causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford willfully and knowingly engaged in unfair and deceptive trade practices, in unfair methods of competition, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transactions in light of the representations of fact made in a positive manner. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or knowingly concealment, suppression, or omission of any material fact with intent

that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1617. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1618. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1619. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1620. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1621. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1622. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1623. Ford knew or should have known that its conduct violated the New Hampshire CPA.

1624. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

    a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel

injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1625. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiff and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class

Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1626. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1627. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

1628. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their

Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations, fraud, deceptive practices, and omissions.

1629. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest. Ford's practices are immoral, unethical, oppressive, or unscrupulous.

1630. Pursuant to N.H. Rev. Stat. § 358-A:10 Plaintiffs and other Class Members also seek recovery of actual damages or $1,000, whichever is greater, treble damages, costs and reasonable attorneys' fees, an order enjoining Ford's unfair and/or deceptive  acts or practices, and any other just and proper relief available under N.H. Rev. Stat. § 358-A:10.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NEW HAMPSHIRE LAW)

1631. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1632. Plaintiffs bring this Count on behalf of the New Hampshire Class Members.

1633. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and the other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1634. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1635. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1636. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1637. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1638. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1639. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant

defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1640. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1641. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth.

These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1642. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1643. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

Case 5:19-cv-12365-JEL-APP   ECF No. 23   filed 12/19/19   PageID.11001   Page 555 of 902


1644. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1645. Ford falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1646. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1647. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1648. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1649. Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1650. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1651. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1652. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1653. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of

punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

### UNJUST ENRICHMENT

1654. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1655. Plaintiffs bring this Count on behalf of the New Hampshire Class Members.

1656. This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

1657. As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than the Class Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

1658. Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

1659. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

1660. Ford has received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

1661. It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

1662. Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

1663. Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

1664. As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial. Plaintiffs and other Class Members, therefore, seek an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.H. REV. STAT. ANN § 382-A:2-314)

1665. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1666. Plaintiffs bring this Count on behalf of the New Hampshire Class Members.

1667. Ford was at all times a merchant with respect to motor vehicles within the meaning of N.H. Rev. Stat. Ann. § 382-A:2-314.

1668. Under N.H. Rev. Stat. Ann. § 382-A:2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and other Class Members and the Class purchased or leased their Class Vehicles from Ford.

1669. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and

inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1670. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1671. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1672. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1673. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the

defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1674. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**DD.   Claims Brought on Behalf of the New Jersey Class Members[103]**

**COUNT I**

**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
(N.J. STAT. ANN. § 56:8-1 *ET SEQ.*)**

1675. Plaintiffs incorporate by reference al paragraphs as though fully set forth herein.

1676. Plaintiffs bring this Count on behalf of the New Jersey Class Members.

1677. Ford and Plaintiffs are "persons" within the meaning N.J. Stat. Ann. § 56:8-1(d).

1678. Ford engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1 (c), (d).

1679. The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* ("N.J. CFA") makes unlawful "[t]he act, use or employment by any person of any

---

[103] As used herein, the "New Jersey Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of New Jersey.

unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentations, or the knowing concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby …" N.J. Stat. Ann. § 56:8-2. Ford engaged in unconscionable commercial practice or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Plaintiffs rely upon their acts concealment, suppression or omission.

1680. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; knowingly failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense,

false promise, misrepresentations, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1681. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1682. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1683. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1684. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1685. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1686. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1687. Ford knew or should have known that its conduct violated the New Jersey CFA.

1688. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1689. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, Ford had a duty to disclose to Plaintiff and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage

to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1690. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1691. Ford's conduct proximately caused injuries to Plaintiff and the other Class Members.

1692. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of

Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations, fraud, deceptive practices, and omissions.

1693. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

1694. Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiffs and other Class Members seek an order enjoining Ford's unlawful conduct, actual damages, treble damages, attorneys' fees, costs, and any other just and proper relief available under the New Jersey CPA.

<div align="center">

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON NEW JERSEY LAW)**

</div>

1695. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1696. Plaintiffs bring this Count on behalf of the New Jersey Class Members.

1697. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles

and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1698. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair and deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1699. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1700. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1701. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1702. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1703. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant

defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1704. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1705. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth.

These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1706. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1707. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1708. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1709. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1710. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1711. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1712. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1713. Because of Ford's false representations, concealment and/or omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel

additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1714. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1715. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1716. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1717. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them

were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (N.J. STAT. ANN. § 12A:2-314)

1718. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1719. Plaintiffs bring this Count on behalf of the New Jersey Class Members.

1720. Ford was at all times a "merchant" with respect to motor vehicles under N.J. Stat. Ann. § 12A:2-314.

1721. Under N.J. Stat. Ann. § 12A:2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

1722. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown

of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1723. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1724. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1725. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1726. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally

or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1727. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## EE.   Claims Brought on Behalf of the New Mexico Class Members[104]

### COUNT I

### VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT (N.M. STAT. ANN. § 57-12-1 *ET SEQ.*)

1728. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1729. Plaintiffs bring this Count on behalf of the New Mexico Class Members.

1730. Ford, Plaintiff, and New Mexico Class Members are or were "person[s]" under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. Stat. Ann. § 57-12-2.

---

[104] As used herein, the "New Mexico Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of New Mexico.

1731. Ford's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. Stat. Ann. § 57-12-2.

1732. The New Mexico UTPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12-2(D). Ford's acts and omissions described herein constitute unfair or deceptive acts or practices under N.M. Stat. Ann. § 57-12-2(D). In addition, Ford's actions constitute unconscionable actions under N.M. Stat. Ann. § 57-12-2(E), since they took advantage of the lack of knowledge, ability, experience, and capacity of the Plaintiffs and other Class Members to a grossly unfair degree.

1733. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would

expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices. Ford's false representations and acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, misrepresentations, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1734. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1735. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiff and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-

pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1736. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1737. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1738. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1739. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1740. Ford knew or should have known that its conduct violated the New Mexico UTPA.

1741. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

     a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

     b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

     c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1742. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations,

Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1743. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1744. Ford's conduct proximately caused injuries to Plaintiff and the other Class Members.

1745. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

1746. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

1747. Plaintiffs and the Class seek punitive damages against Ford. Ford's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith. Because Ford's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith, it warrants punitive damages.

1748. Because Ford's unconscionable willful conduct caused actual harm to Plaintiff and other Class Members, Plaintiffs and other Class Members seek recovery

of actual damages or $100, whichever is greater, discretionary treble damages, and reasonable attorneys' fees and costs, as well as any other just and proper relief available under N.M. Stat. Ann. § 57-12-10.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON NEW MEXICO LAW)

1749. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1750. Plaintiffs bring this Count on behalf of the New Mexico Class Members.

1751. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and New Mexico Class about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1752. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's

fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1753. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1754. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1755. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system

components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1756. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1757. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1758. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1759. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1760. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1761. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1762. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1763. Ford falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1764. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1765. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1766. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump

failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1767. Because of Ford's false representations, concealment and/or omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1768. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class

Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1769. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1770. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1771. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.M. STAT. ANN. § 55-2-314)

1772. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1773. Plaintiffs bring this Count on behalf of the New Mexico Class Members.

1774. Ford was at all times a "merchant" with respect to motor vehicles within the meaning of N.M. Stat. Ann. § 55-2-314.

1775. Under N.M. Stat. Ann. § 55-2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the Class Vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

1776. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1777. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1778. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use

of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1779. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1780. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1781. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**FF.    Claims Brought on Behalf of the New York Class Members[105]**

## COUNT I

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (N.Y. GEN. BUS. LAW § 349)

1782. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1783. Plaintiffs bring this Count on behalf of the New York Class Members.

1784. Plaintiffs and other Class Members are "persons" within the meaning of New York General Business Law ("New York GBL"). N.Y. Gen. Bus. Law § 349(h).

1785. Ford is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

1786. New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.  Ford's conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of New York GBL. All of Ford's deceptive acts or practices, which were intended to mislead consumers in a material way in the process of purchasing or leasing Class Vehicles, was conduct directed at consumers

---

[105] As used herein, the "New York Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of New York.

and "consumer-oriented." Further, Plaintiffs and other Class Members suffered injury as a result of the deceptive act or practice.

1787. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged deceptive acts or practices directed at the consumers. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Ford engaged in deceptive acts and practices in violation of New York GBL.

1788. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of

the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1789. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1790. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1791. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said

incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1792. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1793. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1794. Ford knew or should have known that its conduct violated the New York GBL.

1795. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump  in the Class Vehicles with U.S. diesel fuel because Ford:

> a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;
>
> b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1796. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were

purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1797. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1798. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

1799. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations, fraud, deceptive practices, and omissions.

