UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK WILLIAM DROESSER et al.,

Plaintiffs,

v.

FORD MOTOR COMPANY,

Defendant.

Case No. 19-12365
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [147]**

Plaintiffs in this multi-state class action allege that Defendant Ford Motor Company equipped many of its trucks with defective CP4 diesel fuel pumps—the component that pressurizes and injects fuel into the engine. Plaintiffs believe that their pumps failed (or will fail) due in large part to the CP4's fragile design and incompatibility with U.S. diesel fuel. After years of extensive discovery, Ford now seeks summary judgment on all claims.

The motions are fully and adequately briefed. (ECF Nos. 147, 146 (Sealed), 168, 176, 175 (Sealed).) For the following reasons, Ford's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## I. Procedural History

On August 9, 2019, Plaintiffs filed this putative class action case against Ford Motor Company alleging a fuel pump defect pertaining to the 2011–present class vehicles. (ECF No. 1.) After several amended complaints, Plaintiffs filed the operative

pleading, the Third Amended and Consolidated Class Action Complaint ("TAC"), on April 28, 2023, on behalf of multiple putative classes across several states for various warranty, consumer protection, fraudulent concealment, and breach of contract claims. (ECF No. 87, PageID.19702–20088.) The parties stipulated to dismissal of several plaintiffs. (ECF Nos. 42, 92, 97, 100, 111, 124, 140, 158, 159.)

In November 2025, the parties filed three motions. Ford filed a motion to exclude the expert testimony of Plaintiffs' defect expert, Dr. Bradley Edgar (ECF No. 149), which the Court denied, finding Dr. Edgar's testimony sufficiently reliable (ECF No. 195). Plaintiffs filed a motion for class certification for claims of breach of the implied warranty of merchantability and violation of California consumer protection laws (ECF No. 144), which the Court granted in part and denied in part, certifying only those class members who have experienced a pump failure (ECF No. 201). That leaves Ford's pending motion for summary judgment. (ECF No. 147.)

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence permits a reasonable jury to return a verdict in favor of the nonmovant, and a fact is "material" if it may affect the outcome of the suit. *See Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must view facts in the record and reasonable inferences that can be drawn from those facts in the light most

favorable to the nonmoving party, and presents them as such below. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## III. Factual Background

This is a multi-state class action wherein Plaintiffs allege that Ford equipped its 2011–present 6.7L Power Stroke diesel trucks (the "Class Vehicles") with a defective fuel pump (ECF No. 87, PageID.19523). In particular, the fuel pump at issue is the "CP4 pump" supplied by automotive component parts supplier Robert Bosch GmbH ("Bosch"). (ECF No. 147, PageID.32049.)

The complex systems at issue can be simplified like this: A vehicle's fuel system, which includes the fuel pump, supplies diesel fuel to the engine through both a low-pressure system (located outside the engine) and a high-pressure system within the engine. (*Id.* at PageID.32048.) In ideal conditions, the low-pressure fuel pump separates water from the diesel fuel and filters out particles, then delivers it to the high-pressure fuel pump. (*Id.*; ECF No. 168, PageID.43588.) Diesel fuel then enters the high-pressure pump system where it circulates around the main body of the pump, providing "lubricity"—that is, lubricating and cooling the pump's moving component parts so they move smoothly. (ECF No. 147, PageID.32049; ECF No. 168, PageID.43589; ECF No. 87, PageID.19524 (The pump passes the fuel through small, rotating metal parts that must "seamlessly roll together without skipping, sliding, sticking, or wearing to operate effectively.").) Fuel also circulates to the pump's cylinder heads where pistons pressurize it and push it into the high-pressure fuel pipes. (ECF No. 147, PageID.32050.) From there, the fuel flows to a reservoir (the

fuel rail) where fuel injectors spray it into the engine. (*Id.*) Some of this fuel is not needed to power the engine so it flows out of the pump and back into the vehicle fuel tank. (*Id.*)

Lubricity is key to the pump's functioning. And several factors can cause low lubricity fuel to enter the pump. For one, as the parties acknowledge, there is a small percentage of diesel fuel that will not meet industry standards and may have contaminants in it. (*Id.* at PageID.32047; ECF No. 168, PageID.43588.) For another, customers could fill up their tank with non-diesel fuel or a fuel additive containing contaminants like emulsifiers that bring water into the engine. (ECF No. 147, PageID.32049, 32057.)