1800. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by Ford's deceptive practices are in the hundreds of thousands nation-wide; (2) Ford has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class Members; and (3) so long as the Class Vehicles continued to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

1801. Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiffs and the Class seek actual damages or $50, whichever is greater, in addition to discretionary three times actual damages up to $1,000 for Ford's willful and knowing violation of N.Y. Gen. Bus. Law § 349. Plaintiffs and New York Class Members also seek attorneys' fees, an order enjoining Ford's deceptive conduct, and any other just and proper relief available under the New York GBL.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (N.Y. GEN. BUS. LAW § 350)

25. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1802. Plaintiffs bring this Count on behalf of the New York Class Members.

1803. Ford was engaged in the "conduct of business, trade or commerce" within the meaning of the New York's General Business Law § 350.

1804. New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity … if such advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity." N.Y. Gen. Bus. Law § 350-a.

1805. Ford caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Ford, to be untrue and misleading to consumers, including Plaintiffs and other Class Members.

1806. Ford has violated N.Y. Gen. Bus. Law § 350 because of the misrepresentations and omissions alleged herein, including, but not limited to, Ford's failure to disclose the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with US. Diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the Class Vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1807. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1808. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1809. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1810. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs

and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1811. Ford's unfair or deceptive acts or practices, fraud, misrepresentations, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1812. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1813. Ford knew or should have known that its conduct violated the New York GBL § 350.

1814. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of

the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff sand Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1815. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1816. Ford's conduct proximately caused injuries to Plaintiff and the other Class Members.

1817. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations, fraud, deceptive practices, and omissions.

1818. Plaintiffs and the Class are entitled to recover their actual damages or $500, whichever is greater. Because Ford acted willfully or knowingly, Plaintiffs and other Class Members are entitled to recover three times actual damages, up to $10,000.

## COUNT III

### FRAUDULENT CONCEALMENT
### (BASED ON NEW YORK LAW)

1819. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1820. Plaintiffs bring this Count on behalf of the New York Class Members.

1821. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class

Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1822. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1823. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1824. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1825. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1826. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1827. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1828. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1829. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, and Plaintiff's and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1830. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1831. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1832. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1833. Ford falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1834. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1835. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1836. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford

to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1837. Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1838. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs

and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1839. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1840. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1841. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT IV

## UNJUST ENRICHMENT

1842. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1843. Plaintiffs bring this Count on behalf of the New York Class Members.

1844. This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

1845. As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than the Class Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

1846. Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

1847. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

1848. Ford has received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

1849. It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

1850. Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

1851. Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

1852. As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial. Plaintiffs and other Class Members, therefore, seek an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT V

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.Y. U.C.C. § 2-314)

1853. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1854. Plaintiffs bring this Count on behalf of the New York Class Members.

1855. Ford was at all times a "merchant" with respect to motor vehicles within the meaning under N.Y. U.C.C. § 2-314.

1856. Under N.Y. U.C.C. § 2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and other Class Members purchased or leased their Class Vehicles from Ford.

1857. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1858. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1859. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use

of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1860. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1861. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1862. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**GG.   Claims Brought on Behalf of the North Carolina Class Members**[106]

## COUNT I

### VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT (N.C. GEN. STAT. § 75-1.1 *ET SEQ.*)

1863. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1864. Plaintiffs bring this Count on behalf of the North Carolina Class Members.

1865. Ford engaged in "commerce" within the meaning of the N.C. Gen. Stat. § 75-1.1(b).

1866. The North Carolina UDTPA broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). Ford willfully committed unfair or deceptive acts or practices in violation of North Carolina UDTPA.

1867. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system,

---

[106] As used herein, the "North Carolina Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of North Carolina.

leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1868. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1869. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiff and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-

pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1870. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1871. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1872. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1873. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1874. Ford knew or should have known that its conduct violated the North Carolina UDTPA.

1875. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump  in the Class Vehicles with U.S. diesel fuel because Ford:

  a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

  b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

  c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1876. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford

had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1877. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1878. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

1879. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations, fraud, deceptive practices, and omissions.

1880. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

1881. Because Ford's actions and conduct was willful, Plaintiffs and the Class seek and order for treble their actual damages, an order enjoining Ford's unlawful acts, court costs, attorneys' fees, and any other just and proper relief available under N.C. Gen. Stat. § 75-16.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NORTH CAROLINA LAW)

1882. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1883. Plaintiffs bring this Count on behalf of the North Carolina Class Members.

1884. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1885. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would

expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices , unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1886. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1887. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1888. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1889. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4

fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1890. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1891. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1892. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were

incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1893. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class

Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1894. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1895. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1896. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1897. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over

integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1898. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1899. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1900. Because of Ford's false representations, concealment and/or omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's

concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1901. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1902. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1903. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1904. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (N.C. GEN. STAT. § 25-2-314)

1905. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1906. Plaintiffs bring this Count on behalf of the North Carolina Class Members.

1907. Ford was at all times a merchant with respect to motor vehicles within the meaning of N.C. Gen. Stat. § 25-2-314.

1908. Under N.C. Gen. Stat. § 25-2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

1909. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1910. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1911. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1912. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1913. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1914. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## HH.   Claims Brought on Behalf of the North Dakota Class Members[107]

### COUNT I

### VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT
### (N.D. CENT. CODE § 51-15-01 *ET SEQ.*)

1915. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1916. Plaintiffs bring this Count on behalf of the North Dakota Class Members.

1917. Plaintiffs, Class Members, and Ford are "persons" within the meaning of N.D. Cent. Code § 51-15-02(4).

1918. Ford engaged in the "sale" of "merchandise" within the meaning of N.D. Cent. Code § 51-05-02(3), (5).

1919. The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others relay thereon in connection with the sale or advertisement of any merchandise . . . . The act, use, or employment by any person of any act or practice, in connection with the sale or advertisement of any merchandise, which is

---

[107] As used herein, the "North Dakota Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of North Dakota.

unconscionable or which causes or is likely to cause substantial injury to a person which is not reasonably avoidable by the injured person and not outweighed by countervailing benefits to consumers or to competition" N.D. Cent. Code § 51-15-02. As set forth above and below, Ford committed deceptive acts or practices, with the intent that Plaintiffs and other Class Members rely thereon in connection with their purchase or lease of the Class Vehicles.

1920. In the course of Ford's business, it willfully and knowingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful, unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not

reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1921. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1922. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in

extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1923. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1924. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1925. Ford's unfair or deceptive acts or practices, fraud, misrepresentations, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1926. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1927. Ford knew or should have known that its conduct violated the North Dakota CFA.

1928. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

      a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

      b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

      c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1929. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false

representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1930. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the

incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1931. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

1932. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

1933. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

1934. Further, Ford knowingly committed the conduct described above, and thus, under N.D. Cent. Code § 51-15-09, Ford is liable to Plaintiffs and the Class for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements. Plaintiff further seeks an order enjoining Ford's unfair and/or

deceptive acts or practices, and any other just and proper relief available under the North Dakota CFA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NORTH DAKOTA LAW)

1935. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1936. Plaintiffs bring this Count on behalf of the North Dakota Class Members.

1937. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1938. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion,

causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1939. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1940. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1941. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1942. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1943. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1944. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

1945. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class vehicles, and

Plaintiff's and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1946. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's

representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1947. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

1948. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

1949. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

1950. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles,

then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1951. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

1952. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1953. Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

1954. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1955. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding

the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

1956. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

1957. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (N.D. CENT. CODE § 41-02-31)

1958. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1959. Plaintiffs bring this Count on behalf of the North Dakota Class Members.

1960. Ford was at all times a merchant with respect to motor vehicles within the meaning of the N.D. Cent. Code § 41-02-31.

1961. Under N.D. Cent. Code § 41-02-31, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the

vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

1962. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

1963. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

1964. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

1965. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

1966. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1967. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## II.    Claims Brought on Behalf of the Ohio Class Members[108]

### COUNT I

### VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICE ACT
### (OHIO REV. CODE § 1345.01 *ET SEQ.*)

1968. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1969. Plaintiffs bring this Count on behalf of the Ohio Class Members.

1970. Plaintiffs and the other Class Members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("Ohio CSPA").

1971. Ford is a "supplier" as defined by the Ohio CSPA.

1972. Plaintiffs' and other Class Members' purchases or leases of the Class Vehicles were "consumer transactions" as defined by the Ohio CSPA.

1973. The Ohio CSPA, Ohio Rev. Code § 1345.02, broadly prohibits "an unconscionable act or practice in connection with a consumer transaction." Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing "(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; (2) That the subject of a consumer transaction is of a particular

---

[108] As used herein, the "Ohio Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Ohio.

standard, quality, grade, style, prescription, or model, if it is not." Ohio Rev. Code § 1345.02. Ford's conduct as alleged above and below constitutes unfair and unconscionable acts or practices in consumer sales transactions in violation of Ohio Rev. Code § 1345.03. By concealing the known defects in the Class Vehicles, Ford participated in unconscionable acts or practices that violated the Ohio CSPA.