The fuel system has mechanisms designed to deal with some customer abuse and poor diesel quality. For example, the low-pressure pump is meant to separate out water from the fuel, and, when this happens, drivers receive a Water in Fuel (WIF) dashboard alert prompting them to drain the water by turning a valve on the fuel system. (*Id.* at PageID.32048.) But if the user fails to follow that direction, water could get through to the high-pressure pump. As for particles, there is a secondary fuel filter that is intended to filter out contaminants before the fuel enters the high-pressure pump. (*Id.* at PageID.32049; ECF No. 168, PageID.43588.) If filters are not regularly cleaned out, however, contaminants could pass through. And if contaminated fuel is detected, drivers receive an alert and the engine's power output is reduced. (ECF No. 147, PageID.32049; ECF No. 168, PageID.43589.)

In these non-ideal scenarios, contaminants (water, air bubbles, and dry fuel) make their way into the pump. This lowers the lubricity in the pump, and with low lubricity, the rolling parts inside the pump can stick and grind together, which in turn produce metal shavings and other debris that jam the pump and cause the pump to run poorly or, even worse, to fail suddenly. (ECF No. 168, PageID.43603.) This necessitates repair of the pump or a replacement of the entire engine, costing upwards of $10,000. (*Id.* at PageID.43617, ECF No. 147, PageID.32046.)

Plaintiffs' view is that the CP4 pump was not robust enough to deal with these non-ideal conditions. (ECF No. 168, PageID.43603.) This is also the essence of their defect/liability expert's opinions. (ECF No. 166, PageID.42388 ("Dr. Edgar's core conclusion is that the CP4 pump is defective because it is not robust to foreseeable, real-life fuel conditions.").) And they maintain that Ford knew of the pump's fragility yet still pushed these CP4-equipped vehicles onto the market. (*See* ECF No. 167, PageID.42892–42895 (Sealed); ECF No. 143-3, PageID.26694 (Dr. Edgar Report) (concluding that, based on internal documents and public information, Ford knew of the defect as early as 2011) (Sealed); *id.* at PageID.26671 (discussing Ford engineering emails that water in fuel pump was "not a rare occurrence" and "must get fixed") (Sealed).)

Ford contests Plaintiffs' view that the CP4 pump is defective. (ECF Nos. 93, 147.) First, it points to what it believes is adequate design and testing. Ford says Bosch tested the pump with non-diesel fuel and contaminated fuel. (ECF No. 147, PageID.32050–32051.) Second, Ford said it conducted its own "robustness" testing on

engines and vehicles, including with randomly sampled diesel fuel from public gas stations and various high-wear scar fuels. (ECF No. 146, PageID.29035–29036 (Sealed); ECF No. 175, PageID.45726 (Sealed).) For their part, Plaintiffs challenge the extent and thoroughness of these tests. (*Compare* ECF No. 167 PageID.42890–4892, *with* ECF No. 146, PageID.29034 (Sealed).) Third, Ford contends it "introduced upgraded versions of the CP4 pump in response to the pump's real world-performance." (ECF No. 175, PageID.45728 (Sealed).) The parties contest the extent to which these changes "positively impacted the performance of the CP4" or improved pump failure rate. (ECF No. 167, PageID.42894 (Sealed).)

During the pendency of the litigation, Ford issued a recall of diesel trucks with a specific CP4 pump model (RP7). (ECF No. 147, PageID.32055; ECF No. 190-2, PageID.46345.)

## IV. Ford's Motion

Ford seeks summary judgment on all claims asserted in Plaintiffs' TAC, including the warranty, consumer protection, fraudulent concealment, and breach of contract claims. It also seeks summary judgment against all named Plaintiffs—Reeves (AL), Mertz (CA), Sawicki (CA), Bauers (IN), Angona (LA), J. Ford (LA), Fowlkes (MI), Doa (MI), Eriv (NJ), Parker (OH), Wentz (PA), and Williams (SC). (*See* ECF No. 147.)