1974. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the

transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to a transaction in light of the representations of fact made in a positive manner. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1975. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1976. Ford knew at the time of the consumer transaction that the Plaintiffs and other Class Members that as the consumer they would not receive a substantial benefit from the purchase of the Class Vehicle.

1977. Ford knowingly made misleading statements on which Plaintiff and other Class Members were likely to rely to their detriment. Plaintiffs and other Class

Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1978. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1979. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1980. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1981. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1982. Ford knew or should have known that its conduct violated the Ohio CSPA.

1983. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

> a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;
>
> b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or
>
> c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel,

while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1984. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates

a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1985. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

1986. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

1987. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

1988. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

1989. Because Ford knowingly violated the Ohio CSPA, Plaintiffs and other Class Members seek actual damages, plus an amount not exceeding $5,000 in noneconomic damages, an order enjoining Ford's deceptive and unfair conduct, court costs and attorneys' fees, and any other just and proper relief available under Ohio Rev. Code § 1345.09.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON OHIO LAW)

1990. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1991. Plaintiffs bring this Count on behalf of the Ohio Class Members.

1992. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

1993. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards

to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1994. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1995. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

1996. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system

components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

1997. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1998. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

1999. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2000. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class vehicles, and Plaintiff's and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2001. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2002. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2003. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2004. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2005. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2006. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2007. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump

failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2008. Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2009. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2010. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2011. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2012. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY IN TORT

2013. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2014. Plaintiffs bring this Count on behalf of the Ohio Class Members.

2015. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

2016. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death. This defect directly impacts the operability of the Class Vehicles and renders them unfit for their ordinary purposes. Ford thus failed to meet the expectations of a reasonable consumer, as the Class Vehicles fail in their ordinary, intended use because they do not function as a reasonable consumer would expect.

2017. Ford was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class Members.

2018. As a direct and proximate result of Ford's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

JJ.    **Claims Brought on Behalf of the Oklahoma Class Members**[109]

## COUNT I

## VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT (OKLA. STAT. TIT. 15 § 752 *ET SEQ.*)

2019. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2020. Plaintiffs bring this Count on behalf of the Oklahoma Class Members.

2021. Plaintiffs and other Class Members are "persons" under the Oklahoma Consumer Protection Act ("Oklahoma CPA"), Okla. Stat. tit. 15 § 752.

2022. Ford is a "person," "corporation," or "association" within the meaning of Okla. Stat. tit. 15 § 15-751(1).

2023. The sale or lease of the Class Vehicles to the Plaintiffs and Class Members was a "consumer transaction" within the meaning of Okla. Stat. tit. 15 § 752, and Ford's actions as set forth herein occurred in the conduct of trade or commerce.

2024. The Oklahoma CPA declares unlawful, *inter alia,* the following acts or practices when committed in the course of business: "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics, … uses,

---

[109] As used herein, the "Oklahoma Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Oklahoma.

[or] benefits, of the subject of a consumer transaction," or making a false representation, "knowing or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice." *See* Okla. Stat. tit. 15, § 753. It is unlawful to engage in a "deceptive trade practice" defined as "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person" and an "unfair trade practice" defined as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Ford participated in misleading, false, or deceptive acts that violated the Oklahoma CPA.

2025. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would

expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes that represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Ford engaged in unfair and deceptive business practices in violation of the Oklahoma CPA.

2026. As set forth above, Plaintiffs and other Class Members have suffered from a defect that existed in the Class Vehicles which began damaging the Class

Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class Members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

2027. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

2028. Plaintiff and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiff and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2029. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2030. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

2031. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2032. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2033. Ford knew or should have known that its conduct violated the Oklahoma CPA.

2034. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

        a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel

injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2035. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford

had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2036. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

2037. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

2038. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their

Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

2039. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

2040. Ford's conduct as alleged herein was unconscionable because (1) Ford, knowingly or with reason to know, took advantage of consumers reasonably unable to protect their interests because of their age, physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; (2) at the time the consumer transaction was entered into, Ford knew or had reason to know that price grossly exceeded the price at which similar vehicles were readily obtainable in similar transactions by like consumers; and (3) Ford knew or had reason to know that the transaction Ford induced the consumer to enter into was excessively one-sided in favor of Ford.

2041. Because Ford's unconscionably conduct caused injury to Plaintiffs and other Class Members, Plaintiffs and other Class Members seek recovery of actual damages, discretional penalties up to $2,000 per violation, punitive damages and reasonably attorneys' fees, under Okla. Stat. tit. 15 § 761.1. Plaintiffs and other Class

Members further seek an order enjoining Ford's unfair and/or deceptive acts or practices and any other just and proper relief available under the Oklahoma CPA.

## COUNT II

## FRAUDULENT CONCEALMENT
### (BASED ON OKLAHOMA LAW)

2042. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2043. Plaintiffs bring this Count on behalf of the Oklahoma Class Members.

2044. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

2045. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly

in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2046. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2047. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2048. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2049. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2050. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2051. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2052. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and

Plaintiff's and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2053. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's

representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2054. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2055. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2056. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2057. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles,

then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2058. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2059. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2060. Because of Ford's false representations, concealments and/or omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2061. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2062. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2063. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2064. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (OKLA. STAT. ANN. § 12A-2-314)

2065. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2066. Plaintiffs bring this Count on behalf of the Oklahoma Class Members.

2067. Ford was at all times a merchant with respect to motor vehicles within the meaning of the Okla. Stat. Ann. § 12A-2-314.

2068. Under Okla. Stat. Ann. § 12A-2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

2069. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

2070. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

2071. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure

(oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

2072. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

2073. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2074. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## KK.   Claims Brought on Behalf of the Oregon Class Members[110]

### COUNT I

### VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT (OR. REV. STAT. § 646.605, *ET SEQ.*)

2075. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2076. Plaintiffs bring this Count on behalf of the Oregon Class Members.

2077. Ford is a "person" within the meaning of Or. Rev. Stat. § 646.650(4).

2078. The Class Vehicles at issue are "goods" obtained primarily for personal, family or household purposes within the meaning of Or. Rev. Stat. § 646.605(6).

2079. Pursuant to The Oregon Unfair Trade Practices Act ("Oregon UTPA") a person engages in an unlawful trade practice if in the course of the person's business the person "(1) employs any unconscionable tactic in connection with selling, renting or disposing of … goods or services."   Or. Rev. Stat. Ann. § 646.607(1). The Oregon UTPA prohibits a person from, in the course of the person's business, doing any of the following: "(e) representing that …. goods… have…characteristics… uses, benefits … or qualities that they do not have: (g) representing that … goods are of a particular standard [or] quality … if they are of

---

[110] As used herein, the "Oregon Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Oregon.

another; (i) advertising … goods or services with intent not to provide them as advertised;" and "(u) engaging in any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(1). Ford participated in misleading, false, or deceptive acts that violated the Oregon UTPA. By concealing the known defects in Plaintiffs' Class Vehicles Ford engaged in deceptive business practices prohibited by the Oregon UTPA.

2080. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the

consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or knowing concealment, suppression, or omission of any material fact with the intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Ford engaged in unfair and deceptive business practices in violation of the Oregon UTPA.

2081. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

2082. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in

extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2083. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2084. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

2085. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2086. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2087. Ford knew or should have known that its conduct violated the Oregon UTPA.

2088. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

  a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

  b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

  c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2089. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false

representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2090. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the

incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

2091. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

2092. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

2093. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

2094. Plaintiffs and the Class are entitled to recover the greater of actual damages or $200 pursuant to Or. Rev. Stat. § 646.638(1). Plaintiffs and other Class Members also seek to recover attorneys' fees, and any other just and proper relief available under the Oregon UTPA. Due to the significant level of reprehensibility,

malice, reckless and outrageous indifference of Ford's conduct, Plaintiffs and the Class seek punitive damages.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON OREGON LAW)

2095. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2096. Plaintiffs bring this Count on behalf of the Oregon Class Members.

2097. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information that is highly relevant to their purchasing decision.

2098. In the course of Ford's business, it willingly failed to disclose and systematically and  actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the

vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2099. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2100. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2101. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2102. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2103. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2104. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2105. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and its false representations regarding the increased durability of the Class Vehicles, and

Plaintiff's and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2106. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's

representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2107. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2108. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2109. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2110. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles,

then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2111. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2112. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2113. Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2114. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2115. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding

the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2116. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2117. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (OR. REV. STAT. § 72-3140)

2118. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2119. Plaintiffs bring this Count on behalf of the Oregon Class Members.

2120. Ford was at all times a merchant with respect to motor vehicles under Or. Rev. Stat. § 72-3140.

2121. Under Or. Rev. Stat. § 72-3140, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are

used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

2122.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

2123.  It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

2124. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

2125. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

2126. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2127. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and other Class Members have been damaged in an amount to be proven at trial.