### A. Abandoned Claims

Notably, Plaintiffs do not defend most of their claims. Instead, they simply say the claims are "not relevant to [their] motion for class certification." (ECF No. 168,

PageID.43585.) In other words, their response focuses on only the causes of action for which they are seeking class certification. Thus, they challenge Ford's motion only as to the implied warranty of merchantability claims for seven states (California, Indiana, Louisiana, New Jersey, Ohio, Pennsylvania, and South Carolina) and the two California consumer protection claims. (*Id.*)

As a result, the Court agrees with Ford (ECF No. 176, PageID.45755) that by failing to brief their other claims in opposition to Ford's motion for summary judgment, Plaintiffs have abandoned those claims. *See Dulaney v. Flex Films (USA), Inc.*, No. 20-6098, 2021 U.S. App. LEXIS 25523, at *15 (6th Cir. Aug. 23, 2021) ("Our precedents support a finding of abandonment in those circumstances.") (collecting cases); *see also Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 564 n.1 (6th Cir. 2021) (plaintiff abandoned claims not discussed in opposition to motion for summary judgment or on appeal); *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

Thus, summary judgment is warranted on the abandoned claims. The Court now considers Ford's motion as to the remaining implied warranty of merchantability claims and the California consumer protection claims.

### B. Implied Warranty of Merchantability

#### 1. Elements of the Claim

Plaintiffs assert that Ford breached an implied warranty of merchantability by selling vehicles with a defective fuel pump. While each state has its own implied warranty law, these claims, as discussed in the Court's class certification opinion, share common elements. (*See* ECF No. 201, PageID.46563–46567.) For each state, Plaintiffs must prove that the CP4 pump is defective, that the defective pump rendered the class vehicles unfit for their ordinary purpose (*i.e.*, unmerchantable), and that the defect caused Plaintiffs' damages. (*See id.* at PageID.46552–46561.)

Ford argues that Plaintiffs have no admissible evidence of a CP4 pump defect, and thus no evidence of unmerchantability. (ECF No. 147, PageID.32065, 32068.) In fairness, Ford raised this argument prior to the Court's ruling on its motion to exclude Plaintiffs' defect expert, Dr. Edgar. (*See* ECF No. 149 (Ford's motion to exclude report and testimony of Dr. Edgar).) But the Court has since found Dr. Edgar's defect opinion sufficiently reliable and admissible. (ECF No. 195.) In other words, Plaintiffs *do* have admissible evidence of a pump defect. And that creates a genuine issue of material fact on the implied warranty of merchantability claims.

The same is true with respect to Ford's arguments on causation. Ford says that Plaintiffs have not shown a defect caused their pump failures. (ECF No. 147, PageID.32068–32071.) Instead, it points to evidence that Plaintiffs mistreated their vehicles. (*See, e.g.*, PageID.32070 ("For example, Parker used a gasoline fuel additive—against the Owner's Manual's instructions and common sense—that

impairs water separation.”).) But Plaintiffs’ expert testified that the pump is defective *because* it is not robust enough to withstand foreseeable customer abuse, like the use of a fuel additive. (ECF No. 168, PageID.43597 (“[O]ne dose of additive should not catastrophically destroy the entire high-pressure fuel system leading to a $9,000+ repair.”) (citing Dr. Edgar’s report); *see also id.* at PageID.32068–320710.) So there is competing evidence sufficient to create a genuine issue of material fact as to causation. This too precludes summary judgment.

**2. Pump Failure vs. Future Pump Failure**

As in the class certification briefing, Ford distinguishes between Plaintiffs who have experienced pump failure and those who have not. It argues that the named California Plaintiffs (Mertz and Sawicki) and Michigan Plaintiffs (Fowlkes and Doa) must be dismissed because they have not yet experienced a pump failure and therefore lack a cognizable injury and damages. (ECF No. 147, PageID.32067.) As mentioned above, because Plaintiffs do not seek class certification on any Michigan claims, they do not make any responsive arguments as to the named Michigan Plaintiffs. (ECF No. 168, PageID.43611.) So summary judgment is warranted on the claims of Fowlkes and Doa.

Plaintiffs do respond to the arguments about the California class. They say that while Sawicki has not yet experienced a pump failure, he should be permitted to represent a class of plaintiffs who “will have pump failures in the future and will be required to pay for these failures out of pocket.” (*Id.* at PageID.43618.) As to Mertz,

Plaintiffs say he *did* experience a pump failure in June 2025. (*Id.* at PageID.43596, 43618.)

The Court will address the Sawicki and Mertz claims in turn.

**Sawicki**

The California implied warranty claims are governed by the Song-Beverly Act. "Under the [Song-Beverly Act], a good is merchantable if it is fit for the ordinary purposes for which such goods are used." *Kappes v. FCA US LLC*, 829 F. Supp. 3d 214, 269 (E.D. Mich. 2026) (citing Cal. Civ. Code § 1791.1(a)). "To establish a breach of implied warranty, a California plaintiff must show that their product contains 'an inherent defect which is substantially certain to result in malfunction during the useful life of the product.'" *Id.* (citing *Hicks v. Kaufman and Broad Home Corp.*, 89 Cal.App.4th 908, 918 (Cal. Dist. Ct. App. 2001)).