**LL.   Claims Brought on Behalf of the Pennsylvania Class Members[111]**

### COUNT I

### VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (73 P.S. § 201-1 *ET SEQ.*)

2128. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2129. Plaintiffs bring this Count on behalf of the Pennsylvania Class Members.

2130. Plaintiffs and other Class Members purchased the Class Vehicle primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

2131. All of the acts complained of herein were perpetrated by Ford in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

2132. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods and services have … characteristics, … [b]enefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" (iii) "Advertising

---

[111] As used herein, the "Pennsylvania Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Pennsylvania.

goods or services with intent not to see them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4). Ford engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated Pennsylvania CPL.

2133. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state

of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. Ford's acts had the capacity, tendency, or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Ford engaged in unfair and deceptive business practices in violation of the Pennsylvania CPL.

2134. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

2135. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiff and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-

pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2136. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2137. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

2138. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2139. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2140. Ford knew or should have known that its conduct violated the Pennsylvania CPL.

2141. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

> a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;
>
> b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or
>
> c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2142. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford

had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2143. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

2144. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

2145. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

2146. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

2147. Ford is liable to Plaintiffs and other Class Members for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a). Plaintiffs and other Class Members are also entitled to an award of punitive damages given that Ford's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others. Plaintiffs and

other Class Members also seek any other just and proper relief available under the Pennsylvania CPL.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON PENNSYLVANIA LAW)

2148. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2149. Plaintiffs bring this Count on behalf of the Pennsylvania Class Members.

2150. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

2151. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the

vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2152. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2153. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2154. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2155. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2156. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2157. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2158. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and its false representations regarding the increased durability of the Class Vehicles, and

Plaintiff's and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2159. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's

representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2160. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2161. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2162. Ford falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2163. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles,

then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2164. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2165. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2166. Because of Ford's false representations, concealment, and/or omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2167. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2168. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2169. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2170. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## UNJUST ENRICHMENT

2171. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2172. Plaintiffs bring this Count on behalf of the Pennsylvania Class Members.

2173. This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

2174. As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than the Class Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

2175. Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

2176. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

2177. Ford has received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

2178. It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

2179. Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

2180. Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

2181. As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial. Plaintiffs and other Class Members, therefore, seek an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (13 PA. CONS. STAT. ANN. § 2314)

2182. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2183. Plaintiffs bring this Count on behalf of the Pennsylvania Class Members.

2184. Ford was at all times a merchant with respect to motor vehicles under 13 Pa. Cons. Stat. Ann. § 2314.

2185. Under 13 Pa. Cons. Stat. Ann. § 2314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

2186.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

2187.  It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

2188.  The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

2189. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

2190. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2191. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## MM.  Claims Brought on Behalf of the Rhode Island Class Members[112]

### COUNT I

### VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### (R.I. GEN. LAWS § 6-13.1 *ET SEQ.*)

2192.  Plaintiffs incorporate by reference all paragraphs as though full set forth herein.

2193.  Plaintiffs bring this Count on behalf of the Rhode Island Class Members.

2194.  Plaintiffs and other Class Members are persons who purchased or leased a Class Vehicles primarily for personal, family, or household purposes within the meaning of R.I. Gen. Laws § 6-13.1-5.2(a).

2195.  Unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful. R.I. Gen. Laws § 6-13.1-2.

2196. Rhode Island's Unfair Trade Practices and Consumer Protections Act ("Rhode Island CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;" "(vii) Representing that goods or services are of a particular

---

[112] As used herein, the "Rhode Island Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Rhode Island.

standard, quality, or grade, … if they are of another;" "(ix) Advertising goods or services with intent not to sell them as advertised;" "(xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding;" "(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer;" and "(xiv) Using other methods, acts or practices which mislead or deceive Members of the public in a material respect." R.I. Gen. Law § 6-13.1-1(6). Ford engaged in unlawful trade practices, including: (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Class Vehicles are of a particular standard and quality when they are not; (3) advertising the Class Vehicles with the intent to sell them as advertised; and (4) otherwise engaging in conduct that is unfair or deceptive and likely to deceive. Plaintiff and other Class Members purchased or leased the Class Vehicles for personal, family, or household purposes. Ford's conduct violated the Rhode Island CPA.

2197. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly

in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer, making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2198. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of

the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

2199. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2200. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2201. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said

incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

2202. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2203. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2204. Ford knew or should have known that its conduct violated the Rhode Island CPA.

2205. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

    b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2206. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or

leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2207. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

2208. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

2209. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

2210. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest. Ford's unfair acts or practices offends public policy, and is immoral, unethical, oppressive, or unscrupulous or caused substantial injury to consumers.

2211. Plaintiffs and the Class are entitled to recover the greater of actual damages or $200 pursuant to R.I. Gen. Laws § 6-13.1-5.2(a). Plaintiffs and the Class also seek punitive damages in the discretion of the Court because of Ford's egregious disregard of consumer and public safety and their long-running concealment of the serious safety defects and their tragic consequences.

<div align="center">

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON RHODE ISLAND LAW)**

</div>

2212. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2213. Plaintiffs bring this Count on behalf of the Rhode Island Class Members.

2214. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members

about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

2215. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2216. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2217. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2218. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2219. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2220. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2221. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2222. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2223. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2224. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2225. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2226. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2227. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2228. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2229. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford

to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2230. Because of Ford's false representations, concealment, and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2231. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class

Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2232. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2233. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2234. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## UNJUST ENRICHMENT

2235. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2236. Plaintiffs bring this Count on behalf of the Rhode Island Class Members.

2237. This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

2238. As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, Ford charged a higher price for the Class Vehicles than the Class Vehicles' true value and Ford, therefore, obtained monies that rightfully belong to Plaintiffs and other Class Members.

2239. Ford has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by Ford's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

2240. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for their vehicles that actually had lower values.

2241. Ford has received and retained unjust benefits from the Plaintiffs and other Class Members, and inequity has resulted.

2242. It would be inequitable and unconscionable for Ford to retain these wrongfully obtained benefits.

2243. Because Ford concealed its fraud and deception, Plaintiffs and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

2244. Ford knowingly accepted and retained the unjust benefits of its fraudulent conduct.

2245. As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial. Plaintiffs and other Class Members, therefore, seek an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (R.I. GEN. LAWS § 6A-2-314)

2246. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2247. Plaintiffs bring this Count on behalf of the Rhode Island Class Members.

2248. Ford was at all times a merchant with respect to motor vehicles under R.I. Gen. Laws § 6A-2-314.

2249. Under R.I. Gen. Laws § 6A-2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

2250. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

2251. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

2252. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use

of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

2253. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

2254. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2255. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and other Class Members have been damaged in an amount to be proven at trial.

**NN.  Claims Brought on Behalf of the South Carolina Class Members[113]**

**COUNT I**

**VIOLATIONS OF THE SOUTH CAROLINA
UNFAIR TRADE PRACTICES ACT
(S.C. CODE ANN. § 39-5-10 *ET SEQ.*)**

2256. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2257. Plaintiffs bring this Count on behalf of the South Carolina Class Members.

2258. Ford is a "person" under S.C. Code Ann. § 39-5-10.

2259. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a). Ford's conduct and acts were offensive to public policy or immoral, unethical, or oppressive, thus unfair. Ford's unfair or deceptive acts or practices were prohibited by South Carolina UTPA.

2260. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system,

---

[113] As used herein, the "South Carolina Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of South Carolina.

leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Ford engaged in unfair and deceptive business practices in violation of the South Carolina UTPA.

2261. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

2262. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2263. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2264. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

2265. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2266. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2267. Ford knew or should have known that its conduct violated the South Carolina UTPA.

2268. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

    b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel,

while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2269. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates

a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2270. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

2271. Ford's conduct proximately caused injuries to Plaintiff and the other Class Members.

2272. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

2273. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest. Ford's acts were unfair as they are

offensive to public policy, immoral, unethical, or oppressive. Specifically: (1) the number of consumers affected by Ford's deceptive practices are in the hundreds of thousands nation-wide; (2) Ford has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class Members; and (3) so long as the Class Vehicles continued to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant. Additionally, Ford's conduct was offensive to public interests because the unfair acts and practices have the potential for repetition. Accordingly, Ford is liable to Plaintiffs and the other Class Members for damages in an amount to be proven at trial.

2274. Pursuant to S.C. Code Ann. § 39-5-140(a), Plaintiffs and other Class Members seek monetary relief against Ford to recover for economic losses, reasonable attorneys' fees and costs. Because Ford's actions were willful and knowing, Plaintiff's and the Class' damages should be trebled. Plaintiffs and other Class Members also seek any other just and proper relief available under the South Carolina UTPA.

2275. Plaintiffs and other Class Members further alleges that Ford's malicious and deliberate conduct with warrants an assessment of punitive damages because Ford carried out despicable conduct with willful and conscious disregard of

the rights and safety of others, subjecting Plaintiff and the Class to cruel and unjust hardship as a result.