In its class certification opinion, the Court concluded that Plaintiffs like Sawicki, who have not yet experienced a pump failure, lack standing to bring an implied warranty of merchantability claim. (ECF No. 201, PageID.46544–46548.) No pump failure, no injury. No injury, no standing. For the reasons set forth in that opinion, summary judgment is appropriate as to Sawicki's implied warranty claim. The record is undisputed that he had no pump failure and that one is not "substantially certain" to result. Indeed, Dr. Edgar testified that most vehicles will not experience the alleged defect. (ECF No. 162-2, PageID.38415 (Sealed)); *see Kappes v. FCA US LLC*, 829 F. Supp. 3d 214, 269 (E.D. Mich. 2026) (dismissing California implied warranty claims because defect was not "substantially certain" to occur); *Taragan v. Nissan N. Am., Inc.*, No. 09-3660, 2013 WL 3157918, at *4 (N.D. Cal. June

20, 2013) ("The 'risk' of future injury is 'insufficient to establish the requisite injury necessary to state a viable claim for breach of implied warranty [under California law].'").

In response, Plaintiffs maintain "California does not require defect manifestation for recovery under implied warranty of merchantability." (ECF No. 168, PageID.43612 (citing *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 535 (C.D. Cal. 2012)).) But *Keegan* is a class certification opinion that merely held that, under Federal Rule of Civil Procedure 23, plaintiffs did not have to prove substantial certainty of a defect manifestation in order to meet the predominance requirement. *Keegan*, 284 F.R.D. at 535. Yet whether Sawicki faces a substantial certainty of pump malfunction "is indisputably a merits question that may be susceptible to resolution on summary judgment." *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 19-1298, 2023 WL 1812157, at *6 (C.D. Cal. Jan. 25, 2023).

Accordingly, whether based on standing or the merits, Ford's motion is granted as to Sawicki's implied warranty claim.

**Mertz**

The other named California Plaintiff, Curtis Mertz, experienced a fuel pump failure in June 2025. (ECF No. 168, PageID.43596.) This was several years after Plaintiffs filed their TAC. Because Plaintiffs failed to supplement the TAC with this new fact, Ford argues that Mertz must be considered a "No Repair"/"Future Repair" Plaintiff on summary judgment. (ECF No. 176, PageID.45759.)

The filing of the operative complaint "fixes the controversy" to that date, and "federal courts will not consider post-complaint factual developments." *Blick v. Ann*

*Arbor Pub. Sch. Dist.*, 105 F.4th 868, 876 (6th Cir. 2024) (considering "continued suspension of [plaintiff] and refusal to renew her contract in 2021" to be post-complaint action requiring a supplemental complaint). So a party must file a "supplemental" complaint under Federal Rule of Civil Procedure 15(d) to raise a new "transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id.* (quoting Fed. R. Civ. P. 15(d)). Without a supplemental complaint, the Court cannot consider that new fact on summary judgment. *Gresham v. Honda Dev. & Mfg. of Am., LLC*, No. 23-4015, 2026 WL 682433, at *5 n.10 (S.D. Ohio Mar. 9, 2026) ("Because Plaintiff did not file such a supplemental pleading in this case, the post-Complaint events referenced above are not properly part of this action, and the Court will not consider them on summary judgment.").

The purpose of this rule, however, is to prevent "unfair surprise" to the defendant. *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019) ("But if the plaintiff raises the new claims for the first time in the summary-judgment briefing, it generally 'subjects a defendant to 'unfair surprise,' because the defendant has no opportunity to investigate the claim during discovery.'" (quoting *M.D. ex rel. Deweese v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775, 778 (6th Cir. 2017)). But this is not a situation where Ford first learned of the new fact after summary judgment and had no opportunity to address it. Indeed, as explained at oral argument, Mertz's pump failure occurred on June 9, 2025, and was communicated to Ford on July 9, 2025, through supplemental discovery, before Ford filed its summary judgment motion on November 4, 2025. While it would have been preferable for

Plaintiffs to seek to supplement the complaint to add this material fact, the Court is hard-pressed to find sufficient prejudice to Ford to preclude such supplementation. This is especially true when such a ruling would lead to the harsh result of dismissing the California class.