## COUNT II

### VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT (S.C. CODE ANN. § 56-15-10 *ET SEQ.*)

2276. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2277. Plaintiffs bring this Count on behalf of the South Carolina Class Members.

2278. Ford was a "manufacturer" as set forth in S.C. Code Ann. § 56-15-10, as each was engaged in the business of manufacturing or assembling new and unused motor vehicles.

2279. Ford committed unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. Code Ann.

2280. Ford engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to Plaintiffs and other Class Members, and to the public.

2281. Ford's bad faith and unconscionable actions include, but are not limited to: (1) representing that the Class Vehicles have characteristics, uses, benefits, and

qualities which they do not have, (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising the Class Vehicles with the intent to sell them as advertised, (4) representing that a transaction involving the Class Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving the Class Vehicles has been supplied in accordance with a previous representation when it has not.

2282. Ford resorted to and used false and misleading advertisements in connection with its business. As alleged above, Ford made numerous statements about the safety and reliability of the Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

2283. Plaintiffs and other Class Members bring this action pursuant to S.C. Code Ann. § 56-15-110(2), as the action is one common or general interest to many persons and the parties are too numerous to bring them all before the Court.

2284. Plaintiffs and the Class Members are entitled to double their actual damages injunctive relief, the cost of the suit and attorneys' fee pursuant to S.C. Code Ann. § 56-15-110. Plaintiffs and the Class Members also seek treble damages because Ford acted maliciously.

**COUNT III**

**FRAUDULENT CONCEALMENT**
**(BASED ON SOUTH CAROLINA LAW)**

2285. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2286. Plaintiffs bring this Count on behalf of the South Carolina Class Members.

2287. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

2288. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would

expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2289. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2290. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2291. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2292. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4

fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2293. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2294. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2295. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were

incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2296. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class

Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2297. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2298. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2299. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2300. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over

integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2301. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2302. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2303. Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true

nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2304. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2305. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2306. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2307. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (S.C. CODE ANN. § 36-2-314)

2308. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2309. Plaintiffs bring this Count on behalf of the South Carolina Class Members.

2310. Ford was at all times a merchant with respect to motor vehicles under S.C. Code Ann. § 36-2-314.

2311. Under S.C. Code Ann. § 36-2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

2312. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

2313. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

2314. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

2315. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

2316. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2317. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**OO.   Claims Brought on Behalf of the South Dakota Class Members[114]**

## COUNT I

**VIOLATIONS OF SOUTH DAKOTA DECEPTIVE TRADE PRACTICES
AND CONSUMER PROTECTION LAW
(S.D. CODIFIED LAWS § 37-24-1 *ET SEQ.*)**

2318. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2319. Plaintiffs bring this Count on behalf of the South Dakota Class Members.

2320. The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") prohibits deceptive acts or practices, which are defined for relevant purposes to include "[k]nowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby." S.D. Codified Laws § 37-24-6(1). Ford's conduct as set forth herein constitutes deceptive acts or practices, fraud, false pretense, false promises, misrepresentations, concealment, suppression and omission of material facts in violation of the South Dakota CPL, including but not limited to, Ford's

---

[114] As used herein, the "South Dakota Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of South Dakota.

misrepresentations and omissions regarding the safety and reliability of the Class Vehicles.

2321. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, unfair methods of competition, unconscionable acts or practices. Ford's unfair and deceptive acts or practices constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Ford engaged in unfair and deceptive business practices in violation of the South Dakota CPL.

2322. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse

throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

2323. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2324. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2325. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they

purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

2326. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2327. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2328. Ford knew or should have known that its conduct violated the South Dakota CPL.

2329. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump  in the Class Vehicles with U.S. diesel fuel because Ford:

> a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;
>
> b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2330. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or

leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2331. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

2332. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

2333. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations, fraud, deceptive practices and omissions.

2334. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

2335. Pursuant to S.D. Codified Laws § 37-24-31, Plaintiffs and the Class Members seek actual damages, attorneys' fees, and any other just and proper relief available under the South Dakota CPL.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON SOUTH DAKOTA LAW)

2336. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2337. Plaintiffs bring this Count on behalf of the South Dakota Class Members.

2338. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

2339. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2340. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2341. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2342. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2343. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2344. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2345. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members

would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2346. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates

a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2347. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2348. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2349. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2350. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2351. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2352. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2353. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class

Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2354. Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2355. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class

Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2356. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2357. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2358. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (S.D. CODIFIED LAWS § 57A-2-314)

2359. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2360. Plaintiffs bring this Count on behalf of the South Dakota Class Members.

2361. Ford was at all times a merchant with respect to motor vehicles under S.D. Codified Laws § 57A-2-314.

2362. Under S.D. Codified Laws § 57A-2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

2363. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

2364. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

2365. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use

of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

2366. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

2367. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2368. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**PP.   Claims Brought on Behalf of the Tennessee Class Members**[115]

## COUNT I

## VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT (TENN. CODE ANN. § 47-18-101 *ET SEQ.*)

2369.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2370.  Plaintiffs bring this Count on behalf of the Tennessee Class Members.

2371.  Plaintiffs and other Class Members are "natural persons" and "consumers" within the meaning of the Tenn. Code Ann. § 47-18-103(2).

2372.  Ford is a "person" within the meaning of the Tenn. Code Ann. § 47-18-103(2).

2373.  Ford's conduct complained of herein affected "trade," "commerce," or "consumer transactions" within the meaning of Tenn. Code Ann. § 47-18-103(19).

2374.  The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to: "(5) Representing that goods or services have … characteristics, [or] uses, [or] … benefits … that they do not have …," "(7) Representing that goods or services are of a particular standard, quality or grade …

---

[115] As used herein, the "Tennessee Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Tennessee.

if they are of another;" "(9) Advertising goods or services with intent not to sell them as advertised;" and "(27) Engaging in any other act or practice which is deceptive to the consumer or any other person." Tenn. Code Ann. § 47-18-104. Ford violated the Tennessee CPA by engaging in unfair or deceptive acts.

2375. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented and suggested

state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. Fords' acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Ford's engaged in unfair and deceptive business practices in violation of the Tennessee CPA.

2376. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

2377. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-

pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2378. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2379. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

2380. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2381. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2382. Ford knew or should have known that its conduct violated the Tennessee CPA.

2383. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2384. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford

had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2385. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

2386. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

2387. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations, fraud, deceptive practices and omissions.

2388. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

2389. Pursuant to Tenn. Code § 47-18-109(a), Plaintiffs and Class Members seek monetary relief against Ford measured as actual damages in an amount to be determined at trial, treble damages as a result of Ford's willful or knowing violations, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON TENNESSEE LAW)

2390. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2391. Plaintiffs bring this Count on behalf of the Tennessee Class Members.

2392. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

2393. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel

fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2394. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2395. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2396. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2397. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4

fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2398. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2399. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2400. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were

incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2401. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class

Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2402. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2403. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2404. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2405. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over

integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2406. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2407. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2408. Because of Ford's false representations, concealment and/or omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's

concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2409. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2410. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2411. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2412. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (TENN. CODE ANN. § 47-2-314)

2413. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2414. Plaintiffs bring this Count on behalf of the Tennessee Class Members.

2415. Ford was at all times a merchant with respect to motor vehicles under Tenn. Code Ann. § 47-2-314.

2416. Under Tenn. Code Ann. § 47-2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

2417. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

2418. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

2419. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

2420. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

2421. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2422. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## QQ.   Claims Brought on Behalf of the Utah Class Members[116]

### COUNT I

### VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT (UTAH CODE ANN. § 13-11-1 *ET SEQ.*)

2423. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2424. Plaintiffs bring this Count on behalf of the Utah Class Members.

2425. Ford qualifies as a "supplier" under the Utah Consumer Sales Practices Act ("Utah CSPA"), Utah Code Ann. § 13-11-3.

2426. Plaintiffs and the Class Members are "persons" under Utah Code Ann. § 13-11-3.

2427. Sales of the Class Vehicles to Plaintiffs and the Class were "consumer transactions" within the meaning of Utah Code Ann. § 13-11-3.

2428. The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under Utah Code Ann. § 13-11-4. Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or

---

[116] As used herein, the "Utah Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Utah.

benefits, if it has not" or (b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." Utah Code Ann. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code Ann. § 13-11-5.

2429. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented and suggested

state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. Ford's acts had capacity, tendency, or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Ford engaged in unfair and deceptive business practices in violation of the Utah CSPA.

2430. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

2431. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-

pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2432. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2433. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

2434. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2435. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2436. Ford knew or should have known that its conduct violated the Utah CSPA.

2437. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

> a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;
>
> b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or
>
> c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2438. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford

had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2439. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

2440. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

2441. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

2442. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

2443. Pursuant to Utah Code Ann. § 13-11-4, Plaintiffs and Class Members seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for Plaintiffs and each Utah Class Member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON UTAH LAW)

2444. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2445. Plaintiffs bring this Count on behalf of the Utah Class Members.