Thus, prior to trial, Plaintiffs may supplement the information about Mertz's pump failure occurring on June 9, 2025. This can be done through an existing paragraph in the TAC. Ford need only respond to that amended paragraph and can indicate that all other provisions of its operative answer and affirmative defenses remain in effect.

**3. Statute of Limitations**

Ford also seeks summary judgment on the ground that the implied warranty claims of several states are untimely. (ECF No. 147, PageID.32080.)

**Bauers (Indiana)**

The Court starts with Indiana. Named Plaintiff, Bauers, an Ohio resident, purchased her used 2011 model year vehicle in 2017. (ECF No. 168, PageID.43613.) The car was purchased in Indiana, and the parties agree that Indiana law applies. (*Id.* at PageID.32083; ECF No. 168, PageID.43613.)

Under Indiana's implied warranty of merchantability law (Ind. Code § 26-1-2-314), the statute of limitations period is four years after the cause of action has accrued. Ind. Code § 26-1-2-725(1). Ford argues that the four-year tolling period started in 2011 when the vehicle was initially tendered. (ECF No. 176, PageID.45760–45761.) Plaintiffs say the statute of limitations did not begin until Bauers herself purchased the used vehicle in 2017, making the 2020 complaint (in

which her claim was included) timely. (ECF No. 168, PageID.43613.) Ford has the better of the argument. That is because under Indiana law:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

Ind. Code § 26-1-2-725(2); *see also Dart Indus., Inc. v. Adell Plastics, Inc.*, 517 F. Supp. 9, 11 (S.D. Ind. 1980); *Taylor v. First of Am. Bank, N.A.*, No. 249613, 2005 WL 355212, at *1 (Mich. Ct. App. Feb. 15, 2005) (finding "tender of delivery" under a similar statute of a used boat had occurred when the boat was delivered to its first owner such that plaintiff's warranty claim was untimely).

To "exten[d] to future performance," the warranty must "expressly" so state Ind. Code § 26-1-2-725(2). Plaintiffs have not pointed to any evidence of such an extended warranty. When Bauers purchased the vehicle in 2017, she may have had four years to bring a claim against the used car seller but it was past the point of bringing a claim against Ford.

Plaintiffs do not argue equitable tolling with respect to the implied warranty of merchantability claim—nor would it likely apply here. Under Indiana law, "[i]f a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action." Ind. Code § 34-11-5-1. And "[t]he concealment must be 'active and intentional,'" meaning "some 'trick or contrivance intended by the defrauder to exclude suspicion and prevent inquiry.'" *Shea v. Gen.*

*Motors LLC*, 567 F. Supp. 3d 1011, 1021 (N.D. Ind. 2021) (quoting *U.S. Specialty Ins. Co. v. Daimler Trucks N. Am., LLC*, 2017 WL 2471083 at *2 (S.D. Ind. May 19, 2017)). Plaintiffs provide no such evidence. Moreover, "[m]ere silence about the alleged defect, in the absence of a fiduciary relationship (which is not alleged here), is insufficient to establish fraudulent concealment." *Shea*, 567 F. Supp. 3d at 1022 (citing *U.S. Specialty*, 2017 WL 2471083 at *2).

**Angona and J. Ford (Louisiana)**

Next, Ford challenges Joey Angona and Jeffrey Ford's Louisiana redhibition claim as untimely. (ECF No. 147, PageID.32081; ECF No. 176, PageID.45761.)

The statute of limitations for a claim for breach of warranty against redhibitory defects under Louisiana law depends on the seller's knowledge of the defect. If a seller "did not know of the existence of a defect" then the lawsuit must be filed within "two years from the day of delivery of the thing to the buyer or one year from the day the defect or unfitness was discovered by the buyer, whichever occurs first." La. Civ. Code Ann. art. 2534(A). But if the seller "knew, or is presumed to have known, of the existence of the defect" the lawsuit must be filed "one year from the day the defect was discovered by the buyer or ten years from the perfection of the contract of sale, whichever occurs first." La. Civ. Code Ann. art. 2534(B).

Plaintiffs' evidence that Ford knew of the alleged defect creates a material issue of fact on this point. (*See, e.g.*, ECF No. 143-3, PageID.26694 (Dr. Edgar Report) (concluding that, based on internal documents and public information, Ford knew of the defect as early as 2011) (Sealed).) It may be that the ten-year statute of

limitations applies[1] such that Angona's 2020 claim based on a 2015 sales contract, and J. Ford's 2019 claim based on a 2014 sales contract, are not subject to summary judgment based on timeliness.