2446. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

2447. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel

fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2448. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2449. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2450. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2451. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4

fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2452. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2453. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2454. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were

incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2455. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class

Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2456. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2457. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2458. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2459. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over

integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2460. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2461. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2462. Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true

nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2463. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2464. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2465. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2466. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (UTAH CODE ANN. § 70A-2-314)

2467. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2468. Plaintiffs bring this Count on behalf of the Utah Class Members.

2469. Ford was at all times a merchant with respect to motor vehicles within the meaning of the Utah Code Ann. § 70A-2-314.

2470. Under Utah Code Ann. § 70A-2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

2471. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

2472. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

2473. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

2474. Plaintiffs and Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and Class Members.

2475. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2476. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## RR.   Claims Brought on Behalf of the Vermont Class Members[117]

## COUNT I

## VIOLATION OF VERMONT CONSUMER FRAUD ACT
### (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*)

2477. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2478. Plaintiffs bring this Count on behalf of the Vermont Class Members.

2479. Ford is a seller within the meaning of Vt. Stat. Ann. tit. 9, § 2451(a)(c).

2480. The Vermont Consumer Fraud Act ("Vermont CFA") makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." Vt. Stat. Ann. tit. 9, § 2453(a).

2481. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would

---

[117] As used herein, the "Vermont Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Vermont.

expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2482. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

2483. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature

of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2484. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2485. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

2486. Ford's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2487. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2488. Ford knew or should have known that its conduct violated the Vermont CFA.

2489. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

      a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

      b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

      c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2490. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in

Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2491. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

2492. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

2493. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

2494. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by Ford's deceptive practices are in the hundreds of thousands nation-wide; (2) Ford has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class Members; and (3) so long as the Class Vehicles continued to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant. Accordingly, Ford is liable to Plaintiffs and the other Class Members for damages in an amount to be proven at trial.

2495. Plaintiffs and other Class Members are entitled to recover "appropriate equitable relief" and " the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]" pursuant to Vt. Stat. Ann. tit. 9, § 2461(b).

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON VERMONT LAW)

2496. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2497. Plaintiffs bring this Count on behalf of the Vermont Class Members.

2498. As set forth above, Plaintiffs and other Class Members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class Members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

2499. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for

the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

2500. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2501. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2502. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2503. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2504. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2505. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2506. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members

would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2507. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates

a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2508. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2509. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2510. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2511. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2512. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2513. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2514. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class

Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2515. Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2516. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class

Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2517. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2518. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2519. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### (VT. STAT. ANN. TIT. 9A § 2-314

2520. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2521. Plaintiffs bring this Count on behalf of the Vermont Class Members.

2522. Ford was at all times a merchant with respect to motor vehicles under Vt. Stat. Ann. tit. 9A § 2-104.

2523. Under Vt. Stat. Ann. tit. 9A § 2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

2524. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

2525. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

2526. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use

of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

2527. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

2528. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2529. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**SS.    Claims Brought on Behalf of the Virginia Class Members[118]**

## COUNT I

**VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT**
**(VA. CODE ANN. § 59.1-196 *ET SEQ.*)**

2530. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2531. Plaintiffs bring this Count on behalf of the Virginia Class Members.

2532. Ford is a "supplier" as defined by Va. Code Ann. § 59.1-198.

2533. The transaction between Plaintiffs and the other Class Members on the one hand and Ford on the other, leading to the purchase or lease of the Class Vehicles by Plaintiffs and other Class Members, are "consumer transactions" as defined by Va. Code Ann. § 59.1-1.98, because the Class Vehicles were purchased or leased primarily for personal, family or household purposes.

2534. The Virginia Consumer Protection Act ("Virginia CPA") prohibits the following fraudulent acts or practices committed by a supplier with a consumer transaction: "(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; … (8)

---

[118] As used herein, the "Virginia Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Virginia.

advertising goods or services with intent not to sell them as advertised; … [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]" Va. Code Ann. § 59.1-200(A).

2535. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices, unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in

light of the representations of fact made in a positive manner. Ford's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Ford engaged in unfair and deceptive business practices in violation of the Virginia CPA.

2536. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

2537. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiff and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class

Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2538. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2539. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

2540. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2541. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2542. Ford knew or should have known that its conduct violated the Virginia CPA.

2543. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

> a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;
>
> b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or
>
> c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2544. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in

Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2545. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

2546. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

2547. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

2548. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

2549. Pursuant to Va. Code Ann. § 59.1-204, Plaintiffs and the Class Members seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for Plaintiffs and each Class member. Because Ford's conduct was committed willfully and knowingly, Plaintiffs and the Class is entitled to recover, for him/herself and each Class member, the greater of (a) three times actual damages or (b) $1,000.

2550. Plaintiffs and Class Members also seek an order enjoining Ford's fraudulent, unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under the Virginia General Business Law § 59.1-203 *et seq*.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON VIRGINIA LAW)

2551. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2552. Plaintiffs bring this Count on behalf of the Virginia Class Members.

2553. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

2554. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system,

leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2555. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2556. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2557. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system

components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2558. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2559. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2560. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2561. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2562. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2563. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2564. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2565. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2566. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2567. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2568. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump

failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2569. Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2570. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2571. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2572. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2573. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (VA. CODE ANN. § 8.2-314)

2574. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2575. Plaintiffs bring this Count on behalf of the Virginia Class Members.

2576. Ford was at all times a merchant with respect to motor vehicles under Va. Code Ann. § 8.2-314.

2577. Under Va. Code Ann. § 8.2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

2578. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

2579. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

2580. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure

(oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

2581. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

2582. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2583. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**TT.   Claims Brought on Behalf of the Washington Class Members[119]**

## COUNT I

## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010 *ET SEQ.*)

2584. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2585. Plaintiffs bring this Count on behalf of the Washington Class Members.

2586. Ford, Plaintiffs and other Class Members are a "person" under Wash. Rev. Code Ann. § 19.86.010(1). ("Washington CPA").

2587. Ford engaged in "trade" or "commerce" under Wash. Rev. Code Ann. § 19.86.010(2).

2588. The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.86.020. Ford's conduct was unfair because it (1) offends public policy as it has been established by statutes, the common law, or otherwise; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. Ford's conduct is deceptive because it has the capacity or tendency to deceive.

---

[119] As used herein, the "Washington Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Washington.

2589. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unfair and deceptive trade practices and Ford's actions had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2590. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure

(oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

2591. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2592. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2593. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they

purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

2594. Ford's unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2595. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2596. Ford knew or should have known that its conduct violated the Washington CPA.

2597. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump  in the Class Vehicles with U.S. diesel fuel because Ford:

> a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;
>
> b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2598. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or

leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2599. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

2600. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

2601. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations, fraud, deceptive practices, and omissions.

2602. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein impact the public interest. Specifically: (1) the number of consumers affected by Ford's deceptive practices are in the hundreds of thousands nation-wide; (2) Ford has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class Members; and (3) so long as the Class Vehicles continued to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

2603. Ford is liable to Plaintiffs and other Class Members for damages in amounts to be proven at trial., including attorneys' fees, costs, and treble damages up to $25,000, as well as any other just and proper relief the Court may deem appropriate under Wash. Rev. Code Ann. § 19.86.090.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON WASHINGTON LAW)

2604. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2605. Plaintiffs bring this Count on behalf of the Washington Class Members.

2606. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more

importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

2607. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2608. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2609. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2610. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2611. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2612. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant

defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2613. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2614. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiff's and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiff and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth.

These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2615. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2616. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2617. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2618. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2619. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2620. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2621. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2622. Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2623. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2624. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2625. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2626. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of

punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (WASH. REV. CODE ANN. § 62A.2-314)

2627. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2628. Plaintiffs bring this Count on behalf of the Washington Class Members.

2629. Under Wash. Rev. Code Ann. § 62a.2-314, a warranty that the Class Vehicles were in merchantable condition as implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

2630. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

2631. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

2632. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

2633. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

2634. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the

defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2635. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

UU.   **Claims Brought on Behalf of the West Virginia Class Members[120]**

## COUNT I

### VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT (W. VA. CODE § 46A-1-101 *ET SEQ.*)

2636. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2637. Plaintiffs bring this Count on behalf of the West Virginia Class Members.

2638. Ford is a "person" under W. Va. Code § 46A-1-102(31).

2639. Plaintiffs and West Virginia Class Members are "consumers" as defined by W. Va. Code §§ 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more of the Class Vehicles.

---

[120] As used herein, the "West Virginia Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of West Virginia.

2640. Ford was and is engaged in trade or commerce as defined by W. Va. Code § 46A-6-102(6).

2641. The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104. Without limitation, "unfair or deceptive" acts or practices include:

(I) Advertising goods or services with intent not to sell them as advertised; . . .