**Jay Eriv (New Jersey)**

Jay Eriv purchased his vehicle in 2012. He brought his implied warranty claim under New Jersey law more than four years later. (ECF No. 176, PageID.45760.) Plaintiffs do not dispute that the applicable statute of limitations had run but say that equitable tolling applies due to fraudulent concealment. (ECF No. 168, PageID.43614.)

To establish such fraudulent concealment , a plaintiff must show "'(1) wrongful concealment by the party raising the statute of limitations defense, resulting in (2) plaintiff's failure to discover the operative facts forming the basis of his cause of action during the limitations period[,] (3) despite the exercise of due diligence.'" *In re Volkswagen Timing Chain Prod Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *14 (D.N.J. May 8, 2017) (quoting *Dewey v. Volkswagen AG*, 558 F.Supp.2d 505, 523 (D.N.J. 2008)).

Under New Jersey law, "concealment presupposes knowledge of a fact and concealment of it from one not in possession of such knowledge . . . Generally, fraudulent concealment depends upon the presence of some trick or contrivance intended to exclude suspicion and prevent inquiry." *Glauberzon v. Pella Corp.*, No. 10-5929, 2011 WL 1337509, at *5 (D.N.J. Apr. 7, 2011) (quoting *Rothman v. Silber*,

[1] Neither party argues that the applicable timeline is one year after the date of discovering the defect, so the Court does not consider it.

216 A.2d 18, 25 (N.J. Super. Ct. App. Div. 1966)). Thus, there needs to be "affirmative acts of concealment" and not mere silence. *Id.* (declining to toll statute of limitations because plaintiffs did not plead "specific date, time, and place of the alleged fraud, concealment, or trick").

But after lengthy discovery, all Plaintiffs point to are some "Job Aid" letters that Ford sent to dealers warning about the risk of damage to the fuel system components. (ECF No. 168, PageID.43607.) And the Court has been given no basis to find that this constituted a "trick or contrivance" or an "affirmative act of concealment" to consumers.

Accordingly, because they are time-barred, Ford is entitled to summary judgment on Bauers and Eriv's implied warranty claims.

**C. California Consumer Protection Claims**

Plaintiffs Sawicki and Mertz assert claims under California's Consumer Legal Remedies Act (CLRA) and Unfair Competition Law (UCL). The CLRA was enacted to "protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Medina v. St. George Auto Sales, Inc.*, 103 Cal. App. 5th 1194, 1203 (Cal. Dist. Ct. App. 2024); Cal. Civ. Code § 1750, *et seq*. Similarly, the UCL prohibits "unfair competition," which is "any unlawful, unfair or fraudulent business act or practice." *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. 15-8629, 2019 WL 1940619, at *7 (C.D. Cal. Mar. 27, 2019) (quoting Cal. Bus. & Prof. Code § 17200). The parties agree that the elements of the CLRA subsume the UCL, so the Court analyzes them together. *See L.S. v. Happy Hippo*

*LLC*, No. 24-02849, 2025 WL 1993383, at *5 (E.D. Cal. July 17, 2025) ("Consumer protection claims under the CLRA . . . and UCL are often analyzed together because they share similar attributes.").

**1. Actual Reliance**

To establish a claim under the CLRA, Plaintiffs must show that: "(1) a consumer is exposed to an unlawful business practice, and (2) the consumer is damaged by the unlawful practice." *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 899 (N.D. Cal. 2016); *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 522 (C.D. Cal. 2015). For a CLRA claim based on an "omission," the omission must be either: (1) "contrary to a representation actually made by the defendant"; or (2) "an omission of a fact the defendant was obliged to disclose." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 674 F. Supp. 3d 799, 835 (C.D. Cal. 2023), *aff'd*, No. 23-55742, 2025 WL 1683472 (9th Cir. June 16, 2025). For plaintiffs asserting an omission-based CLRA claim, "in order to show actual reliance," they must demonstrate that the omission was an "immediate cause of the injury-causing conduct." *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017), *aff'd*, 731 F. App'x 719 (9th Cir. 2018) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (Cal. 2009)). To do so, plaintiffs need only "show that the misrepresentation or omission was a substantial factor in their decision making process." *Id.* (citing *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)).