(L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;

(M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby; [and]

(N) Advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast in any manner, any statement or representation with regard to the sale of goods or the extension of consumer credit including the rates, terms or conditions for the sale of such goods or the extension of such credit, which is false, misleading or deceptive or which omits to state material information which is necessary to make the statements therein not false, misleading or deceptive.

W. Va. Code § 46A-6-102(7).

2642. Ford participated in unfair and deceptive trade practices that violated the West Virginia CCPA as described herein. In the course of its business, Ford

knowingly concealed and suppressed material facts concerning the defective CP4 fuel pumps in the Class Vehicles. Ford falsely represented the quality of the Class Vehicles and omitted material facts regarding the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), as well as the durability and overall value of the Class Vehicles, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2643. Specifically, by misrepresenting the Class Vehicles as safe, durable, reliable, and compatible with U.S. diesel, and by failing to disclose and actively concealing the CP4 fuel pump defect, Ford engaged in deceptive business practices prohibited by the West Virginia CCPA, including:

a. Knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles;

b. Knowingly making a false representation as to whether the Class Vehicles are of a particular standard, quality, or grade;

c. Advertising the Class Vehicles with the intent not to sell them as advertised; and

d. Otherwise engaging in conduct likely to deceive.

2644. Ford's unfair or deceptive acts or practices, including the above-mentioned concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including the West Virginia

Class Members about the true safety and reliability of Class Vehicles, the quality of Ford's Power Stroke diesel-engine vehicles, and the true value of the Class Vehicles.

2645. As alleged above, in the course of its business, Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles and the defective high-pressure fuel pumps installed therein with an intent to mislead the West Virginia Class Members.

2646. Ford knew or should have known that its conduct violated the West Virginia CCPA.

2647. To protect its profits, Ford concealed the CP4 fuel pump defect and continued to allow unsuspecting new and used vehicle purchasers to continue to buy, lease, and drive the inherently defective Class Vehicles.

2648. Ford owed the West Virginia Class Members a duty to disclose the truth about the quality, reliability, durability, and safety of the Class Vehicles because Ford, by virtue of designing, producing, and warranting the Class Vehicles, possessed exclusive, superior knowledge of the CP4 fuel pump defect in its Power Stroke diesel-engine vehicles, and Plaintiffs and West Virginia Class Members could not reasonably be expected to learn of or discovery the CP4 fuel pump defect which is latent in nature and manifests in a deeply internal component part of the Class Vehicles' high-pressure fuel injection systems.

2649. Plaintiffs and West Virginia Class Members relied on Ford's representations and omissions regarding the safety, quality, and durability of the Class Vehicles, and specifically that said vehicles were compatible with U.S. diesel. Ford, by the conduct, statements, and omissions described above, knowingly and intentionally concealed from Plaintiffs and the West Virginia Class Members that the Class Vehicles suffer from an inherent defect (and the costs, safety risks, and diminished value of the vehicles as a result of this defect).

2650. Ford's acts and practices have deceived Plaintiffs and West Virginia Class Members and are likely to, and did, deceive the public. In misrepresenting the attributes and performance properties of Class Vehicles, and failing to disclose the CP4 fuel pump defect and suppressing material facts from Plaintiffs and West Virginia Class Members, Ford violated the West Virginia CCPA and substantially injured them. Ford's misrepresentations, omissions, and acts of concealment pertained to information that was material to Plaintiffs and West Virginia Class Members, as it would have been to all reasonable consumers.

2651. Because Ford fraudulently concealed the CP4 fuel pump defect in the Class Vehicles, and intentionally failed to disclose to Plaintiffs and the West Virginia Class Members at the time of purchase or lease that said vehicles are prone to catastrophic high-pressure fuel pump failure which (1) causes the Class Vehicles to stall while in motion with a subsequent inability to restart; and (2) results in a

comprehensive high-pressure fuel injection system repair/replacement process costing $8,000 - $20,000 which Ford will not cover, the Class Vehicles are worth significantly less than the amounts paid by Plaintiffs and the West Virginia Class Members at the time of purchase or lease. Indeed, Ford's conduct proximately caused Plaintiffs' and West Virginia Class Members' injuries, as consumers who purchased or leased the Class Vehicles would not have purchased or leased said vehicles, or would have paid significantly less for them, had they known of the existence of this defect prior to purchase or lease.

2652. Plaintiffs and the West Virginia Class Members suffered ascertainable loss caused by Ford's misrepresentations and its failure to disclose material information. Plaintiffs and the West Virginia Class Members did not receive the benefit of their bargains as a result of Ford's misconduct.

2653. Pursuant to W. Va. Code § 46A-6-106, Plaintiffs seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the West Virginia CCPA for each Plaintiff.

2654. Plaintiffs also seek punitive damages against Ford because it carried out despicable conduct with willful and conscious disregard of the rights of others, subjecting Plaintiffs of West Virginia Class Members to cruel and unjust hardship as a result.

2655. Plaintiffs further seek an order enjoining Ford's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees under W. Va. Code § 46A-5-101 *et seq.*, and any other just and proper relief available under the West Virginia CCPA.

2656. On August 13, 2019, Plaintiffs' counsel, on behalf of the West Virginia Class Members, sent Ford a letter with notice of its alleged violations of the West Virginia CCPA relating to the Class Vehicles and demanded that Ford correct or agree to correct the actions described therein, pursuant to W. Va. Code § 46A-6-106(b). As Ford has failed to do so within the required 20 days, Plaintiffs seek all damages and relief to which Plaintiffs and the West Virginia Class Members are entitled.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON WEST VIRGINIA LAW)

2657. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2658. Plaintiffs bring this Count on behalf of the West Virginia Class Members.

2659. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of

the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

2660. In the course of Ford's business, it willingly failed to disclose and systematically and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2661. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2662. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2663. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2664. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2665. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant

defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2666. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2667. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth.

These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2668. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2669. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2670. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2671. Ford falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2672. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2673. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2674. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2675. Because of Ford's false representations, concealments, and/or omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel

additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2676. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2677. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2678. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2679. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them

were made in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (W. VA. CODE § 46-2-314)

2680. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2681. Plaintiffs bring this Count on behalf of the West Virginia Class Members.

2682. Ford was at all times a merchant with respect to motor vehicles within the meaning of W. Va. Code § 46-2-314.

2683. Under W. Va. Code § 46-2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

2684. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only

fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

2685. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

2686. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

2687. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

2688. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to

Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2689. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**VV.   Claims Brought on Behalf of the Wisconsin Class Members[121]**

<div align="center">

**COUNT I**

**VIOLATIONS OF THE WISCONSIN
DECEPTIVE TRADE PRACTICES ACT
(WIS. STAT. § 110.18)**

</div>

2690. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2691. Plaintiffs bring this Count on behalf of the Wisconsin Class Members.

2692. Ford is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

---

[121] As used herein, the "Wisconsin Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Wisconsin.

2693. Plaintiffs and other Class Members are Members of "the public" within the meaning of the Wis. Stat. § 100.18(1). Plaintiffs and other Class Members purchased or leased one or more Class Vehicles.

2694. The Wisconsin Deceptive Practices Act ("Wisconsin DTPA") prohibits an "assertion, representation or statement of facts which is untrue, deceptive, or misleading." Wis. Stat. § 100.18(1). Ford's affirmative assertions, representations, or statements of fact were false, deceptive, or misleading. By systematically concealing the defects in the Class Vehicles, Ford's conduct, acts, and practices violated the Wisconsin DTPA.

2695. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in prohibited acts with the affirmative assertions, representations, or statement of facts that are false, deceptive or misleading with the intent to induce

obligation. Ford engaged in unfair and deceptive business practices in violation of the Wisconsin DTPA in connection with the sale of Class Vehicles.

2696. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Ford's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

2697. Plaintiffs and Class Members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations and omissions were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and Class Members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2698. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2699. The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

2700. Ford's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2701. Ford intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2702. Ford knew or should have known that its conduct violated the Wisconsin DTPA.

2703. Ford owed to Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Ford:

> a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel

injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2704. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and the Class Members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford

had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2705. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase their revenue and profits.

2706. Ford's conduct proximately caused injuries to Plaintiffs and the other Class Members.

2707. Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Ford's conduct in that Plaintiffs and the other Class Members overpaid for their

Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

2708. Ford's violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

2709. Plaintiffs and the Class Members seek actual damages, court costs, attorneys' fees and other relief provided for under Wis. Stat. 100.18(11)(b)(2). Because Ford's conduct committed knowingly and/or intentionally, Plaintiffs and the Class Members are entitled to treble damages.

<div align="center">

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(BASED ON WISCONSIN LAW)**

</div>

2710. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2711. Plaintiffs bring this Count on behalf of the Wisconsin Class Members.

2712. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead Plaintiffs and other Class Members

about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

2713. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2714. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2715. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2716. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2717. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2718. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2719. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2720. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2721. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions.  Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2722. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2723. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2724. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2725. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2726. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2727. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford

to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2728. Because of Ford's false representations, concealment, and/or omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2729. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class

Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2730. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2731. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2732. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## WW. Claims Brought on Behalf of the Wyoming Class Members[122]

### COUNT I

### VIOLATIONS OF THE WYOMING CONSUMER PROTECTION ACT (WYO. STAT. ANN. § 40-12-101 *ET SEQ.)*

2733. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2734. Plaintiffs bring this Count on behalf of the Wyoming Class Members.

2735. Ford and the Wyoming Class Members are "persons" within the meaning of Wyo. Stat. Ann. § 40-12-102(a)(i).

2736. Each sale or lease of the Class Vehicles to a Wyoming Class Member was a "consumer transaction" within the meaning of Wyo. Stat. Ann. § 40-12-105. These consumer transactions occurred in the course of Ford's business under Wyo. Stat. Ann. § 40-12-105(a).

2737. The Class Vehicles are "merchandise" pursuant to Wyo. Stat. Ann. § 40-12-102(a)(vi).

2738. The Wyoming Consumer Protection Act ("Wyoming CPA") prohibits deceptive trade practices. Wyo. Stat. Ann. § 40-12-105(a).

---

[122] As used herein, the "Wyoming Class Members" refers to the Class of all persons who purchased or leased a Class Vehicle in the State of Wyoming.

2739. In the course of its business, Ford concealed and suppressed material facts concerning the Class Vehicles. Specifically, Ford concealed the CP4 fuel pump defect in the Class Vehicles, and intentionally failed to disclose to Plaintiffs and the West Virginia Class Members at the time of purchase or lease that said vehicles are prone to catastrophic high-pressure fuel pump failure which (1) causes the Class Vehicles to stall while in motion with a subsequent inability to restart; and (2) results in a comprehensive high-pressure fuel injection system repair/replacement process costing $8,000 - $20,000 which Ford will not cover.

2740. The facts concealed by Ford from Plaintiffs and the West Virginia Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease a Class Vehicle or pay a lower price. Had Plaintiffs and the West Virginia Class Members known of the true facts at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

2741. Pursuant to Wyo. Stat. Ann. § 40-12-108(a), Plaintiffs seek monetary relief against Ford measured as actual damages in an amount to be determined at trial, in addition to any other just and proper relief available under the Wyoming CPA. Plaintiffs also seek an order enjoining Ford's unfair, unlawful, and/or

deceptive practices, attorneys' fees, and any other just and proper relief available under the Wyoming CPA.

2742. On August 13, 2019, Plaintiffs sent a letter to Ford complying with Wyo. Stat. Ann. § 45-12-109. Because Ford has failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Wyoming Class are entitled.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON WYOMING LAW)

2743. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2744. Plaintiffs bring this Count on behalf of the Wyoming Class Members.

2745. As set forth above, Plaintiffs and other Wyoming Class Members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class Members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

2746. As alleged above, Ford intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump and (more importantly) facts concerning the durability and performance of the Class Vehicles

and their engines, in order to defraud and mislead Plaintiffs and other Class Members about the true nature of the Class Vehicles, or Ford acted with reckless disregard for the truth and denied Plaintiffs and other Class Members information this is highly relevant to their purchasing decision.

2747. In the course of Ford's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of Ford's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Ford engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2748. As alleged above, Ford knew at least by 2002 that its fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2749. As alleged above, Ford had specific knowledge by at least 2002 that its diesel fuel injection systems were incompatible with American diesel fuel specifications.

2750. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, Ford knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which Ford would refuse to cover under its warranties.

2751. As alleged above, Ford knew that there was significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

2752. Despite this knowledge, Ford marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and other Class Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel – representations Ford knew were false when made.

2753. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class Members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class Members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class Members to purchase a Class Vehicle.

2754. Due to Ford's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class Members' reliance on these material representations, Ford had a duty to disclose to Plaintiffs and Class Members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Plaintiffs and Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class Members, Ford had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

Longevity, durability, performance, and safety are material concerns to diesel truck consumers. Ford represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. fuel with CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2755. Ford knew that Plaintiffs and other Class Members reasonably relied upon Ford's false representations and omissions. Plaintiffs and other Class Members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel Ford knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that Ford would refuse to repair, replace or compensate Plaintiffs and other Class Members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2756. Plaintiffs and other Class Members could not have known that the Class Vehicles, which were touted by Ford for their durability and performance, will fail when used as intended by Ford to be used.

2757. Ford knew that Plaintiffs and other Class Members could not have known that Class Vehicles will fail when used as intended by Ford.

2758. Ford falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by Ford to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase Ford's revenue and profits.

2759. Ford's devious scheme to design, market and sell Class Vehicles with defective Bosch CP4 pumps, knowing that U.S. fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class Members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2760. Ford had a duty to disclose the incompatibility of Class Vehicles with U.S. diesel fuel, including the consequences of that incompatibility, to Plaintiffs and Class Members.

2761. Had Plaintiffs and other Class Members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class Members and Ford

to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class Members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class Members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle than paid based on Ford's false representations and omissions, or, in the case of Plaintiffs and other Class Members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

2762. Because of Ford's false representations and omissions of material facts, Plaintiffs and other Class Members have sustained damages because they own vehicles that are diminished in value as a result of Ford's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicle, and had Plaintiffs and other Class Members known the truth about that true nature and quality, Plaintiffs and other Class Members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent catastrophic CP4 failure from occurring or reoccurring.

2763. Ford's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class Members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs

and other Class Members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class Members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2764. Ford still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Bosch CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

2765. Accordingly, Ford is liable to Plaintiffs and other Class Members for damages in an amount to be proved at trial.

2766. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class Members' rights and the representations and omissions made by Ford to them were made in order to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, the amount of which is to be determined by a jury, according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (WYO. STAT. ANN. § 34.1-2-314)

2767. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2768. Plaintiffs bring this Count on behalf of the Wyoming Class Members.

2769. Ford was at all times a merchant with respect to motor vehicles under Wyo. Stat. Ann. § 34.1-2-104.

2770. Under Wyo. Stat. Ann. § 34.1-2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from Ford.

2771. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by Ford and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class Members) causes a breakdown of the CP4 fuel pump (a condition that Ford knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and

inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery system.

2772. It was reasonable to expect that Plaintiffs and other Class Members may use, consume or be affected by the defective vehicles.

2773. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby increasing the risk of serious injury or death.

2774. Plaintiffs and other Class Members were and are third-party beneficiaries to the Ford manufacturer's contracts with Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiffs and other Class Members.

2775. Ford was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiffs' counsel, on behalf of Plaintiffs and the Class, to Ford, complaints by Plaintiffs or Class Members to Ford either orally or in writing, complaints to Ford dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the

defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2776. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of Members of the Class, respectfully request that the Court enter judgment in their favor and against Ford as follows:

A.      Certification of the proposed Classes, including appointment of Plaintiffs' counsel as Class Counsel;

B.      An order temporarily and permanently enjoining Ford from continuing unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      Injunctive relief in the form of a recall, free replacement, or buy-back program;

D.      An order establishing Ford as a constructive trustee over profits wrongfully obtained, plus interest;

E.      Restitution, including at the election of the Plaintiffs and Class Members, recovery of the purchase price of the Class Vehicles, or the overpayment or diminution in value of their Class Vehicles;

F.      Damages, including punitive damages, costs, exemplary damages and treble damages, and disgorgement in an amount to be determined at trial, except that monetary relief under certain consumer protection statutes, as stated above, shall be limited prior to completion of the applicable notice requirements;

G.      An order requiring Ford to pay both pre- and post-judgment interest on any amounts awarded;

H.      An award of costs and attorney's fees; and

I.      Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED: December 19, 2019          HAGENS BERMAN SOBOL SHAPIRO LLP

                                   s/ Steve W. Berman
                                  Steve W. Berman
                                  1301 Second Avenue, Suite 2000
                                  Seattle, WA 98101
                                  Telephone: (206) 623-7292
                                  Facsimile: (206) 623-0594
                                  steve@hbsslaw.com

                                  Robert C. Hilliard
                                  HILLIARD MARTINEZ GONZALES LLP
                                  719 S. Shoreline Blvd.
                                  Corpus Christi, TX 78401
                                  Telephone: (361) 882-1612
                                  bobh@hmglawfirm.com

                                  E. Powell Miller (P39487)
                                  THE MILLER LAW FIRM, P.C.
                                  950 W. University Drive, Suite 300
                                  Rochester, MI 48307
                                  Tel: (248) 841-2200
                                  Fax: (248) 652-2852
                                  epm@millerlawpc.com

                                  Andrew Parker Felix, Esq.
                                  MORGAN & MORGAN, P.A.
                                  20 North Orange Ave., Ste. 1600
                                  P.O. Box 4979
                                  Orlando, FL 32801
                                  Telephone: (407) 244-3204
                                  Facsimile: (407) 245-3334
                                  Andrew@forthepeople.com