To Ford, neither Mertz nor Sawicki identified fraudulent misrepresentations it made that induced them to purchase their vehicles. That is true. But Plaintiffs

assert an omissions-based claim. And they do identify the omission. Mertz and Sawicki testified that, had they known about the alleged fuel pump defect, they would not have purchased their vehicles. (ECF No. 168, PageID.43617.) At summary judgment, this evidence, i.e., that the alleged omission was a substantial factor in their decision to buy a class vehicle, is sufficient to create a material fact dispute as to reliance.

**2. Knowledge of the Defect**

Next, Ford says that it could not have made an unlawful misrepresentation (or omission) regarding a purported pump defect, because it had no knowledge of such a defect. In other words, if Ford was unaware of any defect issue regarding the CP4 pump, it could not have purposefully deceived customers by keeping information about the alleged pump defect from them. (ECF No. 176, PageID.45762.) But, as discussed above, Plaintiffs have brought forward enough evidence on summary judgment to create a material factual dispute as to what Ford knew and when.

**3. Adequate Remedy at Law**

Ford also contends that Mertz and Sawicki cannot bring CLRA and UCL claims because they have an "adequate remedy" at law—a breach of contract claim. (ECF No. 147, PageID.32080.)

But that rule only applies to plaintiffs seeking equitable relief, not money damages. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837 (9th Cir. 2020) ("Pursuant to *Erie Railroad Co. v. Tompkins* . . . and *Guaranty Trust Co. of New York v. York* . . . we hold that federal courts must apply equitable principles derived from

federal common law to claims for equitable restitution under California's Unfair Competition Law ('UCL') and Consumers Legal Remedies Act ('CLRA').") Here, Plaintiffs seek money damages, so the adequate remedy at law rule does not apply.

**4. Statute of Limitations**

As for the CLRA, Ford argues that because Mertz purchased his vehicle in January 2015 and filed this lawsuit in 2019, he falls outside that law's three-year statute of limitations period. (ECF No. 147, PageID.32056); Cal. Civ. Code § 1783. "Generally speaking, a [CLRA] cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" *Medina*, 103 Cal. App. 5th at 1203–04. But the "'discovery rule' . . . postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* (citing *Fox v. Ethicon Endo-Surgery, Inc.* 35 Cal. 4th 797, 806–07 (Cal. 2005) (applying discovery rule to CLRA claim)). So under that rule, "the statute of limitations does not begin to run until 'the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.'" *Id.* (quoting *Eisenberg Village etc. v. Suffolk Construction Co., Inc.*, 53 Cal.App. 5th 1201, 1213 (Cal. Dist. Ct. App. 2020)).

Here, Mertz's pump failed in 2025. So that is when his injury occurred and when he suspected the injury was a result of an alleged defect attributable to Ford. And that is when his cause of action accrued. Because the Court is permitting Mertz to supplement the TAC with this factual development, his claim is timely.

**5. Injury/Damages**

Sawicki's California consumer protection claims meet the same fate as his implied warranty claim—no pump failure means that he cannot establish any damages in this case. "[T]o bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result." *Mansfield v. StockX LLC*, 802 F. Supp. 3d 1143, 1155 (N.D. Cal. 2025) (quoting *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (Cal. 2009)). Sawicki has not proffered evidence of damages. Plaintiffs' expert only addresses a cost-of-repair model, not a vehicle-overpayment theory. So Ford's motion for summary judgment is granted as to Sawicki. *See Zambrano v. CarMax Auto Superstores, LLC*, No. 13-2107, 2014 WL 228435, at *6 (S.D. Cal. Jan. 21, 2014) ("Accordingly, if a plaintiff cannot establish that she suffered actual damages, she does not have standing to bring a CLRA, UCL or fraud claim.").

**V.**

Accordingly, Ford's motion for summary judgment (ECF Nos. 147, 146 (Sealed)) is GRANTED IN PART and DENIED IN PART. Reeves (AL), Sawicki (CA), Bauers (IN), Fowlkes (MI), Doa (MI), and Eriv (NJ), are DISMISSED from the case.

Further, Plaintiffs are permitted to supplement (in an existing paragraph of the TAC) the information about Mertz's pump failure occurring on June 9, 2025. And Ford may docket a response to that paragraph with an indication that all other provisions of its operative answer and affirmative defense remain in effect.

IT IS SO ORDERED.

Dated: September 30, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE